**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Venancio Aguasanta Arias, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case Number: 1:01cv01908 (RWR) |
| v. ) | |
| ) | |
| DynCorp, *et al*. ) | |
| Defendants. ) | |
| ) | |
| Nestor Ermogenes Arroyo Quinteros, *et al.*, ) | Case Number: 1:07cv01042 (RWR) |
| ) | |
| Plaintiffs, ) | (Cases Consolidated for Case |
| v. ) | Management and Discovery) |
| ) | |
| DynCorp, *et al*. ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO COMPEL THE INDIVIDUAL PLAINTIFFS
TO SATISFY THE PLAINTIFFS' OBLIGATIONS UNDER RULE 26(a) (INITIAL
DISCLOSURES) AND RULE 33 (INTERROGATORIES) AND TO PROVIDE
VERIFIED, FACTUAL AND COMPLETE RESPONSES *IN ENGLISH*
TO THE PLAINTIFFS' QUESTIONNAIRE, WITH STATEMENT
OF SUPPORTING POINTS AND AUTHORITIES INCLUDED HEREIN**

Filed: August 1, 2008

Joe G. Hollingsworth (D.C. Bar # 203273)
Eric G. Lasker (D.C. Bar # 430180)
Rosemary Stewart (D.C. Bar # 204438)
SPRIGGS & HOLLINGSWORTH
1350 I Street, NW
Washington, D.C. 20005
Phone: (202) 898-5800
Fax: (202) 682-1639

Counsel to the Defendants

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...........................................................................................2

II.   BACKGROUND AND RELEVANT PROCEEDINGS TO DATE ...................................4

      A.   The Court's Instructions about Necessary Disclosures ............................5

      B.   Plaintiffs' Deficient Initial Disclosures. ................................................8

      C.   The Parties' Agreement that the Plaintiffs' Questionnaire Responses Would
           Constitute Supplemental Initial Disclosures.........................................10

      D.   The Plaintiffs' Questionnaire....................................................................11

      E.   The Deficient Plaintiffs' Questionnaire Responses ...............................12

III.  LEGAL ARGUMENT.....................................................................................15

      A.   The Individual Plaintiffs have Violated the Court's Directions and Federal
           Rules .......................................................................................................15

           1.   The plaintiffs' "Initial Declaration" renders the Questionnaire
                responses meaningless. ............................................................15

           2.   The plaintiffs have failed to comply with the Court's direction about
                necessary foundational disclosures. .........................................17

           3.   Initial Disclosures and Questionnaire Responses must be submitted *in
                English* on the date they are due. ...........................................21

           4.   Most plaintiffs have failed to produce their computation of damages
                as required by Rule 26(a)..........................................................22

      B.   The Plaintiffs have Thwarted the Court's Initial Case Management Efforts.........24

IV.   CONCLUSION................................................................................................26

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Venancio Aguasanta Arias, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case Number: 1:01cv01908 (RWR) |
| v. ) | |
| ) | |
| DynCorp, *et al.* ) | |
| Defendants. ) | |
| ) | |
| ) | |
| Nestor Ermogenes Arroyo Quinteros, *et al.*, ) | Case Number: 1:07cv01042 (RWR) |
| ) | |
| Plaintiffs, ) | (Cases Consolidated for Case |
| v. ) | Management and Discovery) |
| ) | |
| DynCorp, *et al.* ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO COMPEL THE INDIVIDUAL PLAINTIFFS
TO SATISFY THE PLAINTIFFS' OBLIGATIONS UNDER RULE 26(a) (INITIAL
DISCLOSURES) AND RULE 33 (INTERROGATORIES) AND TO PROVIDE
VERIFIED, FACTUAL AND COMPLETE RESPONSES *IN ENGLISH*
TO THE PLAINTIFFS' QUESTIONNAIRE, WITH STATEMENT
OF SUPPORTING POINTS AND AUTHORITIES INCLUDED HEREIN**

Defendants (collectively "DynCorp International") file this motion to compel because of

the individual plaintiffs' repeated failures to provide Initial Disclosures required by the Court

and because of their inadequate responses to the Plaintiffs' Questionnaire agreed to in advance

by the parties.  Because of these failures, the individual plaintiffs have yet to provide the

necessary threshold bases for their legal allegations and have thwarted the Court's initial case

management order. [1]

---

[1]  The undersigned certifies pursuant to Fed. R. Civ. P. 37(a)(1) and D.D.C. LCvR 7(m) that the
defendants' counsel have in good faith conferred in person and in multiple correspondence with
plaintiffs' counsel about the subjects of this motion in an effort to obtain relief without court
action.  However, no agreement or resolution has been reached on the substance of the
defendants' concerns, and plaintiffs' counsel have indicated that they will oppose this motion.

I.    **INTRODUCTION**

In these cases, 3300 Ecuadorian plaintiffs allegedly living near the border between Colombia and Ecuador claim – in direct contradiction to repeated findings of both United States and independent international organizations – that the aerial eradication of coca plants in Colombia as part of the long-standing international drug interdiction operation known as "Plan Colombia," has resulted in (1) direct spraying or "spray drift" into Ecuador and (2) personal injuries and property damages in Ecuador.  In recognition of the significant foundational issues posed by the plaintiffs' allegations, the Court on November 27, 2007, imposed an expanded Initial Disclosure requirement on the individual plaintiffs, obligating each plaintiff to provide a concrete basis for his or her belief that the defendants' conduct caused the claimed injuries as an essential first step in moving these cases forward.  (The Court's specific directions about this are set out below in Section II.A. at pp. 5-6)  Eight months later, however, and despite defendants' good faith agreement to allow plaintiffs to use their answers to the Plaintiffs' Questionnaires as *supplemental* disclosures to cure significant deficiencies in the Initial Disclosures originally provided in response to the Court directive, the individual plaintiffs still have failed to provide the disclosures required by the Court.

As set forth herein, the individual plaintiffs have instead provided Initial Disclosures and (for the first 800 of the 3300 individual plaintiffs) Questionnaire responses containing vague information that fails, for example, to provide specific dates and locations of the alleged injurious exposures.  The plaintiffs' Questionnaire responses are also expressly qualified as being based upon rumors, hearsay or other evidence that is neither reliable nor admissible as evidence, and certain Questionnaire responses appear to be replies to questions different from those agreed to by the parties following detailed negotiations.  Despite specific requests made in the Questionnaire, most of the individual plaintiffs have also failed to provide maps marked to

2

show the location of their alleged exposures or computations of their alleged damages, and none

of the plaintiffs have provided medical or employment records in support of their claims.

Moreover, while plaintiffs have acknowledged their obligation to provide Initial Disclosures and

Questionnaire responses *in English* – and the case cannot proceed as envisioned in the case

management order until they do so – the plaintiffs have to date provided English translations for

only about 20% of their Initial Disclosures and for *none* of their Questionnaire responses.

Defendants accordingly file this motion to compel, seeking the following relief:  <u>First</u>,

defendants request the Court to compel each individual plaintiff to provide the specific threshold

information required by the Court during the November 27, 2007 scheduling conference or,

alternatively, to have his/her claim dismissed.  <u>Second</u> and relatedly, defendants request the

Court to compel plaintiffs to provide complete, verifiably accurate, and admissible responses to

the Plaintiffs' Questionnaire (which the parties agreed would be considered as responses to Rule

33 interrogatories) using the agreed-upon text of that Questionnaire.  <u>Third</u>, defendants request

the Court to compel plaintiffs to provide English translations of all Initial Disclosures and

Questionnaire responses provided to date and to make clear that the revised responses required

by the Court and the Questionnaire responses of the remaining plaintiffs must be provided *in*

*English* by the dates specified in the proposed Order submitted by the defendants.  <u>Fourth</u>,

defendants request that the Court use the scheduled status conference in November 2008 to

discuss the dismissal of plaintiffs who fail to provide Initial Disclosures and Questionnaire

responses as required by the Court's Order and also to discuss how the case should proceed to

the commencement of fact discovery, the selection of test plaintiffs, full merits discovery, and

other pretrial procedures in light of the delays arising from the history of the individual plaintiffs' nondisclosures to date.[2]

This motion is filed by the defendants pursuant to Fed. R. Civ. P. 37(a)(3) (authorizing motions to compel for failing to make Rule 26(a) disclosures and failing to properly answer Rule 33 interrogatories) and Fed. R. Civ. P. 37(c), (d) (identifying additional sanctions available for a party's failure to provide necessary information under Rule 26 or Rule 33).

## II.    BACKGROUND AND RELEVANT PROCEEDINGS TO DATE

Plaintiffs in the *Arias* and *Quinteros* cases seek to hold DynCorp International liable for its role in activities undertaken pursuant to the specific terms of its contracts with the U.S. Department of State in support of the aerial eradication of coca plants that is part of "Plan Colombia."  The plaintiffs allege that their exposures arose from eradication operations near the 500-kilometer (310 mile) Colombia-Ecuador border that resulted in herbicide spray crossing the border at as yet unspecified dates or times during a period extending from 2000 to the present.

Defendants deny that the herbicide sprayed on coca plants as part of Plan Colombia can or did cause the alleged injury to humans or farm animals in Ecuador.  International and national health organizations, including the U.S. Environmental Protection Agency, the World Health Organization, and the Organization of American States have repeatedly concluded that the herbicide spray used in "Plan Colombia" is non-toxic to humans and farm animals, and independent and governmental "drift" studies have repeatedly contradicted plaintiffs' allegations that herbicide spray from Plan Colombia has crossed the border into Ecuador.

---

[2] Because defendants have received only Spanish responses to the Plaintiffs' Questionnaire, we have been unable to assess other potential deficiencies in the individual plaintiffs' discovery responses to date.  Defendants accordingly reserve the right to raise further objections to plaintiffs' disclosures and responses upon receiving those documents in English.

A.       **The Court's Instructions about Necessary Disclosures**

At the initial scheduling conference held with the parties on November 27, 2007, the

Court ordered the plaintiffs to provide detailed Initial Disclosure information that would provide

a basis for allowing their claims to proceed.  (Ex. A–11/27/07 Tr. at 11-12.)[3]  In particular, the

Court acknowledged and accepted eight categories of information offered by the plaintiffs, but

also ordered plaintiffs to provide necessary *additional* disclosures:

> I did see on page 16 of the report a list of items that the plaintiffs
> were proposing to include in a 60-day period which, I guess, would
> be considered to be [I]nitial [D]isclosures.  I thought, however, it
> would be useful *to add to this list* of about eight items something
> that's not quite what the defendants had asked for but at least
> moves in that direction, and that is some representation in the
> [I]nitial [D]isclosures or that list of eight items about *the basis for
> each plaintiff's belief that the defendants' conduct caused the
> claimed injuries.*

(Ex. A - 11/27/07 Tr. at 11 (emphasis added).) [4]

The court explained that these expanded disclosures were "going to be *pretty essential in*

*moving the case forward* in the structure that I've talked about."  *Id.* (emphasis added). And the

court reiterated:  "But I do intend for . . . the initial disclosures from at least the plaintiffs to

include that kind of information, [*i.e.*,] what the basis is for the plaintiffs' belief that the

defendants' conduct caused the injuries that they're claiming."  *Id.* at 11-12.

---

[3]  All cited references to the November 27, 2007, transcript of the Initial Scheduling Conference
(hereafter "11/27/07 Tr.") are included as Exhibit A to this motion.

[4]  The eight (8) categories of data promised by the plaintiffs to "provide the Court and DynCorp
with a more definitive statement as to the precise injuries and damages alleged by the Plaintiffs,"
were as follows:   "1) name; 2) address; 3) exposure address (if different than current address); 4)
date of birth; 5) sex; 6) claimed physical injuries (if any); 7) claimed property damage (if any);
and 8) real property address and/or a list of damaged chattels for property damage Plaintiffs."
*See* the Joint Rule 16.3 Statement, CM/ECF Doc. No. 62 in *Arias*; CM/ECF Doc. No. 19 in
*Quinteros* (hereafter "Jt. R. 16.3 St.") at 16.   Plaintiffs also represented that these same "facts
are within Plaintiffs' counsels' possession, as a result of Plaintiffs' counsels' due diligence
inquiries pursuant to Fed. R. Civ. P. § 11(b)."  *Id.*

When one of the *Quinteros* plaintiffs' attorneys represented to the Court that the *Quinteros* plaintiffs "had terrific crops and had a wonderful existence until the planes came and sprayed [and] within a very short period of time, people developed illnesses, the water was polluted . . . [,]" (*id.* at 12), the Court pointed out that such a "temporal connection" alone was not enough:

> [W]ith respect to the disclosures from the plaintiffs, I did want it to be something more than simply a temporal connection, "we were living a good life, we know that some spraying happened, and then things started happening."

*Id.* at 13. And to clarify, the Court gave specific examples of what kind of detail would be expected in addition to showing a temporal connection:

> There ought to be the kind of detail that would be useful by way of identification of dates or times, if that's possible, airplanes, descriptions, what they saw, colors of fumes, any kind of details like that, and added into temporal connections. Plus, if they did have any doctors that they visited after the onset, assuming the onset was temporally connected in some way, what the doctors might have told them.
>
> . . . .
>
> [T]o move the case forward to get some of these issues teed up, it would be *required* to put in some basis of that type.

*Id.* at 13-14 (emphasis added).

The kinds of disclosures promised by the plaintiffs and directed by the Court (*e.g.*, the dates and locations of each alleged exposure, identifying characteristics of the planes and spraying, the "temporal connection" between exposures and injuries, and claimed property damage and/or physical injuries) are all particularly important here where the allegations involve the purported exposures of 3,300 individuals living along the 500-kilometer border during various times from 2000 to the present. Not only do the plaintiffs need to establish the possibility of exposure by identifying specific dates that can be linked to specific spraying

operations, but they must also identify the specific location of the alleged exposure to satisfy their burden of establishing that a sufficient dose of herbicide could have reached the alleged exposure location in Ecuador to cause injury. Moreover, many of the individual plaintiffs in this case have significant independent background health and environmental risks (including, *e.g.*, lack of clean drinking water, inadequate housing, poor nutrition, and pollution). Plaintiffs' bare assertion of personal injury or injuries to crops and farm animals (at some point in time over an 8-year time period) accordingly cannot provide the requisite basis for a claim that such alleged injuries were caused by specific "Plan Colombia" spraying operations conducted by the defendants.

Moreover, the foreign plaintiffs' lack of familiarity with the United States judicial procedures and the burdens of proof imposed upon the parties seeking to bring claims in U.S. courts make all the more important the Court's requirement that plaintiffs provide specific Initial Disclosures at the outset of this litigation. As plaintiffs' counsel is aware, the failure to secure unambiguous and verified disclosures from foreign plaintiffs in this type of litigation can give rise to significant problems later in the litigation and result in substantial expenditure of time and resources by the Court and the parties regarding claims that should not have been allowed to proceed in the first instance. *See Gonzales v. Texaco, Inc.,* No. C 06-02820, 2007 WL 3036093 (N.D. Cal. Oct. 16, 2007) (sanctioning plaintiffs' counsel for failing to reasonably investigate whether certain Ecuadorian plaintiffs actually had cancer before filing suit alleging that the defendant's activities in Ecuador caused the cancer). Where plaintiffs "are as unsophisticated as plaintiffs' counsel have portrayed them throughout this action, where the clients live in a foreign country, where the fact issues are not simple, where so much can be lost in translation, where

counsel plans to use them as named plaintiffs in a suit in the United States, counsel have much to ask and much to explain to their clients." *Id.* at *12.

The Scheduling Order that resulted from the November 27, 2007 hearing required plaintiffs' expanded Initial Disclosures to be produced on January 28, 2008.[5]  And in accordance with the plaintiffs' specific request that a Questionnaire be used in this case in lieu of interrogatories (*see* Jt. R. 163 St. at 17), the Court also required the defendants to create and submit a draft Questionnaire to the plaintiffs by February 7, 2008, with the first 800 Questionnaire responses due on April 25, 2008, and the remainder due on August 25, 2008. November 27, 2007 Order at 1.

### B.    Plaintiffs' Deficient Initial Disclosures.

The Initial Disclosures delivered by the individual *Quinteros* plaintiffs on January 28, 2008, did not satisfy the disclosure requirements set forth by the Court and/or required by Fed. R. Civ. P. 26(a).  By letters dated January 29, 2008 and February 26, 2008, defense counsel identified numerous deficiencies in the plaintiffs' Initial Disclosures including the fact that they were all in Spanish.  Copies of those letters are attached as Exhibit B.  Beyond the failure to provide English language disclosures, the most serious deficiencies noted by the defendants were caused by the plaintiffs' counsel asking a series of questions that did not carry out the Court's direction to identify the factual bases for plaintiffs' belief that "the defendants' conduct caused the injuries that they're claiming." (Ex. A – 11/27/07 Tr. at 11-12.)

For example, rather than simply asking plaintiffs the specific dates on which they allege they were exposed to spraying from "Plan Colombia" planes, plaintiffs' counsel directed the individual plaintiffs to provide "the month and year of all times that you remember seeing

---

[5] Defendants likewise were required to provide Initial Disclosures on January 28, 2008, which they did.  Plaintiffs have raised no objection to the defendants' disclosures.

spraying, seeing fogs of herbicide, or hearing that your village had been sprayed." *See* Exhibit C, at no. 2.[6]  The answers to this question cannot possibly provide the type of information required by the Court.  Aside from the fact that it expressly solicited unverifiable hearsay (*i.e.*, simply hearing that a village had been sprayed), the question provides no plausible basis for the supposition that a plaintiff's ability to see planes in flight (potentially many kilometers in the distance on the Colombian side of the border) constitutes evidence of exposure to herbicide spray in Ecuador.  Moreover, with this faulty question, plaintiffs failed to provide specific dates for the alleged events, instead responding with nonspecific dates such as "2000 – 2002" or "January 2001 to December 2006, every six months."

Further, even without English translations of the Initial Disclosures, it became obvious that the great majority of the disclosures did not present information about *each* alleged exposure event or how it affected *each* member of a plaintiff's family (all of whom are now named plaintiffs) or what kind of injury to crops or farm animals resulted from *each* event.  Thus, even where plaintiffs' counsel did ask some of the Court's specific questions (such as what the plane looked like), the resulting disclosures did not answer these questions for each alleged instance of exposure or for each plaintiff.  Indeed, over 90% of the plaintiffs' Initial Disclosure forms failed to disclose which alleged date(s) of exposure resulted in which alleged harm (personal injury or crop damage or animal deaths) and without any disclosure of which plaintiffs in a family were

---

[6] Exhibit C is a list of seventeen questions (with multiple subparts), which plaintiffs' counsel used to create the Initial Disclosures by the individual *Quinteros* and *Arias* plaintiffs who produced disclosure information.  The defendants did not prepare the Exhibit C questions, or even see them until they were produced on January 28, 2008, at the same time as the *Quinteros* plaintiffs' disclosure forms were produced.  Not one question on Exhibit C inquired why plaintiffs believed that DynCorp or "Plan Colombia" was responsible for their alleged exposure.

allegedly exposed or exactly where the plaintiff or his/her crops or animals were located at the time of the alleged exposure.[7]

**C.**     **The Parties' Agreement that the Plaintiffs' Questionnaire Responses Would Constitute Supplemental Initial Disclosures.**

In response to the defendants' notice that we intended to file a motion to compel *adequate* Initial Disclosures *in English*, the *Quinteros* plaintiffs agreed to translate their disclosures. *See* Exhibit D. The parties further agreed that plaintiffs' responses to the Plaintiffs' Questionnaire would serve as "supplemental" Initial Disclosures (under Rule 26(a)) in addition to serving as the individual plaintiffs' responses to formal interrogatories (under Rule 33), with the understanding that no discovery would begin against the defendants until all of the Plaintiffs' Questionnaires were completed. Because the plaintiffs were unable to meet the April 25, 2008 deadline to submit the first 800 Plaintiffs' Questionnaire responses, the parties also agreed to extend this first Questionnaire due-date to June 25, 2008. These agreements were set out as follows in the Consent Notice filed with the Court on April 17, 2008:

> 3. The Plaintiffs' Questionnaire responses, which will also serve as supplemental Initial Disclosures, shall be delivered to the defendants as follows:
>
> > – Initial 800 Plaintiffs' Questionnaire responses by June 25, 2008; and
> >
> > – All remaining Plaintiffs' Questionnaire responses by August 25, 2008.
>
> 4. Fact discovery shall begin on August 25, 2008, or the date by which all Plaintiffs' Questionnaire responses have been served on the defendants, whichever is later.

---

[7] The *Arias* plaintiffs belatedly produced on February 20, 2008, five cryptic Initial Disclosure forms on behalf of five of the six plaintiff families in the *Arias* case. These five disclosures (presumably made on behalf of the 23 to 26 total people in those five families) were equally deficient as to their content and their failure to disclose which plaintiffs suffered which injuries based on which alleged exposure. But the five *Arias* disclosures forms were in English.

4/17/08 Consent Notice at 1.

### D.      The Plaintiffs' Questionnaire

In accordance with the Court's instruction, the defendants prepared a draft Plaintiffs' Questionnaire and delivered it to the plaintiffs' counsel (two days early) on February 5, 2008. *See* Exhibit E, p. 1 (defense counsel's e-mail, without attachment).  On February 14, 2008, defense counsel wrote plaintiffs to urge a meeting or telephone conference to discuss the Questionnaire, Ex. E., p. 2, which was finally scheduled for February 29, 2008.  At that meeting, agreement was reached on most of the concerns expressed by plaintiffs' counsel, and the text of the Questionnaire was revised accordingly.  Following additional cooperative correspondence between the parties, the English-version of the Questionnaire was finalized on March 4, 2008. *See* Exhibit F (e-mail from defense counsel, sending the final agreed-upon English version of the Questionnaire (also attached) to all plaintiffs' counsel).  Pursuant to the parties' agreement, the plaintiffs' counsel then had the agreed-upon Questionnaire translated into Spanish, after which the defendants (using Spanish-speaking consultants that defendants hired) checked and confirmed the translation.  After the parties advised one another of certain final translation corrections and clarifications, a final agreed-upon Spanish translation of the Plaintiffs' Questionnaire was ready on March 31, 2008.  *See* Exhibit G (defense counsel email to plaintiffs, which attached the final "clean copy of the Spanish-language version of the Plaintiffs' Questionnaire and its Exhibits").  Consistent with their previous agreement to provide English translations of their January 28, 2008 Initial Disclosures, the plaintiffs also agreed that their responses to the Plaintiffs' Questionnaire would be translated into English.  *See* Exhibit H.

At no time prior to submitting the first 800 Plaintiffs' Questionnaire responses on June 27, 2008, did the plaintiffs contact the defendants about any additional changes they wished to make to the agreed-upon text of the Plaintiffs' Questionnaire.

E.    **The Deficient Plaintiffs' Questionnaire Responses**

Plaintiffs provided the first 800 Plaintiffs' Questionnaire responses on June 27, 2008. Despite having been extended this second opportunity to abide by the Court's November 27, 2007 Initial Disclosure requirements, the plaintiffs again failed to comply with the Court's directives or with their obligations under the federal rules.  Moreover, the responses have disregarded many of the parties' agreements reached during the detailed negotiations about the Questionnaires.  The most immediate deficiency was that, once again and despite the plaintiffs' agreements to translate, the first 800 Questionnaire responses were provided only in Spanish. *See* Exhibit J.  Although hindered by the lack of English responses, the defendants' initial review has revealed the following deficiencies:

1.    Plaintiffs' counsel preceded each response with an "Initial Declaration," stating that the information provided in the response *could include rumors or other forms of of proof that may not be reliable or admissible as evidence.*[8]  *See* Exhibit I, the Declaration of Rolando Sanchez, outlining all additions and changes unilaterally made to by plaintiffs' counsel to the negotiated, agreed-upon text of the Plaintiffs' Questionnaire, at ¶ 6.  In subsequent "meet-and-confer" correspondence, plaintiffs' counsel acknowledged that the qualification that they added was intended to allow responses that "may include hearsay and other forms of evidence which are neither reliable nor admissible as evidence."  *See* Exhibit K at 1.  Clearly, this qualification destroys the evidentiary value of the Questionnaire.

---

[8] This qualification is disconcertingly reminiscent of the language used by counsel in soliciting foundational information in the Initial Disclosures in January 2008 (*i.e.*, directing the plaintiffs to describe *when they might have heard that their village had been sprayed).*

And the plaintiffs' qualification covers every response provided to every question in the Questionnaire.[9]

2.   Plaintiffs' counsel also appear to have unilaterally changed a number of the agreed-upon questions in the Questionnaire, including some that asked the specific questions the Court has directed plaintiffs to answer.  (Examples of this are set out *infra* at 17-19.)  In other instances, the plaintiffs disregarded agreed-upon instructions in the Questionnaire.  The result is a second failed effort to provide meaningful Initial Disclosures.  Although it is impossible to know whether the changes to text caused the individual plaintiffs to respond with vague answers (some of the changes deleted language instructing plaintiffs to provide responses with specificity), it is apparent that most of the first 800 responding plaintiffs have failed to identify specific dates for their alleged exposures but rather, again, provide only vague responses such as "2002 to 2007."  And most plaintiffs again did not identify the kinds of harm they claim to have suffered based on each alleged exposure, but simply listed adverse health effects or property damage without linking these claims to any particular alleged exposure event.[10]

---

[9] Plaintiffs' counsel contend that the Spanish word "rumores" used in their Initial Declaration means "hearsay" rather than "rumor."  Ex. K at 1.  The defendants disagree, pointing out that "rumores" is translated as "rumors."  Ex. L at 1.  But even if the plaintiffs' translation is used, the defendants are equally concerned that the qualification language is unacceptable.

[10] The defendants identified these very same concerns with the deficient Initial Disclosures delivered on January 28th well in advance of the Plaintiffs' Questionnaire being finalized so there is no excuse for the individual plaintiffs' repetition of the same deficient disclosures in their June 27th Questionnaire responses.  *See* Exhibit B (defense counsel's February 26, 2008 letter at 2-3, summarizing the directions given by the Court in November 2007 and pointing out exactly how the plaintiffs had failed to disclose *which* plaintiffs were allegedly exposed, *when* they were allegedly exposed, and *where* they were on each such exposure date).  The Plaintiffs'

3.    Even when not changed or omitted, some of the agreed-to questions in the Plaintiffs' Questionnaire seeking foundational information regarding plaintiffs' claims were simply ignored.  For example:

(a)  ***Plaintiffs failed to provide information on the specific locations of alleged exposures***.  Section V of the Questionnaire asked each plaintiff to mark with an "X" on an attached map of Northern Ecuador where the plaintiff was at the time of each alleged exposure (and also to mark with an "O" where his/her exposed field of crops was located, and a "check mark" where his/her injured farm animals were located).  *Only 60 of the first 800 plaintiffs who submitted Questionnaire responses attached a map to their responses;* 39 of these plaintiffs marked and attached the agreed-upon map while the remainder (21 plaintiffs) attached hand-drawn maps that do not properly respond to the instructions and do not reveal the alleged location of a plaintiff or his/her property with any specificity.  The remaining 740 plaintiffs failed to provide any map at all.[11]

(b)  ***Medical record support for alleged personal injuries is lacking***.  Section IX.A of the Questionnaire directed responding plaintiffs who claim personal injuries to provide copies of any medical records in their possession or in the possession of their Medical Care Providers, (using the Authorization for Release of Medical Records attached to the Questionnaire if needed to obtain such

---

Questionnaire was created to obtain answers to all of these questions – if its clear instructions had been followed and its questions had been answered in their agreed-upon form.

[11] A copy of the map attached to the agreed-upon Questionnaire may be found at the last two pages of Exhibit F.

documents).  *No medical records have been submitted for any of the first 800 responding plaintiffs.*

(c)  ***Employment record support for alleged damages is lacking***.  Section IX.C of the Questionnaire directed responding plaintiffs who claim lost wages to provide copies of specified employment records, (using the Authorization for Release of Employment Records attached to the Questionnaire if needed to obtain such documents).  *No employment records have been submitted for any of the first 800 responding plaintiffs.*

4.    In most cases, the plaintiffs again failed to provide "the computation of each category of damages" claimed by each plaintiff as required by Fed. R. Civ. P. 26(a)(1)(iii) – just as they failed to do in their January 28, 2008 Initial Disclosures.  *See* Section III.A.4 below on p. 22-24.

Each of these deficiencies is addressed in the following section, which demonstrates that the individual plaintiffs have violated the Court's directions, the Federal Rules, and the agreements of the parties, and should now be ordered to comply with each.

## III.    <u>LEGAL ARGUMENT</u>

### A.    <u>The Individual Plaintiffs have Violated the Court's Directions and Federal Rules</u>

#### 1.    The plaintiffs' "Initial Declaration" renders the Questionnaire responses meaningless.

As noted above, the parties agreed that the plaintiffs' responses to the Questionnaire would be considered as responses to Rule 33 interrogatories.  Under Fed. R. Civ. P. 33(b)(3) an interrogatory must be "answered separately and fully in writing."  This requirement is generally interpreted to mean that a response must be clear and understandable.  *See e.g., United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 524 (D.D.C. 2006)

15

(rejecting a vague answer as "wholly inadequate to satisfy Rule 33's directive that interrogatories 'shall be answered separately and fully in writing'").  Interrogatory responses are sworn testimony of a party and must be provided in a manner admissible for use at trial.  *See Davidson v. Goord,* 215 F.R.D. 73, 77 (W.D. N.Y. 2003) (interrogatory answers "must be provided under oath" and "must be in a form suitable for use at trial"); *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996) ("Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories.")

By stating that each plaintiff's response to the Questionnaire may be based on rumors or hearsay or other forms of proof that may not be reliable or admissible as evidence, the plaintiffs' counsel have disregarded Fed. R. Civ. P. 33(b)(3).  Although the first 800 responses to the Questionnaire are signed by each responding plaintiff using agreed-upon verification language, the plaintiffs' "Initial Declaration" disavowing the reliability or admissibility of their responses and suggesting that the answers may be based on rumors or hearsay, makes the verification language meaningless.

Plaintiffs' explicit reliance on rumors or hearsay also directly contradicts what plaintiffs' counsel told the Court last fall when they recommended the use of a Questionnaire in lieu of Rule 33 interrogatories:  "An orderly questionnaire process will provide DynCorp with *verified factual information* about individual plaintiffs."  11/19/07 Jt. R. 16.3 St. at 17.  (emphasis added).  And at the November 27, 2007 scheduling conference, plaintiffs' counsel made clear that the Questionnaire would serve as a substitute for formal discovery requests under the Federal Rules:

> What we envision for [Q]uestionnaires is [that] we would like to obtain one verification for discovery responses from these plaintiffs simply because they are in villages in rural Ecuador ....
> and we'll have to have lawyers and paralegals on the ground to

> verify all the information.  So we would like the discovery from
> DynCorp to the plaintiffs to be basically all at once.

(Ex. A – 11/27/07 Tr. at 25-26 (comments of plaintiffs' counsel Stephen Terrell)).  *See also*

Exhibit M (June 6, 2008 e-mail from Mr. Terrell on behalf of plaintiffs, stating, "We have

always treated these questionnaires as equivalent to interrogatories under Fed. R. Civ. P. 33.

Pursuant to the Federal Rules and the Consent Notice[,] DynCorp is entitled to verified responses

on the agreed schedule.")

Plaintiffs have had ample opportunity to investigate their claims and should not be

permitted to hide behind qualifying language for fear that the answers they have provided to the

Questionnaires lack evidentiary foundation.  Particularly in light of potential translation issues

and plaintiffs' lack of familiarity with United States courts, each plaintiff should be compelled to

respond to the Questionnaire without qualification and with the knowledge that the individual

plaintiffs must provide responses that they can verify under oath as being true.  *Cf. Gonzales,*

2007 WL 3036093, at *3 (noting that an Ecuadorian plaintiff might easily have been confused by

the contract she signed with plaintiffs' attorneys and that she had "no clue that her name would

be used to launch a suit in the United States and thereby subject her to the liabilities and costs

she faces for the false claim" or "the ramifications of being a plaintiff in our federal courts").

### 2.    The plaintiffs have failed to comply with the Court's direction about necessary foundational disclosures.

In light of the parties' agreement that the Plaintiffs' Questionnaire would serve both as

interrogatories and supplemental Initial Disclosures due to the deficiencies in the plaintiffs'

January 28, 2008 Initial Disclosures, the defendants took care to include in the Questionnaire

each of the questions that the Court had directed the plaintiffs to answer, and also included clear

instructions at multiple places in the Questionnaire that the form must be completed for each

separate plaintiff and for each separate exposure event.  These questions and instructions were

specifically agreed to by plaintiffs' counsel in face-to-face negotiations.  Yet the plaintiffs'

counsel appear to have unilaterally dropped key language from the questionnaire when it was

presented to plaintiffs and, in any event, plaintiffs' responses again repeatedly fail to provide the

basic foundational disclosures this Court required as being "pretty essential in moving the case

forward."  (Ex. A – 11/27/07 Tr. at 11.)

 Illustrative of the changes made to the agreed-upon questionnaire, Plaintiffs counsel

apparently dropped the instruction following the first question in Section I, which stated:  "Note:

There must be one form completed for each plaintiff and for each other person claiming

injuries."  *See* Ex. F at ¶ I.A on p. 2; Ex. I at ¶ 9 (a).  This deletion may explain the fact that some

of the 800 Questionnaire "responses" provided to defendants on June 27, 2008, contain no

information whatsoever other than the name of the plaintiff or a few other identifying facts.

Plaintiffs' counsel also appear to have deleted crucial agreed-to language seeking specificity

regarding alleged claims of exposure.  For example, the agreed-to Questionnaire asked each

plaintiff to identify by day, month and year, each occasion on which he or she allegedly was

exposed to a Plan Colombia herbicide.  Ex. F at ¶ V.C on p. 13.  The question as administered

inexplicably deleted the day, month, and year specification, stating only, "When were you and

your property exposed to the herbicide?"  Ex. I at ¶ 9(d).  Again, this deletion may or may not

explain why the great majority of the first 800 responding plaintiffs who answered this question

did so with vague responses such as "2002, 2003, 2004" or "From 2002 until 2007," or "Since

2002."  Moreover, only about 500 of the 800 responding plaintiffs chose to answer this question

at all.  Similarly, the agreed-upon instructions about how each plaintiff was to describe where

he/she lived were inexplicably dropped from Section II.H of the Questionnaire, *see* Ex. F at p. 13

and Ex. I at ¶ 9(c), and the dollar-signs were dropped from the questions asking for a summary of plaintiffs' damages.  *See* Ex. F. at Sec. VII.A on p. 29; Ex. I at ¶ 9(g).[12]

When defendants pointed out to plaintiffs' counsel in the "meet-and-confer" correspondence related to this motion that alleged exposure dates like "2000 to 2005" set out in the Questionnaire responses were inadequate foundational disclosures, plaintiffs'' counsel responded : "[W]e can only provide you with the information Plaintiffs can provide . . . .  They have provided you with their best estimate at this time based on the available facts."  Exhibit K at 2.  As the Court recognized in requiring plaintiffs to provide exposure information with more specificity, such vague "best estimates" do not provide a foundational basis sufficient to state a valid claim.  If a plaintiff cannot provide such basic information as the specific dates of the alleged exposure, his or her claim should be dismissed.[13]

As noted above, plaintiffs' responses are similarly vague or non-existent with respect to other basic prerequisites of their claim, including the failure to identify the alleged location of their exposures, to link specific claimed injuries or damages with specific alleged exposures, and to support their claims of a causal link between exposures to Plan Colombia spraying and their alleged adverse health effects with any records of medical care.  Each of these facts are solely

---

[12] Plaintiffs' counsel asserts that these changes reflect a technical glitch in converting computer files and that plaintiffs in fact were asked the agreed upon questions rather than those that appear as part of the provided Questionnaire responses. Ex. K at 2.  Even accepting this assertion as correct – despite the fact that some of the changes involve wholesale rewriting and reordering of questions, *see* Exhibits I and L at 2 – plaintiffs at best thus have provided Questionnaire responses in which some of the responses do not correspond with the written questions that immediately precede them.  In any event, this technical explanation cannot cure the fact that plaintiffs' responses again fail to provide the specificity required by the Court.

[13] As one court has explained:  "Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions." *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004) (also noting that "*reasonable inquiry*" is required before a Rule 26(a) disclosure is signed and submitted).

within the knowledge and control of plaintiffs, and it is their burden to provide this information to establish the *bona fides* of their legal claims

Plaintiffs' incomplete and vague answers to the Questionnaire also violate Rule 33's requirement for full and complete answers to interrogatories, and plaintiffs should be compelled to provide proper responses for this reason as well. *See Milner v. Nat'l Sch. of Health Tech.,* 73 F.R.D. 628, 632 (E.D. Pa. 1977) ["Interrogatory] [a]nswers must be complete, explicit and responsive."); *Hunter v. Int'l Sys. & Controls Corp.,* 56 F.R.D. 617, 631 (W.D. Mo. 1972) ("Parties, like witnesses, are required to state the truth, the whole truth and nothing but the truth in answering written interrogatories.").

Furthermore, plaintiffs' counsel's repeated qualifications regarding the likely accuracy of the plaintiffs' responses and the absence to date of any medical or employment records that might provide independent corroboration of such responses raises significant new concerns as to whether even complete responses to the existing Questionnaire will be sufficient to satisfy the Court's requirement that plaintiffs provide a "basis for each plaintiff's belief that the defendants' conduct caused the claimed injuries." (Ex. A - 11/27/07 Tr. at 11). Plaintiffs' counsel has candidly acknowledged that the information provided by the plaintiffs in their responses to the Plaintiffs' Questionnaire will be based on "best estimates," "hearsay," and "other forms of evidence which are neither reliable nor admissible as evidence." Ex. K. Thus, even facially complete and specific responses to the Questionnaires appear unlikely to provide the type of reliable evidentiary basis that this Court recognized as necessary to permit plaintiffs' claims to proceed. Accordingly, defendants further request that each plaintiff be required to provide with their Questionnaire responses, sworn statements by qualified medical or scientific witnesses that specifically link each plaintiff's alleged personal injuries or property damages to the effects of

Plan Colombia spraying.   *See*, *e.g.*, *Burns v. Universal Crop Protection Alliance*, No. 4:07CV00535, 2007 WL 2811533 (E.D. Ark. Sept. 25, 2007) (requiring individual plaintiffs to provide, *inter alia*, expert affidavits linking alleged drift of herbicide to crop damage in order to establish threshold basis for their claims).

### 3.    Initial Disclosures and Questionnaire Responses must be submitted *in English* on the date they are due.

The plaintiffs have repeatedly acknowledged their obligations to submit English translations of both their Initial Disclosures and their Questionnaire responses – but have not yet done so.[14]   A party's obligation to provide written discovery in English has been recently addressed in *E. & J. Gallo Winery v. Cantine Rallo, S.p.A,* No. 1:04cv5153, 2006 WL 3251830 (E.D. Cal. Nov. 8, 2006).   In *E. & J. Gallo*, a party responded to an interrogatory by producing Italian-language documents in lieu of written response.   The Court explained that this response was inadequate because answers to interrogatories are required to be in English:

> [T]he [responding party] has made the decision to *produce the documents in lieu of responding to an interrogatory, which imposes the duty on [the responding party] to provide documents from which the response to the interrogatory is clearly ascertainable.*   Referencing documents written in a foreign language does not completely fulfill this duty.

*Id.* at *5 (emphasis added).[15]   Here, plaintiffs are not relying on pre-existing foreign language documents to respond to the Questionnaires, but have prepared written discovery responses under Rules 26(a) and 33 *in Spanish without English translations.   See also Traver v. Officine*

---

[14] Plaintiffs' counsel Terry Collingsworth's recent letter of July 9, 2008, again agrees to provide English translations of the Questionnaire responses – with no statement of *when* this will occur. *See* Exhibit K at 1.

[15] The rule with respect to translating pre-existing foreign language documents produced in response to Rule 34 document requests may be different, *see In re Korean Air Lines Disaster,* 103 F.R.D. 357, 358 (D.D.C. 1984), but that issue is not currently before the Court.

*Meccaniche Toshici SpA,* 233 F. Supp. 2d 404, 417 (N.D.N.Y. 2002) (ordering that interrogatories and their responses be translated into English).  Having elected to pursue their claims in a United States District Court, the plaintiffs must abide by the rules and procedures of this court, including the use of English as the official language of the Court, and should now bear the responsibility and the cost of translating their responses into English.[16]

Finally, the defendants respectfully ask the Court to clarify that until such English translations are provided, the plaintiffs shall not have satisfied their legal obligations under the pretrial schedule to provide Initial Disclosures and Questionnaire responses to the defendants, and accordingly, discovery will not begin against the defendants until this has occurred.  This is consistent with the existing schedule set forth in the April 17, 2008 Consent Notice, which provides that fact discovery will begin when all Plaintiffs' Questionnaire responses have been served on the defendants.  Until such responses are translated into English, they are not effective disclosures to the defendants.

### 4.    Most plaintiffs have failed to produce their computation of damages as required by Rule 26(a).

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), plaintiffs are required *as part of their Initial Disclosures* to provide "a *computation* of each category of damages claimed by the disclosing party"  (emphasis added).  In other cases, this Court has excluded evidence of damages not

---

[16]  In the analogous situation of determining who should bear travel cost for depositions, courts generally have held that foreign plaintiffs who bring suit in a U.S. forum are obligated to travel to that forum for purposes of depositions, rather than imposing on defendants the cost of traveling to plaintiffs' home.  *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 54 F.R.D. 280, 281 (S.D.N.Y. 1971) (holding that a foreign plaintiff that chose New York as its forum "cannot impose upon the defendant the extraordinary expense and burden of traveling to a foreign country to conduct a deposition . . . ."); *see also Societe Internationale pour Participants Industrielles et Commerciales S.A. v Clark,* 8 F.R.D. 565, 566 (D.D.C. 1948) (deposition of Swiss directors ordered taken where the suit was to be tried).  The same general principle applies here.  Having made their election to sue in the United States, it is only proper that plaintiffs – not defendants – should bear the burden of providing written discovery responses in English on the date such responses are due.

disclosed pursuant to the Rule.  *See Gilvin v. Fire*, No. 99-CV-530, 2002 WL 32170943, at *3

(D.D.C. Aug. 16, 2002) ("Plaintiff has failed to comply with the disclosure requirement in Rule

26(a)(1)[ ] and the evidence of his damages for travel restrictions must therefore be excluded").

Such result is consistent with this Court's LCvR 26.2(a), which states: "A party that without

substantial justification fails to disclose information required by . . . Rule 26(a) . . . is not, unless

such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion

any . . . information not so disclosed."  S*ee also Design Strategy, Inc. v. Davis* , 469 F.3d 284,

293-96 (2d Cir. 2006) (affirming the district court's preclusion of lost profits evidence because

the plaintiff did not disclose a computation of such damages in its Rule 26(a)(1) initial

disclosures and explaining the importance of the mandatory disclosures in that Rule); *Viveros v.*

*Nationwide Janitorial Ass'n*, 200 F.R.D. 681, 683 (N.D. Ga. 2000) (compelling the plaintiffs'

production of "a good faith estimate of damages and methods of calculation" based on the

plaintiffs' knowledge at the time of disclosure).

The individual plaintiffs here have repeatedly failed to provide any computation of the

amount of damages they are alleging.  They first failed to provide the required information about

their claimed damages in their January 28, 2008 Initial Disclosures – even though they

represented to the Court that they would "provide the Court and DynCorp with a more definite

statement as to the *precise* injuries and *damages* alleged by the Plaintiffs."  Jt. R. 16.3 St. at 16

(emphasis added).  To address this omission, the Plaintiffs' Questionnaire asked specifically for

the identification of each kind of injury alleged *and for the dollar amount* of damages sought by

each plaintiff in each category of alleged injury.  *See* Exhibit F at Section VII.A on p. 29.  But, as

noted above, the plaintiffs' counsel appear to have dropped the dollar signs from Section VII.A

of the Questionnaire, and the result was that many responding plaintiffs filled in the kinds of

crops or farm animals they allegedly lost – rather than a computation of damages as required by Rule 26(a)(A)(iii).  Indeed, only about 10% of the first 800 responding plaintiffs have provided dollar amounts of damages in response to the questions in Section VII.A of the Questionnaire. (It should be noted that *other* questions contained in the Questionnaire asked for the detail about what kinds of crops or animals were lost, so it should have been obvious that Section VII.A was designed to elicit the claimed *dollar value* for each category of damages, but it is difficult to assess blame when the form of the Questionnaire was needlessly altered to eliminate the dollar signs.)

The individual plaintiffs here have been given two chances to comply with Rule 26(a)'s requirement to disclose their "computation of each category of damages" and have failed to comply both times.  Plaintiffs should be compelled to provide such computations or have their claims for such financial damages excluded.

### B.    The Plaintiffs have Thwarted the Court's Initial Case Management Efforts.

In *Leader One Financial Corp. v. Aqua Resources Group, Inc.,* No. 06-2244-CM, 2006 WL 3256499, at *2 (D. Kan. Nov. 9, 2006), the Court noted that the failure to comply with a party's Rule 26(a) disclosures and the Scheduling Order in that case "frustrates the court's goal of an orderly and efficient resolution of the matter [and] potentially prejudices any or all parties to the litigation . . . ."  The individual plaintiffs' repeated failures to comply with their disclosure and discovery obligations in this case have had the same result.

In its November 27, 2007 scheduling order (at p. 1), the Court set forth a procedure whereby plaintiffs were to provide meaningful Initial Disclosures on January 28, 2008, which would allow the parties thereafter to confer on the selection of the first 800 plaintiffs who would respond to a Plaintiffs' Questionnaire.  This, in turn, would allow for an early selection by September 25, 2008, of test plaintiffs to serve as a "first phase trial group."  It is clear that this

was the Court's intention because the Court asked plaintiffs' counsel:  "Is there any room for having the defendants look over the [I]nitial [D]isclosures that you all will have provided to them within the first 60 days and request that X number of the people whose names and information you have given them to be included among that first 800?"  (Ex. A – 11/27/07 Tr. at 28.)  Although plaintiffs' counsel answered this question in the affirmative (*id*) and the Court later confirmed its intent that "the defendants [would] have input on which initial group of 800 will be responding . . .," (*id.* at 38), it is clear that the sparse and inadequate Spanish disclosure forms produced by the plaintiffs on January 28, 2008, did not permit any meaningful review of the individual plaintiffs' circumstances, let alone allow defendants to have input on the selection of the first 800 plaintiffs who would respond to the Questionnaire.  Indeed, the defendants had no role whatever in that selection process.  Likewise, although the Court expressly stated its view that plaintiffs would need to provide Questionnaire responses on a rolling basis starting before the April 25, 2008 deadline for the first 800 plaintiffs in order to allow sufficient time for the selection of test plaintiffs, plaintiffs did not provide any responses until June 27, 2008, and have yet to produce a single Questionnaire response in English.[17]

Plaintiffs' repeated failures to fulfill their disclosure and discovery obligations have demonstrated clearly that the case cannot proceed along the pretrial path envisioned by the Court during the November 27, 2007 hearing.  Plaintiffs must provide the Initial Disclosures required by the Court; they must provide verified and complete answers to the Plaintiffs' Questionnaire, and they must provide these disclosures and discovery in English.  Only after plaintiffs have

---

[17] During the November 27, 2007 scheduling conference, plaintiffs' counsel repeatedly assured the Court that the Questionnaire responses would be "produced on a rolling basis," Ex. A at 26, 34, 35, 42.  The Court  expressly relied upon this representation in issuing its scheduling order:  "[W]e'll go with a deadline for the initial 800 questionnaire responses . . . [to] be due April 25th, 2008, with the understanding these will be produced on a rolling basis, in any event, rather than simply hitting the defendants with all 800 on that deadline."  *Id.* at 42.

satisfied these threshold obligations can the parties and the Court address the issue of how the case should thereafter proceed.

**IV.** **CONCLUSION**

      For the reasons set forth herein, the defendants' motion to compel should be granted. A proposed order to carry out the requested relief is submitted for the Court's consideration.

                                         Respectfully submitted:

Dated: August 1, 2008                    /s/ Rosemary Stewart

                                 Joe G. Hollingsworth (D.C. Bar # 203273)
                                 Eric G. Lasker (D.C. Bar # 430180)
                                 Rosemary Stewart (D.C. Bar # 204438)
                                 SPRIGGS & HOLLINGSWORTH
                                 1350 I Street, NW
                                 Washington, D.C. 20005
                                 Phone: (202) 898-5800
                                 Fax: (202) 682-1639

                                 Counsel to the Defendants

559863v6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Venancio Aguasanta Arias, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case Number: 1:01cv01908 (RWR) |
| v. | ) | |
| | ) | |
| DynCorp, *et al.* | ) | |
| Defendants. | ) | |
| | ) | |
| Nestor Ermogenes Arroyo Quinteros, *et al.*, | ) | Case Number: 1:07cv01042 (RWR) |
| | ) | |
| Plaintiffs, | ) | (Cases Consolidated for Case |
| v. | ) | Management and Discovery) |
| | ) | |
| DynCorp, *et al.* | ) | |
| Defendants. | ) | |

**EXHIBITS IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL THE INDIVIDUAL PLAINTIFFS
TO SATISFY THE PLAINTIFFS' OBLIGATIONS UNDER RULE 26(a) (INITIAL
DISCLOSURES) AND RULE 33 (INTERROGATORIES) AND TO PROVIDE
VERIFIED, FACTUAL AND COMPLETE RESPONSES *IN ENGLISH*
TO THE PLAINTIFFS' QUESTIONNAIRE**

Filed: August 1, 2008

**INDEX TO EXHIBITS IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL THE INDIVIDUAL PLAINTIFFS
TO SATISFY THE PLAINTIFFS' OBLIGATIONS UNDER RULE 26(a) (INITIAL
DISCLOSURES) AND RULE 33 (INTERROGATORIES) AND TO PROVIDE
VERIFIED, FACTUAL AND COMPLETE RESPONSES *IN ENGLISH*
TO THE PLAINTIFFS' QUESTIONNAIRE**

| Document | Exhibit |
|---|---|
| – Excerpts from the November 27, 2007 transcript of the initial scheduling conference | A |
| – Defense counsel Rosemary Stewart's letters to plaintiffs' counsel dated January 29, 2008 and February 26, 2008 | B |
| – Plaintiffs' counsel's questions used to prepare the individual plaintiffs' January 28, 2008 Initial Disclosures | C |
| – Plaintiffs' counsel Jeff Frazier's e-mail dated February 20, 2008 | D |
| – Defense counsel Rosemary Stewart's e-mail to plaintiffs' counsel dated February 5, 2008 and letter to plaintiffs' counsel dated February 14, 2008 | E |
| – Defense counsel Rosemary Stewart's e-mail to plaintiffs' counsel dated March 4, 2008, attaching final English version of Plaintiffs' Questionnaire | F |
| – Defense counsel Rosemary Stewart's e-mail to plaintiffs' counsel dated March 31, 2008 (without its attachments) | G |
| – Plaintiffs' counsel Stephen Terrell's e-mail to defense counsel dated March 20, 2008 | H |
| – Declaration of Rolando R. Sanchez in Support of DynCorp International's Motion to Compel | I |
| – Defense counsel Rosemary Stewart's letter to plaintiffs' counsel dated June 30, 2008 | J |
| – Plaintiffs' counsel Terry Collingsworth's letter to defense counsel dated July 9, 2008 | K |
| – Defense counsel Rosemary Stewart's letter to plaintiffs' counsel dated July 10, 2008 | L |
| – Plaintiffs' counsel Stephen Terrell's e-mail to defense counsel dated June 6, 2008 | M |

562236v1

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | |
|---|---|
| VENACIO AGUASANTA ARIAS, et al., | ) ) ) |
| Plaintiffs, | ) ) Civil Action |
| and | ) No. CA01-1908 ) No. CA07-1042 |
| NESTOR ERMOGENES ARROYO QUINTEROS, et al., | ) ) November 27, 2007 ) 10:30 a.m. |
| Plaintiffs, | ) ) Washington, D.C. |
| v. | ) ) |
| DYNCORP, et al., | ) ) |
| Defendants. | ) |

*TRANSCRIPT OF STATUS CALL PROCEEDINGS*
*BEFORE THE HONORABLE RICHARD W. ROBERTS*
*UNITED STATES DISTRICT JUDGE*


APPEARANCES:

For All Plaintiffs:          AKIN, GUMP, STRAUSS, HAUER & FIELD
                             Michael J. Madigan, Esq.
                             1333 New Hampshire Avenue, NW
                             Washington, D.C. 20036
                             (202)887-4017

For Quinteros                CONRAD & SCHERER, LLP
Plaintiffs:                  Conrad R. Scherer, Esq.
                             William J. Wichman, Esq.
                             Jeff L. Frazier, Esq.
                             633 South Federal Highway
                             Suite 800
                             Fort Lauderdale, FL  33302
                             (954)462-5500

For Quinteros                GIRARDI & KEESE
Plaintiffs:                  Jennifer a. Lenze, Esq.
                             1126 Wilshire Blvd.
                             Los Angeles, CA  90017
                             (213)481-1554

Appearances: (Cont.)


For Arias Plaintiffs:          INTERNATIONAL RIGHTS ADVOCATES
                               Terry Collingsworth, Esq.
                               218 D Street, SE Third Floor
                               Washington, D.C.   20003
                               (202)470-1654


For Quinteros                  ENGSTROM, LIPSCOMB & LACK
Plaintiffs:                    Stephen Terrell, Esq.
                               10100 Santa Monica Blvd.
                               16th Floor
                               Los Angeles, CA   90067
                               (310)552-3800



For the Defendants:            SPRIGGS & HOLLINGSWORTH
                               Joe G. Hollingsworth, Esq.
                               Rosenmary Stewart, Esq.
                               Eric Gordon Lasker, Esq.
                               1350 I Street, NW
                               Washington, D.C.   20005
                               (202)898-5843

Court Reporter:                Scott L. Wallace, RDR, CRR
                               Official Court Reporter
                               Room 6509, U.S. Courthouse
                               Washington, D.C. 20001
                               202.326.0566
                               scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1   everybody is interested in trying to use that first sample for

2   purposes of making hard judgments about going forward and perhaps

3   dwindling down the amount of time and money and resources needed

4   to go beyond that initial group, we can have a group that makes

5   sense and furthers those goals.

6          With that approach in mind, I did want to ask you all,

7   having read your 16.3 reports, a number of questions as we set up

8   a schedule.

9          I'm heartened to see that everybody agrees that initial

10  disclosures can be put forward in 60 days, and I did see on page

11  16 of the report a list of items that the plaintiffs were

12  proposing to include in a 60-day period which, I guess, would be

13  considered to be the initial disclosures.  I thought, however, it

14  would be useful to add to this list of about eight items

15  something that's not quite what the defendants had asked for but

16  at least moves in that direction, and that is some representation

17  in the initial disclosures or that list of eight items about the

18  basis for each plaintiff's belief that the defendants' conduct

19  caused the claimed injuries.  I think that's going to be pretty

20  essential in moving the case forward in the structure that I've

21  talked about.

22         Let me just ask if -- and it seems to be the kind of

23  information that the plaintiffs' counsel would already have

24  gotten some feel for in the initial due diligence before filing.

25  But I do intend for that initial period and the initial

1    disclosures from at least the plaintiffs to include that kind of

2    information, what the basis is for the plaintiffs' belief that

3    the defendants' conduct caused the injuries that they're

4    claiming.

5         Let me just ask the plaintiffs, though, if you have any

6    comment about that and whether you see any difficulties that

7    would be posed by requiring that -- added on to the list of nine

8    items you have on page -- eight items you have on page 16 that

9    you would be disclosing.

10        MR. MADIGAN:   I think that would be very doable, Your

11   Honor.  As Your Honor knows, our group of plaintiffs are

12   villagers that live in Ecuador and live by the river and had

13   terrific crops and had a wonderful existence until the planes

14   came and sprayed.  And then within a very short period of time,

15   people developed illnesses, the water was polluted, schools were

16   closed, people had severe respiratory problems, and I think that

17   we would be able to put that together, as Your Honor requests,

18   and I think that would be a good thing to do.

19        Now, this may not be the appropriate time, and stop me,

20   Your Honor, if you want to do it later, but I wanted to mention

21   briefly for our part what we wanted, which is we wanted

22   information about when their planes flew, where they flew and

23   what they carried, and we want internal DynCorp documents,

24   e-mails, memoranda, et cetera, and thus far we're being told we

25   don't get any, not even a single document without going through

1    multiple state department hoops of people reviewing documents and

2    et cetera, et cetera.

3         And so in terms of a two-way street here, that's what we

4    want, and we would work with the Court to provide the type of

5    information Your Honor suggested.

6         THE COURT:  Okay.  Well, that sounds like a discovery

7    dispute that's looming.  I didn't want to get to that yet because

8    we'll have a mechanism for getting discovery disputes handled.

9    But with respect to the disclosures from the plaintiffs, I did

10   want it to be something more than simply a temporal connection,

11   "we were living a good life, we know that some spraying happened,

12   and then things started happening."

13        Without having sort of the full-blown -- I think it was

14   called lone pine -- kind of disclosures that were verified and

15   accompanied by doctors' opinions and experts' conclusions and so

16   forth, I do think it would be -- it would have to be a bit more

17   flushed out than that, than just saying there's some temporal

18   connection.  There ought to be the kind of detail that would be

19   useful by way of identification of dates or times, if that's

20   possible, airplanes, descriptions, what they saw, colors of

21   fumes, any kind of details like that, and added into temporal

22   connections.  Plus, if they did have any doctors that they

23   visited after the onset, assuming the onset was temporally

24   connected in some way, what the doctors might have told them.

25        Now, I know that might be hearsay, old fashion, but it

1    would certainly be the kind of stuff that a plaintiff in an

2    ordinary case would put on in response to an interrogatory in any

3    event.  But I think, to move the case forward to get some of

4    these issues teed up, it would be required to put in some basis

5    of that type.

6        I also saw -- there appeared to be some dispute about

7    setting a deadline for amending the complaint or joining parties,

8    but I'm not sure I understood what precisely the disagreement

9    was.  I didn't know if there was an opposition by the plaintiffs

10   to have some deadline fixed for joining new plaintiffs, if there

11   are any; whether the defendants were opposing the methods that

12   the plaintiffs had proposed to use, namely some appendix or

13   notice of adoption to join new plaintiffs; or whether there

14   really isn't a dispute there and it's simply two overlapping

15   recommendations.  Is there really a dispute there?

16       MR. SCHERER:  Your Honor, Bill Scherer for Quinteros

17   plaintiffs.  I don't think so.  I think we had an agreement in

18   principle that we would add plaintiffs by appendix.

19   Defendants -- the defendants seem to suggest in their papers a

20   May cutoff, and I think we said the summer.  I apologize for the

21   length of that joint statement, it's kind of long.  We have more

22   people to join, and I wanted to let the Court know that now.

23   There are 1800 more that we're processing, and with the same

24   basic information, and so that we are going to add, with the

25   Court's permission, of course, by appendix, we hope, and we hope

```
1    due in 60 days, I think I would want to have the defendants draft

2    the Quinteros questionnaire that the plaintiffs would be

3    receiving from them.  I would like to set that as a 90-day

4    period.  It may be that you've already gotten something together

5    that you can give sooner than that, but I would also like to

6    begin the -- end class discovery around that time and then

7    potentially open up fact discovery around that time.  So what I

8    would like to do is to set -- let me just set some timetables,

9    give you dates.  You come back and let me know if you see

10   problems with them.

11          I think the Quinteros questionnaire should be given over

12   no later than 90 days from today.  What would that be?

13          THE COURTROOM CLERK:  February 25th.

14          THE COURT:  February 25th, 2008.  And that also would be

15   the end of the class discovery period.  So the initial discovery

16   period would be for class certification motion, but we'll have

17   this class certification motion deadline be 120 days from today.

18   What would that be?

19          THE COURTROOM CLERK:  March 26th.

20          THE COURT:  March 25th.  That's a bit shorter than --

21          THE COURTROOM CLERK:  26th, March 26th.

22          THE COURT:  I'm sorry, March 26th, 2008.  And by that

23   point I think the plaintiffs should be in a position to know what

24   amendments or additional parties they'll need to move for, so

25   we'll have the March 26th, 2008 deadline apply to amending the
```

1    that can be delivered far sooner than that; we'd have class

2    discovery preceding from today and ending on February 25th.

3    That's 90 days.  And the fact discovery would begin after that.

4    We'd have the classification motion would be due in 120 days, and

5    have that as the deadline to join any additional plaintiffs.

6    We'd have responses to the Quinteros' questionnaires due in 150

7    days, and then we'd have you all confer and designate the first

8    trial group by 180 days.  And we'd have an additional 60-day

9    period for fact discovery.  So it would be closing at about 240

10   days.  Anybody want to comment on that proposal?  Tear it up only

11   gently.

12        MR. TERRELL:  Good morning, Your Honor, Stephen Terrell.

13   The plaintiffs are actually -- the schedule works perfectly for

14   us in all respects except with respect to the questionnaire, and

15   I simply would like to clarify what we from the plaintiffs' side

16   envision in the questionnaire process.

17        What was attached to the defendants' proposed scheduling

18   order was their lone pine submission, which I believe the

19   defendants intended as a preliminary -- they called it *prima*

20   *facie* interrogatory set to the plaintiffs.  What we envision for

21   questionnaires is we would like to obtain one verification for

22   discovery responses from these plaintiffs simply because they are

23   in villages in rural Ecuador, there's translation issues -- the

24   questionnaire will be administered in Spanish -- and we'll have

25   to have lawyers and paralegals on the ground to verify all the

1  information.  So we would like the discovery from DynCorp to the

2  plaintiffs to be basically all at once.  In our experience with

3  toxic tort litigations, questionnaires range from between 20 and

4  40 pages, and it would include detailed questions to all the

5  plaintiffs.  It's usually prepared by defendants in conjunction

6  with their medical experts in that it will have questions about

7  alternative causation, residence history, health history of the

8  plaintiff, specific information about claimed property damage or

9  economic loss.  And what we have employed in other cases and what

10  we would propose is that we would request that DynCorp provide us

11  with their proposed questionnaire.  If it's 40 pages, it's 40

12  pages.  We'll look at it.  If there's any question that's overly

13  objectionable, we can try to meet and confer.  We'll settle on a

14  final questionnaire.  We'll get it translated into Spanish so

15  that everyone agrees upon it, and then we'll start the process of

16  getting it answered by each and every of our plaintiffs.

17          THE COURT:  All 3600?

18          MR. TERRELL:  All 3600.  What we have experienced in other

19  cases is a reasonable response rate is about a hundred a month

20  can be produced on a rolling basis from the plaintiffs to the

21  defendants.  If the Court would like a more aggressive schedule,

22  we'll just get more bodies in Ecuador.

23          THE COURT:  That's three years, isn't it?

24          MR. TERRELL:  That would be.

25          THE COURT:  All right.

1   the plaintiffs, that basically what we will be doing is we will

2   be obtaining as many questionnaires, completed questionnaires as

3   fast as we can from Ecuador, and we'll most likely be filling

4   them out on an as-people-come-through-the-door basis rather than

5   going and saying, okay, person X, you're the first person I'm

6   going to talk to to fill out the questionnaire.

7        Just as a practical matter, the way these things work is

8   that we will make known to our clients that paralegals or

9   attorneys will be in the village during a certain period of time,

10  that they all have been ordered by the Court to answer questions,

11  and that they need to come to a designated location during that

12  time period, and it will be whoever comes first in the door gets

13  assigned, and it's a little bit like the Department of Motor

14  Vehicles, a little.

15       THE COURT:  Is there any room for having the defendants

16  look over the initial disclosures that you all will have provided

17  to them within the first 60 days and request that X number of the

18  people whose names and information you have given them be

19  included among that first 800?

20       MR. TERRELL:  We would certainly be amenable to that

21  suggestion.

22       THE COURT:  Do you anticipate that your initial

23  disclosures in 60 days will be initial disclosures listing the

24  nine items on page 16 for 1600 people or for 3600 people?

25       MR. TERRELL:  I'll have to defer to another counsel that's

1          THE COURT:  Well, if I heard counsel correctly, the

2    production of responses to the questionnaires could probably

3    produce at least half of the Quinteros plaintiffs at some early

4    date.  Did I hear you correctly on that, about 800?

5          MR. TERRELL:  Yes, Your Honor.

6          THE COURT:  Questionnaires could be provided.  And with

7    respect to the class issues, certainly 800 out of what, what did

8    we say 36 --

9          MR. MADIGAN:  3600.

10         THE COURT:  What is that, about a sixth or so?  That's not

11   a bad sampling.  Remind me how soon you said that first group of

12   about 800 could be provided.

13         MR. TERRELL:  Your Honor, for the first 800, based upon

14   the network we have down there, we could probably get those

15   within 60 to 120 days of receiving the final translated agreed

16   upon questionnaire from DynCorp, with the remainder thereafter to

17   be produced on a rolling basis.

18         THE COURT:  Why wouldn't that work?  Obviously, I would

19   have to extend the time periods here, but why wouldn't that work?

20         MR. HOLLINGSWORTH:  Yes.  Your Honor would have to extend

21   the class discovery cutoff date and the class certification

22   motion date, and then presumably Your Honor would set a hearing

23   thereafter.  But as Your Honor is probably not aware, Your

24   Honor's suggested schedule this morning would have class

25   discovery concluding before the answers to these questionnaires

1   are going to be provided, so that needs to be changed, with all

2   due respect.

3        MR. COLLINGSWORTH:  Your Honor, may I comment on the --

4        THE COURT:  Yes.  But just before you start, I think that

5   the questionnaire responses deadline that I had set here was the

6   final deadline.  Understanding that the plaintiffs had proposed

7   to have rolling production and understanding what counsel has

8   just proffered, we could potentially build in an initial deadline

9   for production of the first 800, which would permit us to not

10  have to stretch that period quite as widely.  Go ahead.

11       MR. COLLINGSWORTH:  Thank you, Your Honor.  Again, I

12  represent the class plaintiffs, and we would like to keep your

13  schedule if there's anything we can do to cooperate to make that

14  schedule work.  As you know, they've been waiting a while and we

15  would like to move forward.

16       I would comment, though, Your Honor, that this is an

17  unusual situation where if there was not the Quinteros case, if I

18  filed my class action with 11 representative plaintiffs, they

19  wouldn't get to take discovery of unnamed class members out there

20  in order to address my claims of commonality and typicality.

21  They just wouldn't.  So now they're somehow saying they have the

22  right to take discovery of 3600 Quinteros plaintiffs to somehow

23  support my class claims.  That would never happen in a normal

24  case.  So, that's a nonissue here, Your Honor.

25       THE COURT:  Is your class, though, going to expand with

1    at a 70-day period.  We'd follow that by an interim deadline for

2    production by the plaintiffs of questionnaire responses -- I

3    mean, I can put in the order 800, but it might make more sense

4    for you all to confer to determine what number up to 800 is going

5    to equip you adequately for moving forward.  But given counsel's

6    representations, I would certainly be hoping that the production

7    for that interim -- for that interim deadline would be

8    substantial.

9        Perhaps, just for ease sake, I'll just put in 800, the

10   initial 800, and the parties should confer based upon whatever

11   the plaintiffs' initial disclosures provide so that the

12   defendants have input on which initial group of 800 will be

13   responding with that understanding.

14       All right.  So we'll have -- the revision will be the

15   Quinteros questionnaire has to be produced within 70 days.  The

16   initial set of questionnaire responses, initial 800 questionnaire

17   responses -- did you project, counsel, on how long that would

18   take you or how quickly you could do that?  I think you did and

19   you have to remind me.

20       MR. TERRELL:  Within 60 to 120 days of receiving the final

21   version, so -- you know, to keep the schedule, we can get them in

22   60 days.

23       MR. SCHERER:  We'll keep the schedule of that 800.

24       THE COURT:  Come on up to the mike.  This fan is blowing

25   and it's hard for me to hear.

1          THE COURT:  Make that September 25th.  And is there a

2    November 25th for the close of fact discovery?

3          THE COURTROOM CLERK:  Yes.

4          THE COURT:  We'll have the close of fact discovery be

5    November 25th, and then set this down for an interim status

6    conference.  It might make sense to wait until then to actually

7    go into additional scheduling for experts.  We could do it now,

8    but I think this is already a year out, so we might as well wait

9    until then to do that, to set deadlines for expert designations

10   and dispositive motions.  So we'll set this up as the initial

11   schedule.

12         Just to recap, and catch me if I've gotten something wrong

13   here, we'd have the initial disclosures due on January 28th,

14   2008.  The defendants would produce to the plaintiffs their

15   proposed Quinteros questionnaire ten days after that.  That's

16   February 7th, 2008.  All right.  And then we'll go with a

17   deadline for the initial 800 questionnaire responses from the

18   plaintiffs, would be due April 25th, 2008, with the understanding

19   that these will be produced on a rolling basis, in any event,

20   rather than simply hitting the defendants with all 800 on that

21   deadline.  You said you would be able to do that?

22         MR. TERRELL:  Yes, Your Honor.

23         THE COURT:  All right.  And then we'll have class

24   discovery close on June 25th, 2008, with that date being the

25   opening of fact discovery.  The class certification motion

1    Thank you for coming in.

2         (Proceedings adjourned at 11:52 a.m.)

3

4                    C E R T I F I C A T E

5              I, Scott L. Wallace, RDR-CRR, certify that
      the foregoing is a correct transcript from the record of
6     proceedings in the above-entitled matter.

7

8              ----------------------------
               Scott L. Wallace, RDR, CRR
9               Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit B



Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

January 29, 2008

Jeff L. Frazier, Esq.
Conrad & Scherer, LLP
633 South Federal Hwy. 8th Fl.
P.O. Box 14723
Fort Lauderdale, Florida 33302

      Re:    *Quinteros v. DynCorp*, No. 07-cv-1042 (RWR) and
               *Arias v. DynCorp*, No. 01-cv-1908 (RWR) (D.D.C)

Dear Jeff:

      Thank you for the *Quinteros* Plaintiffs' Rule 26(a) Disclosures sent to us yesterday. On behalf of the DynCorp defendants, we have the following preliminary reactions and requests:

      1.    All of the disclosures about the individual *Quinteros* plaintiffs are in Spanish. While we are prepared to discuss with you an approach whereby the parties can share the cost of translating pre-existing documents from Spanish as necessary, the initial disclosure charts that you produced are not preexisting documents but were created by plaintiffs' counsel to serve on the defendants pursuant to Rule 26(a). Accordingly, like pleadings and filings with the Court, which the U.S. District Court for the District of Columbia requires to be in English, the plaintiffs' Initial Disclosures should also be in English. Please provide us with an English translation of the disclosures as soon as possible.

      2.    Your Disclosures have omitted the "computation of each category of damages claimed by" the individual *Quinteros* plaintiffs, as required by Fed. R. Civ. P. 26(a)(1). Please provide this information as soon as possible.

      3.    Please provide to us a copy of the report(s) prepared by Stalin Suarez-Castellanos and/or his team on which your damages expert Henry H. Fishkind relied in preparing his damages report for the provincial plaintiffs. Rule 26(a)(1) requires production of "documents or other evidentiary material" on which each damage computation is based, "including materials bearing on the nature and extent of injuries suffered." Please also provide copies of all other

Spriggs 25 Hollingsworth
YEARS

Jeff L. Frazier, Esq.
January 29, 2008
Page 2

documents provided to Mr. Fishkind from the provincial governments in support of his damages calculation.

4.      We will advise you shortly of our reaction to your proposed electronic discovery protocol sent to us as an attachment to your Rule 26 Disclosures. You will recall that we sent all *Quinteros* and *Arias* counsel the defendants' proposed form of document production protocol on November 7, 2007, but had not heard back from any of you. Please let us know if your proposed protocol is in response to the protocol we provided and, if so, the reasons for your proposed differences.

5.      In response to your request that we impose "an electronic data hold" on all possibly relevant materials, please be advised that the DynCorp defendants have imposed document preservation procedures for applicable documents, electronic and otherwise, since the time that the *Arias* and *Quinteros* complaints were filed.

6.      Finally, we decline your invitation to commence general discovery against DynCorp (with the categories of information set out in Paragraphs 4 and 5 of your Rule 26 Disclosures). Under the Scheduling Order in place for this litigation, general fact discovery against DynCorp begins on June 25, 2008. While we have been advised informally by *Arias* counsel that he is considering withdrawing his client's class claims, he has not filed an amended complaint and, in any event, we are not aware of any basis by which the *Quinteros* plaintiffs are entitled to discovery outside the terms of the Scheduling Order.

Sincerely,

Rosemary Stewart

Rosemary Stewart

Counsel to the
DynCorp Defendants

cc:     All *Arias* and  *Quinteros*
        Plaintiffs' Counsel

519150v1



Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

February 26, 2008

Jeff Frazier, Esq.
Conrad & Scherer, LLP
633 South Federal Highway, 8th Floor
P.O. Box 14723
Fort Lauderdale, FL  33302

Re:    *Quinteros v. DynCorp*, No. 07-cv-1042 (RWR) and
       *Arias v. DynCorp*, No. 01-cv-1908 (RWR) (D.D.C.)

Dear Jeff:

Thank you for your email message of February 20, 2008, which responded to my letters of January 29, 2008, and February 12, 2008, about the *Quinteros* and *Arias* Initial Disclosures. In that message, you agreed to provide us with the documents relied upon by the expert witness for the provincial plaintiffs, Dr. Fishkind, saying that you would send them or bring them to our meeting scheduled for February 29, 2008.  Either is acceptable to us.

We appreciate your tardy delivery of the five Initial Disclosure forms for *Arias* plaintiffs, which we understand to be the Initial Disclosures for nine of the eleven *Arias* plaintiffs identified in the *Arias* complaint.

We also appreciate your agreement to translate into English the 987 Initial Disclosure forms sent to us for the individual *Quinteros* plaintiffs, and we hope to receive those translations shortly.  We would appreciate getting this same information on Microsoft Access as you have offered to send us.

However, despite the language barrier presented by the *Quinteros* disclosures delivered to us on 1/28/08, it is apparent from our preliminary review of those forms – and from our review of the *Arias* disclosures that were in English – that serious deficiencies exist in their content. Accordingly, we write to ask that both the *Quinteros* and *Arias* Initial Disclosures be supplemented as soon as possible to add the information required by Fed. R. Civ. P. 26(a)(1)(A)(iii) (mandatory disclosure of each plaintiff's "computation of damages") and required by the express directions of the Court at the November 27, 2007 scheduling conference. 11/27/07 Tr. at 11-14.

Spriggs 25 Hollingsworth

You will recall that prior to the November 27th scheduling conference, the defendants proposed that the Court issue a *Lone Pine* order requiring the plaintiffs to provide verified foundational information about the basis for each plaintiff's claims prior to proceeding with general discovery. The plaintiffs opposed the issuance of a *Lone Pine* order but acknowledged the need for foundational information and proposed to "provide the Court and DynCorp with a more definitive statement as to the *precise injuries and damages alleged by the Plaintiffs*." Jt. Rule 16.3 St. at 16 (emphasis added) (also identifying eight categories of specific information that would be provided about each individual plaintiff). At the scheduling conference on November 27, 2007, the Court declined to issue a *Lone Pine* order but nonetheless ordered the plaintiffs to provide detailed Initial Disclosure information that "at least moves in that direction." 11/27/07 Tr. at 11. In particular, the Court acknowledged and accepted the eight categories of information proposed by the plaintiffs, but *added* to those categories: "the basis for *each plaintiff's* belief that the defendants' conduct *caused* the claimed injuries." 11/27/07 Tr. at 11 (emphasis added). The Court further stated that a "temporal connection" between alleged herbicide spraying and alleged injuries was not enough, and clarified its expectations even further by giving specific examples of the kind of detail that would be expected in the plaintiffs' Initial Disclosures. 11/27/07 Tr. at 13-14.

Based upon our review of the English version of the list of questions used by *Quinteros* counsel to prepare plaintiffs' initial disclosures and informed further by the English disclosure forms provided by the *Arias* plaintiffs, it is apparent that plaintiffs have not provided the Initial Disclosures required by the Court. Indeed, the list of questions asked of the individual plaintiffs appear in many instances designed so as to avoid providing the requisite information, including the most basic information as to when each plaintiff alleges he or she was exposed to "Plan Colombia" spraying and where each plaintiff was when the alleged spraying took place. For example, instead of simply asking *when* individual plaintiffs were exposed to spraying, your question to the plaintiffs was followed by the strange instruction: "Please put the month and year of all times that you remember seeing spraying, seeing fogs of herbicide, *or hearing that your village had been sprayed*." Clearly, a plaintiff's seeing spraying (potentially at some distance) or hearing that his village had been sprayed is not the same as alleging that he or she was exposed to the herbicide spray. Similarly, instead of asking *where* individual plaintiffs were when the spraying occurred – in relation to a verifiable address or a specified location near the border – that question was followed by suggested answers: "Were you at home, at school, visiting a friend or relative, working your farm . . . ," with no request that plaintiffs identify a meaningful location of the alleged exposure that could be tied geographically to Plan Colombia spraying.[1]

---

[1] In addition, your list of questions did not even ask each plaintiff's date of birth and sex, did not clarify addresses and exposure addresses (if different), and did not identify property damage except for alleged damage to crops and animals – all of which were among the categories of information plaintiffs promised to deliver. Moreover, not one of your questions was limited to

Spriggs 25 Hollingsworth
YEARS

Jeff Frazier, Esq.
February 26, 2008
Page 3

Moreover, even though your list of questions paid lip-service to some of the Court's specific examples of necessary disclosures, plaintiffs failed to provide such disclosures as to the particulars of *each plaintiff's* alleged exposure for *each instance* of alleged exposure. Indeed, the Initial Disclosure forms do not even purport to provide such information because most were prepared on behalf of whole families and most allege multiple instances of alleged spraying – yet the same disclosure forms answer all of the questions regarding the circumstances and alleged damage from the spraying *only once*. Are the defendants to assume that a husband, wife and five children were all in the same location, saw, heard and smelled the same things, and incurred identical injuries on each of the multiple occasions of alleged exposure over seven years? Plainly this type of jumbled and conflated information is inadequate and fails to satisfy the Court's directions.

As to each plaintiff's "computation of damages" as required by Fed. R. Civ. P. 26(a)(1)(A)(iv), your February 20, 2008 email said that damages cannot be quantified at this time "beyond setting out categories of damages to health and property." It is not clear to us that you even have identified the category of health damages for many plaintiffs who simply noted, for example, a headache or a skin irritation. But more importantly, the Rule does not recognize any such basis for delaying a disclosure of damages, and case law clarifies that a good faith estimate of damages and how they are calculated *are* required by the Rule notwithstanding that the results of discovery may later cause such an estimate to be amended.

At our "meet and confer" session scheduled for Friday, February 29, 2008, about the *Quinteros* questionnaire, we will be prepared to also discuss when and how the plaintiffs propose to make these necessary additional disclosures to the defendants. If we do not receive an acceptable plan for the supplementation of the individual plaintiffs' Initial Disclosures by that date, or if you disagree that the supplementation we seek is necessary, it is our intention to move the Court for an order compelling adequate Initial Disclosures by the individual *Quinteros* and *Arias* plaintiffs.

Sincerely,

Rosemary Stewart

Rosemary Stewart

Counsel to the DynCorp Defendants

cc:    All *Quinteros* and
        *Arias* Counsel

herbicide spraying that took place as part of "Plan Colombia" and your question about crops or animals that died did not ask *when* this occurred relative to the spraying.

# Exhibit C

**Legal Process – Spraying Northern Border**       **Form No.**
**Privileged Attorney-Client communication**       **Town:**
                                            **Coordinates XY:**

    1.   If you are not the Plaintiff, check every reason why the plaintiff can not complete this questionnaire:
    a.  Disabled
    b.  Death
    c.  Minor
    d.  Other (Specify)

2. When were you exposed to spraying?  (Please put the month and year of all times that you remember seeing spraying, seeing fogs of herbicide, or hearing that your village had been sprayed.)

3. Where were you when each spraying occurred?  (Were you at home, at school, visiting a friend or relative, working your farm, bathing in the river, etc.?)

4. Did you ever see an airplane spraying?

a. If yes, what did the airplane look like?

b. What did the material being sprayed look like?

5. What else did you see during the sprayings? (Was there a fog of chemicals, what did it look like?)

6. Did you see a fog or chemical cloud?

7. What did the spraying feel like?  What did it smell like?  What did it look like?

8. Did you get sick after the spraying?

9. When did you get sick?

10. How did you feel?

11. When did you get better?

12. Had you ever felt this way before?

13. Did you see a doctor?

14. What Doctor you saw and where?

15. What was the Doctor's diagnosis?

16.  Did any crops or animals die after the spraying?

17. What did the dead crops look like? (Did they look black, shriveled?)    **Name of the Plaintiff**
                                                       **(or person who completed the form)**

Write who and how many persons are affected in your house.    **ID number:**

# Exhibit D

From: Jeff Frazier [jlf@conradscherer.com]
Sent: Wednesday, February 20, 2008 2:12 PM
To: asheedy@akingump.com; lulrich@akingump.com; mmadigan@akingump.com; William Scherer, III; Greg Barthelette ; William Wichmann; William Scherer; sterrell@elllaw.com; wlack@elllaw.com; jlenze@girardikeese.com; psizemore@girardikeese.com; tgirardi@girardikeese.com; nt@iradvocates.org; tc@iradvocates.org; Stewart, Rosemary
Cc: David Garces; Lasker, Eric; Hollingsworth, Joe G.
Subject: Re: Arias/Quinteros v. DynCorp (D.D.C.)

Dear Rosemary,

In response to your February 12th letter:

1. I represented to you and to Terry Collingsworth that the Consolidated Disclosures included the Arias plaintiffs. We, too have reviewed the file sent and it does not contain the Arias plaintiffs. Apparently, when we segregated the Arias plaintiffs for internal puposes we cut rather than pasted. I apologize to you and to Terry for the mistake and attach here English versions of the Arias plaintiffs disclosures.

2. While there are fewer than 1000 families represented in the disclosure forms, there are almost 3000 family members named within the disclosures, including the Quinteros plaintiffs and persons not yet added to the case. Stephen Terrel now has the final list that will be annexed to the amended complaint we will be filing shortly.

3(a) We are translating the disclosure forms and will send them to you. We are also transferring the information into Microsoft Access so that it is more manageable. (b) As these are personal injury cases, we do not believe that we cannot quantify damages at this time beyond setting out the categories of damages to health and property. (c) We will send you the documents relied upon by Dr. Fishkind or bring them on the 29th.

Sincerely,

Jeff

# Exhibit E

## Stewart, Rosemary

| | |
|---|---|
| **From:** | Stewart, Rosemary |
| **Sent:** | Tuesday, February 05, 2008 4:29 PM |
| **To:** | 'Jeff Frazier'; 'Stephen Terrell'; gb@conradscherer.com; wrs@conradscherer.com; bs@conradscherer.com; wjw@conradscherer.com; psizemore@girardikeese.com; tgirardi@girardikeese.com; jlenze@girardikeese.com; 'Terry Collingsworth'; nt@iradvocates.org; mmadigan@akingump.com; asheedy@akingump.com; lulrich@akingump.com; wlack@elllaw.com |
| **Cc:** | Lasker, Eric; Hollingsworth, Joe G. |
| **Subject:** | Arias/Quinteros v. DynCorp (D.D.C.) |
| **Attachments:** | Pls Questionnaire .pdf |

To:  All Quinteros and Arias Plaintiffs Counsel

Attached please find a copy of the Plaintiffs' Questionnaire, which the DynCorp defendants were required to prepare and submit to you by February 7, 2008.  We have finished it a couple of days early so are sending it to you today.

I am working out of town the rest of this week but will be available anytime next week if you wish to schedule a conference call or meeting to discuss the Questionnaire.  It is our understanding that once the content of the Questionnaire is deemed acceptable to all parties, it will be translated into Spanish by the Plaintiffs, and then given to us (defense counsel) to have our translators "check" your English-to-Spanish translation, after which it will be sent to Ecuador for the plaintiffs to complete.

We would also like to discuss with you what arrangements we can make to have the Questionnaire responses translated into English as soon as possible upon their completion.   Thank you.



**Rosemary Stewart**

**Spriggs & Hollingsworth**
**1350 I Street, NW**
**Washington, DC 20005**
**rstewart@spriggs.com**

**Phone: (202) 898-5888**
**Fax: (202) 682-1639**
**www.spriggs.com**

**Download My V-Card Information >>**



Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

February 14, 2008

Jeff L. Frazier, Esq.
Conrad & Scherer, LLP
633 South Federal Hwy. 8th Fl.
P.O. Box 14723
Fort Lauderdale, Florida 33302

and

Stephen R. Terrell, Esq.
Engstrom, Lipscomb & Lack
10100 Santa Monica Blvd. – 16th Floor
Los Angeles, California 90067

Re:     *Quinteros v. DynCorp*, No. 07-cv-1042 (RWR) and
         *Arias v. DynCorp*, No. 01-cv-1908 (RWR) (D.D.C)

Dear Jeff and Stephen:

We do not know which of the plaintiffs' firms will be taking the lead on the Plaintiffs'
Questionnaire so we are writing to both of you (with copies to the other plaintiffs' counsel). On
Tuesday, February 5, 2008, we e-mailed to all of you the DynCorp Defendants' proposed version
of the Plaintiffs' Questionnaire to be used in the above-captioned cases, but we have not yet
heard from anyone about whether you are satisfied with its content or whether you wish to confer
about it. Please let us know.

Also, we would like to add to the Plaintiffs' Questionnaire, on page 28 of our draft (right
before the beginning of "Section VII. Specification of Damages . . ."), the following additional
questions:

Spriggs25Hollingsworth

Jeff L. Frazier, Esq.
February 14, 2008
Page 2

J.      Reproductive History

Have you (or your wife if a husband is answering this question) ever had a miscarriage?  Yes _____   No _____

If yes, please state how many times and *when* each happened. _____

_____

Have you ever experienced any still-births or deaths of your children shortly after they were born?  Yes _____   No _____

If yes, please state how many times and *when* each happened._____

_____

If yes, did you see a Medical Care Provider about the still-births or infant deaths?  Yes _____   No _____

If yes, please identify who you saw, *when* you saw them, and what they told you about each such incident?_____

_____

        We will also insert this language into the proposed Plaintiffs' Questionnaire and e-mail it again to everyone.

                        Sincerely,

                        *Rosemary Stewart*

                        Rosemary Stewart

                        Counsel to the
                        DynCorp Defendants

cc:     All *Quinteros* and *Arias* Counsel

523234v1

# Exhibit F

## Stewart, Rosemary

| | |
|---|---|
| **From:** | Stewart, Rosemary |
| **Sent:** | Tuesday, March 04, 2008 1:31 PM |
| **To:** | sterrell@elllaw.com; 'Jeff Frazier'; 'gb@conradscherer.com'; 'wrs@conradscherer.com'; 'bs@conradscherer.com'; 'wjw@conradscherer.com'; 'psizemore@girardikeese.com'; 'tgirardi@girardikeese.com'; 'jlenze@girardikeese.com'; 'Terry Collingsworth'; 'nt@iradvocates.org'; 'wlack@elllaw.com'; 'mmadigan@akingump.com'; 'asheedy@akingump.com'; 'lulrich@akingump.com' |
| **Cc:** | Lasker, Eric; Hollingsworth, Joe G. |
| **Subject:** | Quinteros Plaintiffs' Questionnaire |
| **Attachments:** | Plaintiffs' Questionnaire .pdf |

To:  Stephen Terrell and Jeff Frazier  (cc: other Quinteros and Arias plaintiffs' counsel)

Attached please find what we believe to be the "FINAL" version of the Quinteros Plaintiffs' Questionnaire.  We have made all the edits that were "handwritten" in the 2/29/08 draft of the Questionnaire, which we discussed with both of you last Friday.  The additional questions that have been edited as a result of our discussion that same day have been highlighted with lines in the right margin, for your convenience.

With respect to HIPAA, we continue to believe that it does not apply to requests or authorizations for medical records of non-USA medical care providers such as those whose records we will be seeking in this litigation.  On the other hand, we do not object if you wish to insert standard HIPAA language in the "Exhibit A - Authorization for Release of Medical Records" attached to the Questionnaire.  In this regard, the language now in Exhibit A is consistent with HIPAA, but we believe that the following ADDITIONAL disclosures are also necessary to make the authorization fully HIPAA-compliant:

"I also understand with respect to this authorization that:  the information to be released will be used in connection with the above-captioned litigation; this authorization will cease to be effective when that litigation concludes; I have a right to revoke this authorization unless the above-named Medical Care Provider has already taken action in reliance on this authorization; that the above-named Health Care Provider cannot condition the provision of treatment, payment, enrollment in a health care plan or eligibility for benefits on my providing this authorization; the information disclosed pursuant to this authorization may be subject to redistribution by the recipients to their clients, agents, employers, contractors, experts, the Court and others deemed necessary by the recipients to assist in the litigation."

If you opt to use this language, we suggest that is be inserted as a new paragraph on p. 2 of the Authorization for Release of Medical Records, BETWEEN the two paragraphs that now appear after the identification of the defendants' and the plaintiffs' counsel.

It is our understanding that the next step of the Plaintiffs' Questionnaire process will be for you to have it translated into Spanish after which you will send it to us to "check" your translation.

Rosemary Stewart
Spriggs & Hollingsworth
1350 I Street NW
Washington DC 20005
(202) 898-5888

FINAL DRAFT 3/4/08

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Nestor Ermogenes Arroyo Quinteros, *et al.*,<br>          Plaintiffs,<br><br>v.<br><br>DynCorp, *et al.*<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:07CV01042 (RWR) |
| Venancio Aguasanta Arias, *et al.*,<br>          Plaintiffs,<br><br>v.<br><br>DynCorp, *et al.*<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Consolidated for Discovery with<br>Case No. 1:01CV01908 (RWR) |

## PLAINTIFFS' QUESTIONNAIRE

**To Each Individual Plaintiff:**

## INSTRUCTIONS

1.      Each individual plaintiff in the above-captioned cases must complete and sign his or her own copy of this Questionnaire.

2.      If a person is responding on behalf of his or her children (or another person or persons) on whose behalf a claim has been filed before this Court, then a separate copy of this Questionnaire must be filled out for each such child or other person.

3.      When you read the terms "you" and "your" throughout this Questionnaire, they refer to each person who is claiming injury due to the alleged exposure in this case. In other words, if you are claiming injury to yourself or your property, you must answer the questions about yourself and your property. If you are responding on behalf of your child (or other person), then you must answer the questions about that child or other person on a separate copy of this Questionnaire, clearly marked to show to whom it refers

4.      Each question must be answered in full. If you do not know the answer to a question or cannot recall the information needed to answer a question, please say this in your response to the question. If asked for a numerical answer, please give your best estimate, but do

not "guess." If a question is "not applicable" to you, say this in your response. Do not leave any questions unanswered.

     5.    Each individual plaintiff must realize that he or she is under oath and must provide information that is true and correct based on such person's personal knowledge and belief.

     6.    You may attach as many sheets of paper as necessary to fully answer the questions. This questionnaire also asks you to produce written documents that relate directly to your answers. You must give these documents to your attorney so that they may be copied for use in this lawsuit. **You must not dispose of or alter or modify any documents** or other materials that you have now or that you may later receive relating to any of the subjects addressed in this Plaintiffs' Questionnaire.

     7.    In filling out this form, please use the following definitions:

     (A)    **"Health care provider"** means any hospital, clinic, doctor's or nurse's office, infirmary, medical laboratory or other facility that provides medical care or advice. It also means any doctor, physician, surgeon, paramedic, nurse (registered or otherwise), psychologist, psychiatrist, therapist, chiropractor, healer or any other person practicing any kind of healing art (with or without traditional medications) or performing any kind of medical, physical or mental examination or treatment, and any other persons or entities involved in the evaluation, diagnosis, care and/or treatment of you.

     (B)    **"Document"** means any writing or record of any kind whatsoever that is in your or your family's possession or the possession of your counsel, including but not limited to written letters, papers, notes, e-mails, photographs, charts, cassettes, videotapes, computer discs or tapes, x-rays, drawings, graphs, phonorecords, nonidentical copies and other data compilations of any kind.

## I.    PRELIMINARY INFORMATION ABOUT YOU AND YOUR CLAIM

     A.    Name of plaintiff submitting this Questionnaire (**NOTE: There must be one form completed for each plaintiff and for each other person claiming injuries**):

                  _____

     B.    Name of individual about whom this Questionnaire applies: _____

                  _____

     C.    Name of person who filled out this Questionnaire or entered the answers into a computer, if different from the plaintiff (include the preparer's name, company, address, and relationship to plaintiff): _____

                  _____

D.    Are you seeking relief for personal injury to yourself?  Yes _____  No _____

E.    Are you seeking relief for personal injury to someone else?  Yes _____  No _____

If yes, who? _____

If yes, check the reason why that person is not acting on his/her own behalf:

Minor_____  Disabled _____  Death_____  Other_____

**(Note: A separate copy of this Questionnaire must be filled out for each person on whose behalf you are seeking relief.)**

F.    Are you seeking damages for injury to your property?  Yes _____  No _____

If yes, do you claim?

Damages to your crops?  Yes _____  No _____

Damage to farm animals or pets?  Yes _____  No _____

G.    Are you seeking damages for injury to any other types of property? Yes _____  No _____

If yes, what kind? _____

## II.   PERSONAL INFORMATION

A.    Paternal last name:_____

Maternal last name:_____

First name:_____

Middle name:_____

Any other names by which you have ever been known:_____

_____

Ecuadorian Certificate of Identity Number:_____

B.    Gender and Size: Male _____Female _____Height _____Weight _____

C.    Are you an Ecuadorian citizen?  Yes _____  No _____

If no, of which country(ies) are you a citizen?_____

D.    Racial/Ethnic Background: _____

3

If you answered Indigenous or Indian, do you belong to an indigenous tribe or community? Yes _____ No _____

If yes, which one?_____

E. What language do you speak? _____

F. Do you clearly understand the language used in this Questionnaire and the questions asked in this Questionnaire? Yes _____ No _____

G. Date of Birth:_____

H. Present home address:_____

Village or City:_____  Province:_____

If you do not live in a city or town, identify the nearest town to your home and provide the directions to get to your home from that town? (Use road names, river names and North, South, East, West directions to describe how to get to your home)_____

_____

How long have you lived at this address?_____

Why did you move to your present home address? _____

_____

_____

Who has lived with you at this address? _____

_____

_____

I. Prior Home Addresses.  Please provide the following information for the last ten (10) years:

| Prior Address (include closest town province, and country) | Dates you lived at this Address | Persons who lived with you at this Address |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

4

| Prior Address (include closest town province, and country) | Dates you lived at this Address | Persons who lived with you at this Address |
|---|---|---|
| | | |

J.    Telephone Number (if any): _____

K.    Current Occupation: _____

      Name of employer (If self-employed, say this): _____

      Name of immediate supervisor (if any): _____

      Employer's address: _____

      Employer's telephone no.: _____

      How long have you worked there? _____

L.    Prior Employers.  Please fill in the following information for the last ten (10) years (Include any military service, and if self-employed, say this):

| Prior Employers (names and addresses) | Dates you worked there | What did you do there? |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

M.    In any of your work in the last ten (10) years (including your current work or home farming), have you used or handled pesticides and/or herbicides? Yes _____ No _____

      If yes, what kind of pesticides and/or herbicides did you use and *when* did you use them?

      _____

      _____

5

If you applied the pesticides and/or herbicides, how did you do this?_____

_____

If you applied them, describe any kind of protection you used for yourself while you were using the pesticides and/or herbicides. _____

_____

If you applied them, did you or anyone else in your family clean the clothes you wore when using the pesticides and/or herbicides?  Yes _____  No _____

If yes, please describe who did this, how often it was done, and the manner in which your clothes were cleaned._____

_____

Do you believe that you have experienced any kind of medical problems as a result of handling pesticides/herbicides in your work or at home?
Yes _____  No _____

If yes, what kind of medical problems and *when* did you have them?

_____

_____

N.    Did any member of your immediate family use or handle pesticides and/or herbicides in the last ten years (as part of their work or home farming)?

Yes _____  No _____

If yes, who were these family members and what kind of pesticides and/or herbicides did they use? _____

_____

If yes, where and how did those family members (or anyone else) clean the clothes that were worn when using the pesticides and/or herbicides? _____

_____

O.    In your work or home farming in the last ten years, have you been within the close vicinity (meaning within your visual range) of other people using or handling pesticides and/or herbicides?  Yes _____  No _____

If yes, what kind of pesticides and/or herbicides were they using or handling? _____

_____

6

If yes, where and how were your clothes cleaned after you were in this close vicinity to other people using or handling pesticides and/or herbicides? _____

_____

P.    In any of your work in the last ten (10) years (including your current work or home farming), did/do you use or handle chemical fertilizers or other man-made chemicals (other than the herbicides or pesticides identified in the previous answer)? Yes _____ No _____

If yes, what kind did you use and when did you use them?_____

_____

_____

If yes, describe any kind of protection you used for yourself while using these chemical products._____

_____

Do you believe that you have experienced any kind of medical problems as a result of using chemical fertilizers or other man-made chemicals in your work or at home? Yes _____ No _____

If yes, what kind of medical problems and *when* did you experience them? _____

_____

_____

Q.    Have you ever been convicted of a felony in the last ten (10) years? Yes_____ No _____

If yes, what felony? _____. Did you go to jail or prison? Yes _____ No _____ If yes, how long? _____

R.    Have you ever been rejected for a job for which you applied or for a military position because of a medical, physical, psychiatric or emotional condition?

Yes _____ No _____ If yes, what job or position?_____

If yes, *when* did this happen? (Include all instances when this happened). _____

_____

If yes, what was your medical condition or disability (for each such instance)? _____

_____

7

S.  Have you ever filed a claim or claims with the Ecuadorian or Provincial government where you live or with an employer or with an insurance company or any other entity for compensation or the payment of medical expenses or lost earnings due to an injury or a medical disability of any kind?

Yes _____   No _____

If yes, please fill in the following information for the last ten (10 years):

| Date Claim Filed | Filed with whom? | What claimed Injury or Disability? | What happened with your Claim? |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

T.  Do you have medical insurance of any kind?  Yes _____  No _____

If yes, what company or program provides your medical insurance? _____

_____

U.  Have you ever filed a lawsuit against **anyone** (aside from this suit), including any oil companies?

Yes _____   No _____

If yes, please identify:  (1) what kind of lawsuit it was, (2) when you filed it, (3) the company or people you sued, (4) what Court or other tribunal it was before, and (5) what was the result of the suit.  (If any of your lawsuits are still pending, say this.)  (Attach additional pages if necessary to describe multiple lawsuits.)

_____

_____

_____

## III.   FAMILY INFORMATION AND EDUCATIONAL HISTORY

A.  Have you ever been married?  Yes _____   No _____

B.  If yes, *for each spouse and former spouse*, please identify the following:

1.   Spouse's name:_____

8

2.    Dates of marriage to this person:  From _____ to _____

3.    Spouse's date of birth:_____

4.    Spouse's occupation:_____

5.    Spouse's address (if different than yours):_____

_____

C.    Immediate Family members.  Please provide the following information about each of your parents, your sisters, your brothers and your children.  (**Add additional sheets if necessary.**)

| Name | Relationship to you | Date of Birth | Date of Death (if applicable) | Cause of Death (if applicable) | Principal Occupation |
|------|---------------------|---------------|-------------------------------|--------------------------------|----------------------|
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |
|      |                     |               |                               |                                |                      |

D.    Education.  How many years did you go to school?  _____ years

What was the highest grade you completed?_____

Where did you go to school? (list all schools by name and location)

_____

_____

9

Do you know how to read?  Yes _____    No _____

Do you know how to write?  Yes _____    No _____

Do you have any degrees or certifications?  Yes _____    No _____

If yes, what are they and what year did you get them?

_____

**IV.    YOUR LIVING CONDITIONS**

A.    Please answer the following questions about your home, food and water:

1.    How big is your house and what is it made of? _____

_____

_____

2.    Where do you get your water?_____

3.    What is the source of your water?_____

4.    Do you have running water inside your home?  Yes _____    No _____

5.    Do you filter your water?  Yes _____    No _____  If yes, how?_____

6.    Where do you get the food for you and your family?_____

_____

7.    How do you cook your food (on stove, open air flame or grill, etc.)?_____

_____

8.    Do you eat raw/uncooked crabmeat?  Yes _____    No _____

9.    Do you use crab juice as a medicine?  Yes _____    No _____

10.    Do you regularly buy and eat food in public places (such as outdoor markets or homes that sell meals to the public)? Yes _____    No _____

11.    If yes, do you observe the conditions in which that food is prepared and handled before you purchase and eat it? Yes _____    No _____

B.    Please answer the following questions regarding sanitation:

1.    How is sewage (waste and waste water) from your home disposed of?_____

_____

_____

2.     Where does the sewage from your home go to (*e.g.*, into the soil, into a body of water)? _____

3.     Do you have a toilet inside your home?  Yes _____   No _____

4.     Do you use an outhouse?  Yes _____   No _____

     If yes, how far is it from your home?_____

_____

5.     How is sewage disposed by the other homes and farms in your village?____

_____

_____

6.     How do you dispose of your household trash (*e.g.*, do you burn it? bury it? send to a landfill? etc.) _____

7.     How close is the nearest landfill to your home? _____

_____

8.     Is trash discarded in the public areas or public waterways where you live?

     Yes ____   No ____

C.    Please answer the following questions regarding petroleum operations (*i.e.*, oil drilling, oil wells, oil or other petroleum storage locations, gas or oil stations, etc.) near your home or work:

    1.    How far is the nearest petroleum operation from your home (and describe what it is)? _____

_____

    2.    Do you believe that your home, farm or work area has ever been polluted by petroleum operations? Yes _____   No _____

        If yes, *when* did this occur? _____

    3.    Do you believe that you have ever been injured in any way by petroleum operations?  Yes _____   No _____

11

If yes, what were the injuries and *when* did they occur?_____
_____

4.  Do you believe that anyone in your family has been injured in any way by petroleum operations? Yes _____ No _____

If yes, what and *when* were the injuries they experienced?_____

_____

D.  Please answer the following questions regarding volcanoes:

1.  How close do you live to the Reventador volcano, and/or to any other active volcano? _____

_____

2.  Do you believe that you or your family members have ever been injured in any manner by the eruptions and resulting volcanic emissions from the Reventador volcano or any other volcanic eruptions? Yes _____ No _____

If yes, *when* did this happen and what were the injuries or other damages?_
_____

_____

3.  Do you believe that anyone else in your village or community has been injured in any way by volcanic eruptions? Yes _____ No _____

If yes, explain what happened and *when* it happened. _____
_____

E.  Please answer the following questions regarding floods:

1.  Have you been injured and/or has your home or your farm been damaged in any way by floods within the last ten (10) years? Yes _____
No _____

If yes, describe *when* this occurred and what injuries and/or damages you suffered?_____

_____

If yes, did the floods cause you to leave your home? Yes _____ No _____

F.  Please answers the following questions about people moving into your community?

1.    Do you believe that your village or community has experienced an influx of people from Colombia in the last ten (10) years?  Yes _____  No _____

2.    Do you believe that your village or community has experienced an influx of people from other places (other than Colombia) in the last ten (10) years? Yes _____  No _____

If yes, where did these people come from? _____

_____

## V.    YOUR ALLEGED EXPOSURE TO THE "PLAN COLOMBIA" HERBICIDE

A.    Are you familiar with "Plan Colombia?" Yes _____  No _____

If yes, what do you know about "Plan Colombia" and *when* did you learn this?___

_____

_____

_____

If yes, identify the people you have you talked with about "Plan Colombia," what they told you, and *when* these conversations took place?_____

_____

_____

B.    *Why* do you believe that you and/or your property was exposed to a "Plan Colombia" herbicide?_____

_____

_____

_____

C.    *When* were you and/or your property exposed?  (If more than once, list all dates of exposure by day, month and year.)

_____

_____

D.    **For <u>each</u> instance of alleged exposure to your body**, please answer the following questions (use additional sheets of paper as necessary):

1.   Where were you when the exposure occurred? _____

_____

_____

2.   How close were you at that time to the border between Ecuador and
     Colombia? _____ kilometers or _____ meters

3.   How do you know this? _____

4.   Please mark an "X" on the attached map of Northern Ecuador to show
     where you were at the time of the alleged exposure to your body and put
     the date(s) of exposure by each "X". Have you marked the map in this
     way?   Yes _____   No _____
     If no, why not?_____

     _____

5.   What time of day did the exposure occur?_____

     _____

6.   What was the weather like that day? (Include the approximate temperature
     and whether there was precipitation)_____

     _____

     _____

7.   Did you see an airplane at the time of the alleged exposure?
     Yes _____   No _____

     If yes, what did it look like? (color, size, letters, flags or other markings on
     plane, etc.) _____

     _____

     _____

8.   Did you see more than one airplane at the time of the alleged exposure?
     Yes _____   No _____
     If yes, please state how many you saw and describe what each looked like:

     _____

     _____

9.   Did you see a helicopter at the time of the alleged exposure?
     Yes _____   No _____

14

If yes, how many?_____

If yes, what did the helicopter(s) look like (color, size, letters, flags or other markings)? _____

_____

10. Did you see anything else in the air? Yes _____ No _____
If yes, what else did you see?

_____

_____

11. Did you see the spray or a "cloud" or "fog" of spray? Yes _____ No _____

If yes, what color was it?_____

_____

12. Did you see residue on the ground after the spraying? Yes _____ No _____

If yes, what did it look like?_____

_____

13. Did you hear anything? Yes _____ No _____
If yes, what did you hear?_____

14. Did you smell anything unusual? Yes _____ No _____
If yes, what did it smell like?
_____

15. Do you contend that your body was exposed to the spray? Yes ___ No ___

If yes, did you feel anything on your skin? Yes _____ No _____

If yes, what did you feel?_____

If yes, what did you do with the clothing that you wore that day and *when* did you do it? (Include whether they were washed or destroyed)_____

_____

_____

16. After the spraying ceased, did you see any changes to the plants in your vicinity? Yes _____ No _____

15

If yes, what changes did you see and how long after the spraying did you see the changes?_____

_____

17.   After the spraying ceased, did you see any change in the wildlife, birds or fish in your vicinity? Yes _____ No _____

If yes, explain exactly what you saw and how long after the spraying you saw it?_____

_____

18.   After the spraying ceased, did you observe any change in the appearance, odor or taste of any bodies of water (rivers, creeks, ponds, lakes, well water, etc.) in your vicinity?  Yes _____ No _____

If yes, please describe the change(s) you observed and state how long after the spraying you observed this._____

_____

E.   **For all plaintiffs alleging personal bodily injuries due to the alleged exposure,** please also answer the following questions for **each instance of alleged exposure.**  (Use additional sheets of paper as necessary.)

1.   What were your symptoms? (Please provide detail on both external and internal symptoms.) _____.

_____

If yes, how long after the alleged exposure did your symptoms occur?_____

_____

2.   Did you go to a Health Care Provider (as defined on p. 2) based on your exposure to the "Plan Colombia" herbicide? Yes _____ No _____

If yes, *when* did you go, and how long after the exposure was this?

_____

If yes, where did you go? (identify the name and address of the Health Care Provider)_____

_____

If yes, how far was this from your home?_____

16

If yes, which person(s) at the Health Care Provider's office did you see about the herbicide exposure?

_____

_____

3.    What did those person(s) tell you about your injury or condition?

_____

_____

Did the person(s) tell you that your injuries or condition was caused by the "Plan Colombia" herbicide?  Yes _____   No _____

4.    Did the Health Care Provider take a sample of your blood or urine? Yes _____   No _____

5.    Did the Health Care Provider give you medicine (including herbal or home remedies) or a prescription for medicine?  Yes ___  No ___

If yes, what was the medicine and what was it for?_____

_____

If yes, did you actually buy, obtain or make the prescribed medication? Yes _____  No _____

If yes, describe when and where you bought or obtained it and how much you paid for it. _____

_____

How long did you use the medicine?  _____

Did you take all the medicine you obtained? Yes _____   No _____

6.    If you did not go to a Health Care Provider but thought that you were injured by the exposure, did you do anything to alleviate your injury, including any herbal or home remedies?  Yes _____   No _____

If yes, what did you do?_____

_____

7.    What specific type(s) of bodily illness or injury do you allege were caused by your exposure to the "Plan Colombia" herbicide? _____

_____

17

8.    Do you believe you have an increased risk of *future injury or harm* (which has not yet appeared on or in your body) as a result of your alleged exposure to the "Plan Colombia" herbicide? Yes _____ No _____

If yes, please explain what future health risks you believe you face, why you believe this, and identify any Health Care Providers or other people who have told you this and set out what each such person (except your attorneys) said to you about future injury or harm._____

_____

_____

**F.**    **For all plaintiffs claiming damage to crops** from the alleged exposure, please also answer the following questions **about <u>each</u> instance of alleged exposure** (use additional sheets if necessary):

1.    Where was your field of crops (identify by distance and direction from your home)?_____

_____

2.    What was the date and time of day your crop(s) were exposed to the "Plan Colombia" herbicide?_____

3.    How close is that field to the border between Colombia and Ecuador?

_____ km or _____ meters

4.    Please mark a small circle ("O") on the attached map to show where your exposed field was and mark the date of the alleged exposure by each "O." Have you marked the map? Yes _____ No _____ If no, why not? _____

_____

5.    Do you own the land where your crops were growing? Yes _____ No _____

If not, who owned the land when the alleged spraying took place? _____

_____

6.    How big was your field or patch of crops allegedly exposed to the herbicide?_____

What kinds of crops were planted there?_____

_____

18

7. How long after the alleged exposure did you notice injury to the crops and what did you first see when the damage began? _____

_____

How long did it take for the injury to be complete?_____

What was the end result of the alleged exposure?  (Describe what percentage of your crop was damaged or destroyed)_____

_____

8. Did you sell or trade the crops that remained your field after the alleged exposure? Yes _____ No _____

If yes, to whom? _____

_____

If yes, did you tell the buyer that you believed the crop had been exposed to a "Plan Colombia" herbicide? Yes _____ No _____

9. How soon after the alleged exposure did you plant new crops in the same field? _____

_____

10. Why do you believe your crops were damaged by the "Plan Colombia" herbicide? _____

_____

11. What kinds of pesticides and/or herbicides did you use on the same crops before their alleged exposure to the "Plan Colombia" herbicide? _____

_____

_____

12. Where did you buy the pesticides and/or herbicides that you used? (Include name and address of the supplier.) _____

_____

_____

G. **For all plaintiffs claiming injuries to farm animals or pets**, please also answer the following questions **about each instance of alleged exposure** (use additional sheets as necessary):

19

1.    What kind of animals were exposed? _____

      _____

2.    Where were your animals when they were allegedly exposed (identify by
      distance from your home)? _____

      _____

3.    How close was this to the Colombian-Ecuadorian border?_____

      _____

4.    Please place a "check mark" on the attached map to show where your
      animals were at the time of their alleged exposure and put the date(s) of
      exposure by each check mark.

      Have you marked the map in this way?  Yes _____   No _____

      If no, why not? _____

      _____

5.    How long after the exposure did it take for your animals to get sick?_____

      _____

6.    What happened to the exposed animals? (Identify for each kind of animal:
      how many died; how many got sick but survived; how many were
      unaffected)

      _____

      _____

      _____

7.    For the animals that died, did a veterinarian, public health or sanitary
      professional examine the corpses to determine the cause of death?
      Yes _____   No _____

      If yes, who was this, when did it happen, and what did he/she tell you?
      (Identify by name, title, and business address) _____

      _____

      _____

20

If yes, when did this person examine the animal corpses in relation to when they died? _____

8.      For the animals that got sick but survived, did a veterinarian, public health or sanitary or any other kind of animal care professional examine and diagnose the sick animals? Yes _____ No _____

If yes, who came, when did they come, and what did they tell you? (Identify by name, title, and business address) _____

_____

_____

9.      Did anyone collect blood samples or other tissue samples from your animals (dead or alive)? Yes _____ No _____

If yes, who took the samples? (Identify name, title and business address)

_____

_____

If yes, did you get copies of any results from the tests done on the animal blood or tissue samples? Yes _____ No _____

If you got written results, please attach them to your answers to these questionnaires.

10.     Why do you believe that your animals' illness or death was caused by the "Plan Colombia" herbicide?

_____

_____

H.    Reports to Third Parties.

1.      Other than the Health Care Providers or animal care professionals identified above, did you complain to anyone or to any organization (government or non-government) about the alleged spraying of herbicide? Yes _____ No _____

If yes, whom did you speak with and *when* did you do this?_____

_____

If yes, what did you say to this person or organization?_____

21

What did the person or organization say back to you?_____

_____

Did that person or organization take samples of your blood or urine due to your alleged exposure to the "Plan Colombia" herbicide?
Yes _____ No _____

If yes, who did this and *when* did it happen?_____

_____

## VI.    <u>YOUR MEDICAL BACKGROUND</u>

A.    Check the medical conditions that you have *at the present time* and the conditions that you have had *at any time in the past*.

| Condition | I have it now | I have had in the past |
|---|---|---|
| Cancer | | |
| **If cancer, what kind?** | | |
| Heart disease or heart attack | | |
| Angina, chest pain | | |
| Brain tumor | | |
| Epilepsy | | |
| Diabetes | | |
| Liver disease | | |
| Pancreatitis | | |
| Polio | | |
| Malaria | | |
| Dysentery | | |
| Asthma or other respiratory illness, shortness of breath | | |
| Blood clots or abnormalities of blood vessels | | |

| Condition | I have it now | I have had in the past |
|---|---|---|
| Anemia or other blood disorders | | |
| High blood pressure | | |
| AIDS or HIV-positive test results | | |
| Arthritis | | |
| Kidney disease or transplant | | |
| Dengue fever | | |
| Cholera | | |
| Changas | | |
| High cholesterol | | |
| Influenza | | |
| Diarrhea | | |
| Infections (bacterial or fungal) | | |
| Measles | | |
| Chicken pox | | |
| Mumps | | |
| Diptheria | | |
| Whooping cough | | |
| Scarlet fever | | |
| Leishmaniasis | | |
| Onchocerciasis | | |
| Alcoholism | | |
| Malnutrition | | |
| Migraine headaches | | |
| Fainting or serious dizziness | | |
| Osteoporosis | | |

23

| Condition | I have it now | I have had in the past |
|---|---|---|
| Broken bones | | |
| Skin rash or skin irritation | | |

B.   For each of the conditions that you checked above, please fill out the information below:

**Condition No. 1** _____
Date of onset: _____
Did you see a Health Care Provider (as defined on page 2 above) about this condition?
Yes _____   No _____
If yes, who did you see?  (include name and address)

_____
_____

What did the Health Care Provider tell you about the condition?

_____
_____

Did the Health Care Provider give you drugs or therapy?  Yes _____  No _____
If yes, what kind?

_____
_____

Did you take the drugs prescribed for you?          Yes _____  No _____

**Condition No. 2** _____
Date of onset: _____
Did you see a Health Care Provider (as defined on page 2 above) about this condition?
Yes _____   No _____
If yes, who did you see?  (include name and address)

_____
_____

What did the Health Care Provider tell you about the condition?

_____
_____

Did the Health Care Provider give you drugs or therapy?  Yes _____  No _____
If yes, what kind?

_____

24

Did you take the drugs prescribed for you?          Yes _____ No _____

**<u>Condition No. 3</u>** _____
Date of onset: _____
Did you see a Health Care Provider (as defined on page 2 above) about this condition?
Yes _____ No _____
If yes, who did you see? (include name and address)

_____

_____

What did the Health Care Provider tell you about the condition?

_____

_____

Did the Health Care Provider give you drugs or therapy? Yes _____ No _____
If yes, what kind?

_____

_____

Did you take the drugs prescribed for you?          Yes _____ No _____

**<u>Condition No. 4</u>** _____
Date of onset: _____
Did you see a Health Care Provider (as defined on page 2 above) about this condition?
Yes _____ No _____
If yes, who did you see? (include name and address)

_____

_____

What did the Health Care Provider tell you about the condition?

_____

_____

Did the Health Care Provider give you drugs or therapy? Yes _____ No _____
If yes, what kind?

_____

_____

Did you take the drugs prescribed for you?          Yes _____ No _____

**<u>NOTE</u>:  Attach additional sheets of paper if you have more than 4 conditions to describe.**

25

C.  Have you had any surgeries in the last 20 years?  Yes _____  No _____
If yes, *when*? _____  For what? _____

_____

_____

If yes, who performed the surgery? (include name and address)

_____

_____

D.  Drug and Medicine Use:

E.  Do you take any drugs and/or medicines on a regular basis, including herbs or
ancestral preparations for medicinal uses?  Yes___  No___

If yes, please list all of the drugs and medicines (including herbs and ancestral
preparations) that you take at this time: _____

_____

_____

Have you formerly taken drugs and/or medicines (including herbs and ancestral
preparations) on a regular basis that you do not take now?  Yes___  No___

If yes, please list all such drugs and/or medicines and identify *when* you took
them: _____

_____

_____

F.  History of the Use of Tobacco and Similar Products:

Have you ever smoked cigarettes?  Yes _____  No _____

Do you currently smoke cigarettes?  Yes _____  No _____

If yes, please fill in:  I have smoked _____ packs or _____ cigarettes per day for
_____ years, of the following brands of cigarettes: _____

_____

26

If you smoked earlier but do not now, please fill in:  I stopped smoking in _____.
Before that, I smoked _____ packs or _____ cigarettes per day for _____ years, of
the following brands of cigarettes: _____

_____

Have you ever smoked cigars or pipe tobacco?  Yes _____    No _____

If you currently smoke cigars and/or a pipe, please fill in:  I presently smoke (fill
in number of) _____ cigars and/or _____ pipes per day.

If you smoked cigars or pipes earlier but do not now, please fill in:  I stopped
smoking _____ (fill in "cigars" or "pipes" or "both") in (date) _____.

Before that I smoked (fill in number) _____ per day.

Have you ever smoked other substances based on ancestral custom or personal
preference?  Yes _____    No _____

If yes, identify what you smoked, *when* you started, and how long you have
smoked it.

_____

_____

Have you ever chewed tobacco or similar chewing material?  Yes _____   No _____

If yes, what was it, *when* did you begin to chew it, and how long have you done
this? _____

_____

G.    Drinking History:

Do you currently drink alcohol of any kind?  Yes _____    No _____

If yes, how many drinks per week do you consume?  _____

If you do not drink alcohol now but you did in the past, how many drinks per
week did you consume in the past?  _____  *When* was this? _____

Do you drink other fermented beverages that contain a smaller amount of alcohol?
Yes _____   No _____

If yes, explain how much of this you drink and when you have consumed it._____

_____

H.  Have you ever missed work for more than 2 weeks straight for reasons related to your health in the last 20 years? Yes _____ No _____ If yes, *when?* _____

If yes, please state the dates you missed work, your employer at the time, and the health condition that caused your absence from work:

_____

_____

_____

Did you see a Health Care Provider about the health problem that caused you to miss work? Yes _____ No _____

If yes, please identify the Health Care Provider's name, address and *when* you visited that provider.

_____

_____

I.  In addition to the Health Care Providers identified in the preceding answers in this Questionnaire, have you gone to any more Health Care Providers (as defined on p. 2) in the last twenty (20) years? Yes _____ No _____

If so, please provide the following information:

| Dates you went | Name and Address of Health Care Provider | What Illness or Injury? | What diagnosis and treatment did you receive? |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

J.  Reproductive History (To be answered by all wives and mothers; to be answered by husbands and fathers only if they are filling out this Questionnaire for their wives):

Have you (or your wife if a husband is answering this question) ever had a miscarriage? Yes_____ No_____

If yes, please state how many times and *when* each happened._____

_____

28

Have you ever experienced any still-births or deaths of your children shortly after they were born?  Yes _____     No _____

If yes, please state how many times and *when* each happened. _____

_____

If yes, did you see a Medical Care Provider about the still-births or infant deaths? Yes _____     No _____

If yes, please identify who you saw, *when* you saw them, and what they told you about each such incident?_____

_____

**VII.**     **SPECIFICATION OF DAMAGES BEING SOUGHT AND SUPPORTING DOCUMENTATION**

A.     What *amount* of damages are you seeking?

For physical injury to yourself          $_____

For damage to your crops?               $_____

For damage to your animals?             $_____

For lost wages or income?               $_____

For anything else? If so, describe:

_____          $_____

TOTAL ............................................          $_____

B.

C.     Do you seek damages to reimburse you for medical bills and expenses that you paid? Yes _____ No _____

If yes, how much did you pay? $_____

If yes, did you pay in cash or with something else?  (If something else, describe what it was):

_____

D.     Do you seek damages to reimburse you for *other* out-of-pocket expenses or fees?

29

Yes _____ No _____

If yes, how much in expenses or fees did you pay, how did you pay then, and what were the payments for? _____

_____

_____

E.    Do you seek damages for lost wages or loss of time from work?
Yes _____ No _____

If yes, *when* did this happen? (List all instances) _____

_____

If yes, how long were you unable to work? _____

If yes, how much in wages or income did you lose? $_____

How do you calculate this amount?

_____

_____

If you claim lost wages, identify the employer(s) (by listing each name and address) who did not pay you for the relevant period of time.  If self-employed, describe the basis for your alleged lost earnings. _____

_____

_____

Did you try to find new work during the period of time for which you seek lost wages or income?  Yes _____ No _____

If yes, where did you apply or inquire and what happened following your application or inquiry? _____

_____

F.    Do you seek damages for the loss of legal crops?  Yes _____ No _____

If yes, please provide the following information:

| Kind of Crop | Amount that Died | Monetary Value(s) you place on the Crops that Died | Basis for your Value(s) |
|---|---|---|---|
|  |  |  |  |

30

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

      G.     Do you seek damages for farm animals or pets that died? Yes ____ No ____

      If yes, please provide the following information:

| Kind of Animal | No. that Died | Monetary value(s) you place on the dead animals | Basis for your Value(s) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## VIII.   WITNESSES TO YOUR CLAIMS

     Please identify all persons whom you believe possess information concerning your alleged exposure to the "Plan Colombia" herbicide and/or the alleged injuries or other harm resulting to you from the exposure (*other than your attorneys and the Health Care Providers identified elsewhere in this Questionnaire*):

     Name and address: _____

_____

     (This person knows what?) _____

     Name and address: _____

_____

     (This person knows what?) _____

     Name and address: _____

_____

     (This person knows what?) _____

**Attach additional sheets if necessary.**

31

## IX.    DOCUMENT REQUESTS AND AUTHORIZATIONS

### A.    If you are claiming personal injuries to yourself:

1.    Please provide a copy of any and all medical and other documents (as defined on p. 2 above), including records, test results and all medical bills *in your or your attorney's possession* that relate to any visit you made or any treatment you received from a Health Care Provider (as defined on p. 2) in the last twenty (20) years.

2.    Please complete and sign a copy of the Exhibit A "Authorization for Release of Medical Records" for each Health Care Provider you have identified in your responses to this Questionnaire. Deliver the Authorizations to each Health Care Provider identified on the form and give the documents that the Providers produce to you (along with a copy of the corresponding Authorization for Release given or sent to each Provider) to your attorney so that these medical records may be delivered to the defendants' counsel along with your responses to this Questionnaire.

3.    Please sign and produce an additional copy of the Exhibit A "Authorization for Release of Medical Records" with the name of the Medical Care Provider left blank for future use if the defendants become aware that you saw or were treated by additional Medical Care Providers in the last twenty (20) years.

32

**B.**  **If you are claiming reimbursement for any medical expenses or other out-of-pocket expenses related to your alleged exposure:**

    1.    Please attach a copy of the receipts, bills, invoices or any other documents in your or your attorney's possession that demonstrate the amount of the expenses for which you seek reimbursement.

**C.**  **If you are claiming lost wages or earnings:**

    1.    Please attach copies of any and all documents in your possession about the total amount of salary or wages that was paid to you and the total amount of any other income that was generated by you for each year in the last ten (10) years. This shall include but not be limited to: pay-stubs, cancelled checks, income tax forms or other documents that disclose income received by you each year for the last ten (10) years from any source.

    2.    Please complete and sign the attached Exhibit B "Authorization for Release of Employment Records" for each of your employers in the last ten (10) years as identified in your answers to this Plaintiffs' Questionnaire. Deliver the Authorizations to each such employer identified on the form and give the documents that the employers produce to you (along with a copy of the corresponding Authorization) to your attorney so that these records may be delivered to the defendants' counsel along with your responses to this Questionnaire.

    3.    Please sign and produce an additional copy of the Exhibit B "Authorization" with the name of the employer left blank for future use if

the defendants become aware that you had additional employers in the last ten (10) years.

**D.    If you are claiming loss based on injury or damage to your legal crops:**

1.    Please attach copies of any and all documents that demonstrate or support: (i) that you owned the land and/or that you owned the crops on that land, which you claim were destroyed, (ii) the amount of crops that were destroyed, and (iii) the monetary value of the destroyed crops.

**E.    If you are claiming loss based on injury to farm animals or pets:**

1.    Please attach copies of any and all documents that demonstrate or support: (i) that you owned the animals you claim were injured or killed, (ii) the number of animals that died, (iii) the monetary value of the animals that died, and (iv) any other expenses you are claiming relative to this alleged loss.

**F.    If you are claiming any other kind of loss or damage in this case:**

1.    Please attach copies of any and all documents that demonstrate or support such other claimed loss or damage and the *amount* of damages you seek for that loss or damage.

## X.    VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


Executed on_____    _____
             (Date)                   Plaintiff's Signature

                                      _____
                                      Print Plaintiff's Name


                                      _____
                                      Signature of witness attesting to    (Date)
                                      Plaintiff's Signature


                                      _____
                                      Print Witness's Name

                                      _____
                                      Witness's Address

                                      _____
                                      Witness's Relationship to Plaintiff

# EXHIBIT A [To the 3/4/08 Plaintiffs' Questionnaire]

**Complete the following form if you are claiming personal injuries as a result of the alleged exposure**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Nestor Ermogenes Arroyo Quinteros, *et al.*,  Plaintiffs, ) ) ) | |
| v. ) | Case No. 1:07CV01042 (RWR) |
| DynCorp, *et al.*  Defendants. ) ) ) ) | |
| Venancio Aguasanta Arias, *et al.*,  Plaintiffs, ) ) ) | Consolidated for Discovery with  Case No. 1:01CV01908 (RWR) |
| v. ) | |
| DynCorp, *et al.*  Defendants. ) ) ) | |

## AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS

To: _____

Name of Health Care Provider

_____

Address

_____

City, Province, Country

    This will authorize you to furnish copies of all medical records, including, but not limited to: medical reports, radiographic films, CT scans, X-rays, MRI films, MRA films, test results of any and all kinds, correspondence, progress notes, prescription records, written statements, employment records, wage records, disability records, medical bills, and any other documents in your possession concerning _____

(Name of Patient)

whose date of birth is _____ and whose Ecuadorian Certificate of Identity No. is _____.

    You are authorized to release the above records to the patient identified above or to either of the following Records Requestors who represent the defendants and the plaintiffs in the

Page 1 of 2

above-captioned lawsuits, and who have agreed to pay reasonable charges made by you to supply copies of such records:

| | | | |
|---|---|---|---|
| 1. | Counsel for the Defendants:<br>Spriggs & Hollingsworth<br>1350 I Street N.W.<br>Washington, D.C. 20005<br>(202) 898-5800<br>Or any designee of the firm | 2. | Counsel for the Plaintiffs:<br>Conrad & Scherer, LLP<br>633 South Federal Highway<br>Ft. Lauderdale, FL 33301<br>(954) 847-3374<br>Or any designee of the firm |

This authorization form does not authorize you to disclose anything other than documents and records to anyone, except that it does authorize you to discuss the same medical records that you are producing with either or both of the law firms identified above and to testify about the records and your treatment of the identified patient at a deposition and at the trial in this case. This authorization is not valid unless the record requestors named above have executed the acknowledgment at the bottom of this authorization.

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the kinds identified above, which is learned or determined after the date hereof. It is expressly understood by the undersigned patient and you are hereby authorized to accept a copy or photocopy of this authorization with the same validity as though an original had been presented to you.

Date:_____     _____
                                Patient or Guardian Signature

Date:_____     _____
                                Witness Signature

## ACKNOWLEDGMENT

The undersigned, as the Records Requestors named in the above medical authorization, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the attorney for the patient named in the foregoing medical authorization has been given notice that this authorization will be used to request records from the Health Care Provider to whom it is addressed, which person or entity was identified by the patient in his/her responses to the Plaintiffs' Questionnaire in this case. Further, the attorney for the named patient is cooperating in making this request jointly to the Health Care Provider and will be entitled to make copies of the records produced in the same manner as the defendants' counsel.

_____     _____
for Conrad & Scherer, LLP            for Spriggs & Hollingsworth

# EXHIBIT B [To the 3/4/08 Plaintiffs' Questionnaire]

## Complete the following form only if you are making a claim for lost wages or lost earnings

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Nestor Ermogenes Arroyo Quinteros, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV01042 (RWR) |
| | ) | |
| DynCorp, *et al.* | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Venancio Aguasanta Arias, *et al.*, | ) | |
| Plaintiffs, | ) | Consolidated for Discovery with |
| | ) | Case No. 1:01CV01908 (RWR) |
| v. | ) | |
| | ) | |
| DynCorp, *et al.* | ) | |
| Defendants. | ) | |

## AUTHORIZATION FOR RELEASE OF EMPLOYMENT INFORMATION AND RECORDS

To: _____

Name

_____

Address

_____

City, Province, Country

    This will authorize you to furnish copies of all applications for employment, resumes, records of all positions held, job descriptions of positions held, salary and/or compensation records, performance evaluations and reports, statements and comments of fellow employees, attendance records, tax records and forms, workers' compensation files, all physical examination or other medical records in your possessions as well as any records pertaining to claims made relating to health, disability or accidents in which I was involved, including correspondence, reports, claim forms, questionnaires, records of payments made to me or on my behalf, and any other records relating to employment with the above-named employer concerning _____

_____whose date of birth is _____ and whose Ecuadorian
(Name of Employee)

Certificate of Identity Number is _____.

You are authorized to release the above records to the employee identified above or to either of the following representatives of the defendants and the plaintiffs in the above-captioned lawsuits who have agreed to pay reasonable charges made by you to supply copies of such records.

| | | | |
|---|---|---|---|
| 1. | Counsel for Defendants:<br>Spriggs & Hollingsworth<br>1350 I Street N.W.<br>Washington, D.C. 20005<br>(202) 898-5800<br>Or any designee of the firm | 2. | Counsel for Plaintiffs:<br>Conrad & Scherer, LLP<br>633 South Federal Highway<br>Ft. Lauderdale, FL 33301<br>(954) 847-3374<br>Or any designee of the firm |

This authorization form does not authorize you to disclose anything other than documents and records to anyone, except that it does authorize you to discuss the same employment records with either or both of the law firms identified above and to testify about the records and the identified person's employment for you at a deposition and at the trial in this case. This authorization is not valid unless the Records Requestors named above have executed the acknowledgment at the bottom of this authorization.

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the kinds identified above, which is learned or determined after the date hereof. It is expressly understood by the undersigned employee, and you are hereby authorized to accept a copy or photocopy of this authorization with the same validity as though an original had been presented to you.

Date:_____        _____
                                     Employee Signature

Date:_____        _____
                                     Witness Signature

## ACKNOWLEDGMENT

The undersigned, as the record requestors named in the above authorization, hereby declare under penalty or perjury, pursuant to 28 U.S.C. § 1746, that the attorney for the employee named in the foregoing authorization has been given notice that this authorization will be used to request employment records from the person or entity to whom it is addressed. Further the plaintiff's attorney is cooperating in making this request jointly and will be entitled to make copies of the records in the same manner as the defendants' counsel.

_____        _____
for Conrad & Scherer, LLP              for Spriggs & Hollingsworth

506635v3

Ecuador West

1

Ecuador East

2

# Exhibit G

## Stewart, Rosemary

| | |
|---|---|
| **From:** | Stewart, Rosemary |
| **Sent:** | Monday, March 31, 2008 5:17 PM |
| **To:** | sterrell@elllaw.com |
| **Cc:** | 'wlack@elllaw.com'; 'Jeff Frazier'; William Scherer; William Scherer, III; William Wichmann; Greg Barthelette ; psizemore@girardikeese.com; tgirardi@girardikeese.com; 'jlenze@girardikeese.com'; mmadigan@akingump.com; asheedy@akingump.com; 'lulrich@akingump.com'; Lasker, Eric; Hollingsworth, Joe G. |
| **Subject:** | Arias/Quinteros v. DynCorp -- Spanish-language Plaintiffs' Questionnaire |
| **Attachments:** | Spanish-language Questionnaire.DOC; Final Ex A.doc; Final Ex B.doc |

To:  Stephen Terrell
cc:  Other Quinteros and Arias counsel

Thank you for your email of earlier today about the Plaintiffs' Questionnaire.  Attached please find a clean copy of the Spanish-language version of the Plaintiffs' Questionnaire and its Exhibits.  PLEASE ADD A LINE TO ASSIGN A UNIQUE PLAINTIFF IDENTIFICATION NUMBER FOR EACH PLAINTIFF WHEREVER YOU BELIEVE IT BEST FITS ON THE FORM.  In the attached final draft, we have added the italicized and bolded language consistent with the final English version.  In the process of our final review, however, we did note some missing "Yes ___ No ___" options, which we added at the appropriate spots.  We also noted the following additional omissions, which we have added to the text of the final Questionnaire, as follows:

> VI A was missing the entire first sentence,  "Marque las condiciones médicas que usted *tiene en este momento* y las condiciones que usted ha tenido en *cualquier momento en el pasado*.

> Also, under VI. A, the health condition "Anemia u otros problemas de sangre" was missing.

> VI. H was missing the follow-on question, "Si su respuesta fue si, ¿*cuando*? _____."

> VII. A was missing the word "Descríba:" before the TOTAL.

Rosemary Stewart
SPRIGGS & HOLLINGSWORTH
1350 I Street NW
Washington D.C. 20005
(202) 898-5888

# Exhibit H

**From:** Stephen Terrell [mailto:sterrell@elllaw.com]
**Sent:** Thursday, March 20, 2008 12:19 PM
**To:** Stewart, Rosemary; Jeff Frazier; William Scherer; William Scherer, III; William Wichmann; Greg Barthelette; psizemore@girardikeese.com; tgirardi@girardikeese.com; jlenze@girardikeese.com; Terry Collingsworth; nt@iradvocates.org; mmadigan@akingump.com; asheedy@akingump.com; lulrich@akingump.com
**Cc:** Lasker, Eric; Hollingsworth, Joe G.
**Subject:** RE: Arias/Quinteros v. DynCorp (D.D.C.)

Ms. Stewart:

Thank you for your letter dated March 13, 2008. The Plaintiffs are willing to translate (or split the cost of translating) the questionnaire responses into English. For the reasons stated in my letter dated March 3, 2008 we cannot agree at this time to translate all Spanish language medical records. When and how those records are translated can be addressed at a later date.

With respect to the questionnaires, I believe the following issues are outstanding:

First, the Plaintiffs will approve or suggest corrections to your edits to the Spanish-language questionnaire.

Second, is DynCorp amenable to production of questionnaire responses as an Access database? If so, we will prepare and forward to you a shell database (the fields) in an Access program that is compatible with Microsoft Office 2003 for your approval. Furthermore, if we are all agreeable to a database production, we need to figure out how that is going to be translated (a second database in English?).

Third, as we agreed at the meet and confer, the Plaintiffs will be marking their exposure locations on the maps provided and those maps will be scanned and produced as .TIFF files. This may render the GIS issue moot.

Fourth, would you be willing to obtain some bids on the proposed translation of the questionnaire responses? Since this case is venued in DC, if we can develop a working relationship with a translation company in the area for the questionnaire responses that may be very beneficial down the line.

Sincerely,

Stephen Terrell
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA 90067
(310) 552-3800
(310) 552-9434 (fax)
sterrell@elllaw.com

# Exhibit I

**EXHIBIT I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Venancio Aguasanta Arias, *et al.*,<br>　　　　Plaintiffs,<br><br>v.<br><br>DynCorp, *et al.*,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:01CV01908 (RWR) |
| Nestor Ermogenes Arroyo Quinteros, *et al.*,<br>　　　　Plaintiffs,<br><br>v.<br><br>DynCorp, *et al.*,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:07CV01042 (RWR)<br><br>(Cases consolidated for case<br>management and discovery) |

## DECLARATION OF ROLANDO R. SANCHEZ
## IN SUPPORT OF DYNCORP INTERNATIONAL'S MOTION TO COMPEL

I, ROLANDO R. SANCHEZ, HEREBY DECLARE AS FOLLOWS:

1.　　My name is Rolando R. Sanchez and I am an associate at the law firm of Spriggs & Hollingsworth, the legal counsel for the DynCorp defendants in the above captioned cases. I am a member of the legal defense team representing the DynCorp defendants.

2.　　I am not a certified translator, but I am fluent in Spanish and I am capable and competent of translating Spanish text into English text if there is no rush to do it quickly.

3.　　On June 27, 2008, the plaintiffs delivered three computer disks to Spriggs & Hollingsworth. Two disks contained a total of 800 Spanish-text Plaintiffs' Questionnaires with typed answers included (also in Spanish) on most of the 800 Questionnaires. I will refer to these as the "Produced Questionnaires." The third disk contained 186 hand-drawn or printed maps.

4.　　I have not translated the responses contained in the 800 Spanish-text Questionnaires, but I have compared the text of the questions and instructions on the form of the Produced Questionnaire with the text of the questions and instructions in the earlier Spanish-language Questionnaire agreed upon by all parties in these cases (hereafter, the "Agreed-upon Questionnaire"). I have listed all of the significant differences between the Produced

Questionnaire and the Agreed-upon Questionnaire in Appendix A to this Declaration, and I have identified the most substantial differences between the two documents – using English language translations – in this Declaration.

5.     The statements that I make in this Declaration are all based on my own review and translation and are therefore based on my personal knowledge.

I.     **Initial Plaintiffs' Statements Made in the Produced Questionnaire**

6.     The Produced Questionnaire contains an "Initial Declaration" page (page three) which is not part of the Agreed-upon Questionnaire. The new page initially states (as translated from Spanish to English with emphasis added):

> The plaintiff presents the following response to the questionnaire prepared by the plaintiff under Fed.R.Civ.Proc. 33. In responding to the interrogatories, you have been given information as it has been available. **This could include rumors or other form of proof which may not be reliable or admissible as evidence.**

7.     On the same page, under a section titled "Preliminary Response," the Produced Questionnaire essentially states that the plaintiff has provided answers without the benefit of having fully completed the investigation of his/her case for trial and that the plaintiff responds to questions without prejudicing his/her right to add or amend depending on future investigation. It also says that the plaintiff responds to questions in good faith in order to adequately answer but reserves the right to change answers depending on future discovery, investigation and analysis. Finally, on the same page, five objections are made under a section titled "General Objections."

II.     **Substantive Changes in Text or Omissions in the Produced Questionnaire**

8.     The Produced Questionnaire omits all italicized emphasis, bolded language and underlined language that is contained in the Agreed-upon Questionnaire. The Produced Questionnaire's numbering format is also different from the Agreed-upon Questionnaire (*e.g.* numbers were assigned to follow-on questions, which originally did not have numbers because they flowed from an initial question).

9.     The Produced Questionnaire also omitted or changed language that exists in the Agreed-upon Questionnaire. Sometimes, entire questions were left out. In order to better detail the extent of changes to the Agreed-upon Questionnaire, I have prepared and attached Appendix A, which contains an outline of the Agreed-upon Questionnaire with each omission or change made by the Produced Questionnaire listed by section and sub-section. The more significant of these differences are highlighted below:

> a.     At Section I.A, the instruction that the plaintiff should complete a new Questionnaire for each individual seeking damages is omitted.

b. At Section I.E, the options provided for explaining why a person may be filling out the Questionnaire on behalf of another are omitted, except that the "Other" option has added language.

c. At Section II.H, the entire paragraph which instructs plaintiffs on how to give directions to his or her home (necessary given their rural location in Ecuador) is omitted. Instead, only "Directions to your home" is asked.

d. At Section V.C, the question of *when* each plaintiff was exposed was followed, in the Agreed-upon Questionnaire, by an instruction to list each exposure by day, month and year. The Produced Questionnaire omitted the instruction to identify dates by day, month and year. It also omitted an instruction to list all dates of exposure if there was more than one date.

e. At Section V.F, the language "Kilometers _____ or Meters _____" is missing from the third question, which asks the plaintiff to specify the distance of the plaintiff's property from the border. As a result, the question became vague. For example, on one plaintiff's response reviewed (#199), the answer, as translated, was "it was close."

f. At Section VI.F, some questions seem to have been asked out of order and other questions are shortened and/or missing question marks. Other questions replace words (*e.g.* "tobacco" instead of "cigarettes") and do not follow the fill-in-the-sentence format in which they were originally asked. One set of questions, originally asking about the use of cigars or pipes, is changed so that it only asks about cigar use; that set of questions is also confusing because the questions were shortened in a way that it is unclear what is being asked.

g. At Section VII.A, the dollar signs are all missing. As a result, many plaintiffs answered by listing crops damaged or animals injured instead of giving a dollar amount.

I declare under penalty of perjury that the foregoing (and the information in Appendix A hereto) are true and correct.

Executed on: July 31, 2008

_____
Rolando R. Sanchez
D.C. Bar # 979104

3

## APPENDIX A

*This document uses the same outline as used in the Agreed-upon Questionnaire and identifies all sections where the Produced Questionnaire omits or adds language.*

Agreed-upon Questionnaire Outline

I.    Initial Information

    A.    Omits instruction to complete a new Questionnaire for each individual plaintiff seeking damages.

    B    Adds question B.1 to include the plaintiff's number. (<u>Note:</u> This was approved by defendants.)

    C.    The question is re-worded.

    E.    Omits the options for seeking damages on behalf of another (age, incapacity, death) except that it expands on "Other" with new language that was not included in the Agreed-upon Questionnaire.

    F.    The beginning of the sentence "If you answered yes . . ." was omitted.

II.    Personal Information

    A.    "Certificate Number of Ecuadorian Identity" is changed to only "Certificate Number."

    C.    The beginning of the sentence "If your response was no" was omitted.

    D.    The beginning of the sentence "If you answered indigenous or Indian" was omitted.

    H.    The entire paragraph in the Agreed-upon Questionnaire which instructs on how to give directions to the plaintiff's home is replaced by "Directions to your home."

    I.    The language of the question is re-worded.

    K.    The language of the question pertaining to self-employment is re-worded. The word "work" in parentheses is omitted under employer information.

    L.    Omits asking for names of prior employers. Also a slight change to wording.

    M.    The first question omits the words in parentheses which say "(including in your current employment or at home)?" The second question omits the beginning of

1

the sentence, "If your response was yes" and omits the word "herbicide." The fourth question is omitted, and is replaced with "protection that you used while using pesticides" without a question mark. The sixth question in missing the beginning of the sentence "If your response was yes. . ." The eighth question is missing the beginning of the sentence "if your response was yes. . ."

N.    The first question omits the words in parentheses which say "(including in your current work or home farming)" The second and third questions are missing the beginning of the sentences "if your response was yes. . ."

O.    The third question is missing the beginning of the sentence "if your response was yes. . ."

P.    The second, third and fifth questions are missing the beginning of the sentences "if your response was yes. . ."

Q.    The second, third and fourth questions are missing the beginning of the sentences "if your response was yes. . ."

R.    The second and third questions are missing the beginning of the sentences "if your response was yes. . ."

S.    The Agreed-upon Questionnaire contains a chart that asks, "The claim was filed with whom?" The Produced Questionnaire only asks "With whom?"

III.    Family and Educational History

B.    The entire instruction for the section is missing. The language of the second question is re-worded.

C.    The instruction to use another sheet of paper if necessary is omitted. The second column of the family chart is re-worded to say only "Relation" instead of "Relationship to you" as contained in the Agreed-upon Questionnaire.

D.    The seventh question is missing the beginning of the sentence "if your response was yes. . ."

IV.    Living Conditions

A.    Questions ten and eleven were asked out of order (they were asked second and third). Question five, concerning filtering of water, is missing the beginning of the follow-on sentence "if your response was yes. . ." Question seven, concerning how food is cooked, is missing the words in parentheses "(in the kitchen, on a grill, with charcoal or with wood)." Question eleven is missing the beginning of the sentence "if your response was yes. . ."

B.    The first question is rephrased.  The Agreed-upon Questionnaire asks "How is sewage (waste water) from your home disposed of?"  The Produced Questionnaire asks "How do you dispose of used water" with no question mark.  The second question is missing the examples that are contained in the Agreed-upon Questionnaire "(into the soil, into a body of water: ditch, river, creek, lagoon etc.)"

C.    The follow-on questions to questions two and four are missing the beginning of the sentences, "if your response was yes. . ."

D.    The follow-on question to question three is missing the beginning of the sentence, "if your response was yes. . ."

E.    The first follow-on question to question one is missing the beginning of the sentence, "if your response was yes. . ."

V.    Your Alleged Exposure to the Plan Colombia Herbicide

A.    The two follow-on questions to question one are missing the beginning of the sentence, "if your response was yes. . ."

C.    The Agreed-upon Questionnaire asks the plaintiffs to list all dates of exposure by day month and year.  The Produced Questionnaire only asks "When were you and your property exposed to the herbicide?"

D.    The follow-on questions to questions four, eight, nine and twelve to eighteen are missing the beginning of the sentence, "if your response was no (or yes) . . ."  Question twelve is also missing the beginning of the sentence, "If you did see one . . ."

E.    Question one is missing the words in parentheses "(Please provide detail on both internal and external symptoms)."  All follow-on questions are missing the beginning of the sentence, "if your response was yes . . ."

F.    Question three is missing the "Kilometers _____ or Meters ____" language to aid in the response.  Question four is missing part of the second follow-on question "If you did not mark the map . . ."  The follow-on questions to question eight are missing the beginning of the sentence, "if your response was yes . . ."

G.    Question four changes the requested symbol to mark the map, to show the location of farm animals, from a "√" mark to a "?" mark.  The second follow-on question to question nine is missing the beginning of the sentence, "if your

response was yes . . ." It is also missing the instruction "If you got results, please attach them to your answers to this questionnaire."

H.    The second follow-on question to question one is missing the beginning of the sentence, "if your response was yes . . ."

VI.    Medical-Clinical History

A.    The Produced Questionnaire twice includes "medical condition" as a medical condition.

C.    The follow-on question to the first question is missing the beginning of the sentence, "If your response was yes . . ."

D.    The words "Medicine and/or Drug use:" are omitted.

F.    The words "History of use of tobacco and similar products:" are omitted. The question "Do you currently smoke?" is asked out of turn and the follow-on questions asking to give a quantity and timeframe are also asked out of turn. Instead, the words "for how many years" and "what brand" are added without question marks. The questions on smoking are asked after the initial tobacco and pipe questions. The follow-on questions asked concerning use of tobacco or pipe are replaced by three questions asking for quantity of tobacco smoked, date in which the smoking stopped and whether tobacco was smoked on a daily basis.

G.    The words "Drinking History" are omitted.

H.    The first follow-on question is missing the beginning of the sentence, "if your response was yes . . ."

I.    The chart provided is re-worded. Instead of stating "Dates that you visited a Health Provider" it only states "Date" and instead of stating "Name and Address of Health Provider" it only states "Name and Address."

J.    The initial text giving instructions is omitted. The follow-on questions to the first and second questions are missing the beginning of the sentence, "if your response was yes . . ."

VII.    Specification of Damages

A.    Each type of identified damage is missing the dollar sign.

C.    The two follow-on questions are missing the beginning of the sentence, "if your response was yes . . ."

4

D.  The follow-on question is missing the beginning of the sentence, "if your response was yes . . ."

E.  The first follow-on question is missing the beginning of the sentence, "if your response was yes . . ."

VIII.  Witnesses to your Claims

A.  Missing the instruction to add additional pages if necessary.

565997v1

# Exhibit J



Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

June 30, 2008

William Scherer, III, Esq.
Jeff Frazier, Esq.
Conrad & Scherer
Suite 800
633 S. Federal Hwy.
Ft. Lauderdale, Fla. 33301

and

Stephen R. Terrell, Esq.
Engstrom, Lipscomb & Lack
16th Floor
10100 Santa Monica Boulevard
Los Angeles, CA  90067

Re:    *Arias v. DynCorp*, No. 01-cv-1908 (RWR) and
           *Quinteros v. DynCorp*, No 07-cv-1042 (RWR) (D.D.C.)

Dear Plaintiffs' Counsel:

On Friday, June 27, 2008, we received an envelope containing a list of 800 individual plaintiffs' names and three disks, which William Scherer III represented to contain the responses to the Plaintiffs' Questionnaire by those same 800 plaintiffs. Contrary to the parties' agreement and the plaintiffs' obligation under the Federal Rules, plaintiffs failed to provide any of the Questionnaire responses in English. While this threshold failure to provide English-language responses limits our ability to review the adequacy of the responses in any detail, our preliminary review of your submission (and particularly plaintiffs' counsel's unilateral and unannounced changes to the Questionnaire form in contravention of the parties' prior agreement about its content) raises a number of other serious deficiencies that render the responses unacceptable.

First, each Questionnaire response is preceded by an "Initial Declaration" that states that the information in the response has been provided as it was available and *could include rumors or other forms of proof that may not be verified or admissible as evidence.* This assertion is

Spriggs 25 Hollingsworth
YEARS

William Scherer, III, Esq.
Jeff Frazier, Esq.
Stephen R. Terrell, Esq.
June 30, 2008
Page 2

extraordinary. Plaintiffs cannot satisfy their discovery obligations by providing defendants with unverified rumors as support for their claims, and the expressed admission that they have done so both defeats the entire purpose of the questionnaire process and raises significant questions as to the *bona fides* of the individual plaintiffs' claims. *See* Fed. R. Civ. P. 33 (each party must verify the accuracy of his/her answers).

Second, plaintiffs' counsel's decision to unilaterally change the Questionnaire language has in numerous instances altered the substance of the defendants' discovery requests so as to avoid disclosure of information that the Court has made clear must be provided in the first instance. For example, while the Court made clear at the initial scheduling conference in November 2007 that plaintiffs would have to provide, as part of their initial disclosure obligation, information about the specific dates of their alleged exposure to Plan Colombia herbicide, plaintiffs' counsel changed a key question in the Questionnaire so as to omit the agreed upon language requiring the plaintiff to provide the day and month (as well as year) of exposure. In addition, plaintiffs' counsel apparently did not consistently provide plaintiffs with the agreed-upon maps with which each plaintiff was to identify the location of each alleged exposure, with the result that the majority of the first 800 respondents did not provide any location information whatsoever, and many of those who did provide location information did so in a manner that is of limited usefulness (*e.g.,* handwritten maps without necessary geographical markers).[1]

While our review of the adequacy of plaintiffs' responses in other respects cannot proceed due to the lack of required English translations, the issues identified above make clear that none of the plaintiffs have provided responses that comply with the Federal Rules or the Court's instructions. Accordingly, we write pursuant to Fed. R. Civ. P. 37(a), and D.D.C. LCvR 7(m) to request that the parties "meet and confer" as soon as possible concerning a discovery motion that the defendants anticipate filing in the near future. The motion would ask the Court

---

[1] Still other changes to the agreed-upon Questionnaire have caused unresponsive answers by individual plaintiffs. For example, Section VII(A) of the Questionnaire was intended to provide only the dollar amounts of each plaintiff's various categories of claimed damages (as required in the first instance by Fed. R. Civ. P. 26(a)(1)(A)(iii)). But because the dollar signs were omitted on the altered Questionnaire form, many plaintiffs appear to be answering these questions without dollar amounts at all – as required to satisfy their as yet unsatisfied initial disclosure requirement to provide a computation of damages – but by listing animals or crops they contend were damaged, which is responsive to questions asked elsewhere in the Questionnaire.

**Spriggs** 25 **Hollingsworth**

William Scherer, III, Esq.
Jeff Frazier, Esq.
Stephen R. Terrell, Esq.
June 30, 2008
Page 3

to compel the plaintiffs to provide *verified* and *factual* responses to the Plaintiffs' Questionnaire using the *agreed-upon text* and to provide such responses *in English*.[2]

Please advise of your availability for a telephone conference any day this week (except Friday). Thank you.

Sincerely,

Rosemary Stewart

Rosemary Stewart

Counsel to the DynCorp Defendants

cc:    Other *Arias* and *Quinteros* plaintiffs' counsel

558294v1

---

[2] Defendants' motion will likewise request that the plaintiffs be compelled to translate the balance of their January 28, 2008 Spanish language Initial Disclosures which remain untranslated.

# Exhibit K



**Conrad & Scherer**
Attorneys at Law

Ft. Lauderdale, Florida  •  Washington, DC  •  Quito, Ecuador

July 9, 2008

<u>**Via Email**</u>
Rosemary Stewart
Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

Re: *Arias v. Dyncorp*

Dear Rosemary:

This responds to your letter of June 30. I appreciate your flexibility in waiting for my response until after the July 4 holiday, which I hope you enjoyed.  I have had the opportunity to consult with my colleagues. Before we schedule a meet and confer, which may not be necessary, you should review our responses below and at least narrow the issues.

You raise six issues in your June 30 letter. First is the translation issue. Our priority was to obtain timely responses from the Plaintiffs, which necessarily were given to us in their native language, Spanish. We have no problem now providing you with translations to English, but we do need to be clear on what this means. Our intention when we offered to do this was to provide the translations using our in-house employees or contractors. If you, instead, want to have the translations done through an outside translation service, this will be extremely expensive and we will need to work out a cost-sharing arrangement. Given that, as noted in the next paragraph, we will likely have ongoing translation issues, we need to have a clear agreement on this process.

Second, you note that some of the responses use language that you have translated to be that some of the facts "could include *rumors* or other forms of proof that may not be verified or admissible as evidence." This is simply a translation issue. Our translators tell me that the phrase you flag instead means "may include *hearsay* and other forms of evidence which are neither reliable nor admissible as evidence."  Given that your questions in some cases specifically ask for hearsay, *i.e.* V.A (English Version p. 13), our clients were merely being forthright in noting that some of their knowledge came from sources other than their personal observation. The factual basis or source for a Plaintiff's response to an interrogatory is normally something that is dealt with in a deposition, which, it is our position, will occur on a rolling basis for the Plaintiffs as their cases are selected for trial.

Established 1974
Rex Conrad 1935-1999  •  William Scherer
Conrad & Scherer, LLP  •  731 8th Street SE, Washington, DC 20003
Phone 202.543.4001  •  Fax 866.803.1125
www.conradscherer.com

Third, to the extent that some of the responses are not verified, that was a technical glitch that we will correct. You can be assured we do not dispute that verified responses are required.

Fourth, to the extent there was any modification to the questionnaire, it was due to a technical glitch in converting computer files. Our clients all responded to written versions of your exact questionnaire. Their responses were then inputted to a computer, and it is when these were converted to PDF files that some glitches occurred. We are reviewing the questions and responses actually provided and will correct any errors.

Fifth, we dispute your assertion that Plaintiffs' responses to questions of location or timing of their injuries were somehow inadequate or improper. On questions of this sort, we can only provide you with the information Plaintiffs can provide. As we told you in the prior meet and confer relating to the questionnaire, we believe our clients can provide their "best estimate;" we will not allow them to merely guess. They have provided you with their best estimate at this time based on the available facts.

Sixth and finally, you raise in footnote 1 that Plaintiffs did not provide dollar amounts for their damages. It is our position, and it is commonly understood, that it is improper for a defendant to ask a plaintiff for a specific dollar amount of her damages. It is proper to ask a plaintiff to describe specific aspects of damage, like physical injury and crop loss, which the response did provide to you. To the extent any actual numbers are provided, they are in U.S. dollars, which is the official currency of the Republic of Ecuador.

Please let me know how you want to proceed. If we are going to have a meet and confer, we would like to get from you any further, specific issues you have with the responses so that we do not have to engage in multiple discussions. Perhaps a smaller group of us can have a brief process call, and depending on the issues actually in dispute, we may then have to arrange a larger call.

Regards,

Terry Collingsworth



Conrad & Scherer
Attorneys at Law

# Exhibit L

 **Spriggs** **25** **Hollingsworth**
YEARS

Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

July 10, 2008

Terry Collingsworth, Esq.
Conrad & Scherer
731 8th St. S.E.
Washington, D.C. 20003

Re:    *Arias v. DynCorp*, No. 01-cv-1908 (RWR) and
       *Quinteros v. DynCorp*, No 07-cv-1042 (RWR) (D.D.C.)

Dear Terry:

Thank you for your letter of July 9, 2008, in response to mine of June 30, 2008. We shall address the outstanding issues using the same numbering in your July 9th letter:

1. <u>English translations</u>. We have earlier advised plaintiffs' counsel that we will accept your in-house translations for both the Initial Disclosure forms and the Plaintiffs Questionnaire responses. Our position on this has not changed. However, your offer to provide translated Questionnaire responses without any statement of *when* this will occur is unacceptable. Plaintiffs are now in violation of the June 25, 2008 deadline to submit the initial 800 Plaintiffs' Questionnaire responses. Submitting Spanish-language discovery responses to English-speaking defendants and their counsel is not in compliance with Rule 26(a), Rule 33, or the parties' previous agreements. If you wish to propose an extension in the current scheduling order that recognizes that production of both the individual plaintiffs' Initial Disclosures and the Plaintiffs' Questionnaire responses will not be considered complete until English translations of both are submitted to defendants, we shall consider such a proposal.

2. <u>The use of rumor and other unreliable evidence in preparing Questionnaire responses</u>. We reject your suggestion that the Spanish word "rumores" does not mean "rumors" or that plaintiffs in Ecuador would not have understood it to mean "rumors." Moreover, even if the word "rumores" does mean "hearsay" and the word "fiable" means "unreliable" (instead of "unverified"), these qualifications are equally objectionable and make each individual plaintiff's verification on the last page of each Questionnaire confusing at best and meaningless at worst.

Spriggs 25 Hollingsworth
YEARS

Terry Collingsworth, Esq.
July 10, 2008
Page 2

Unless a specific question invited hearsay, its use is incompatible with the requirements for discovery responses.

3. <u>Verified response</u>. We assume that any non-verified response subjects the plaintiff to dismissal of his/her claim. However, until you resolve the second issue above, we believe the meaning of the verifications on the initial 800 Questionnaire responses is in doubt.

4. <u>Modifications to the Questionnaire form</u>. Plaintiffs have provided us with Questionnaire responses signed by individual plaintiffs that have answers provided to questions that are, on the face of the document, different than the questions agreed to by the parties. Your suggestion that plaintiffs in fact were asked questions that are not set forth in the completed responses provided to us on June 27th renders them even more problematic. Even if we were to accept your representation (for which we would need to receive, at a minimum, some sworn evidence explaining exactly what transpired), we are still left with the situation that the responses we have been provided do not match up with the questions that appear in the document before them. Moreover, we cannot understand how the changes in the Questionnaires can be explained as "a technical glitch in converting computer files." For example, the altered form that we received had completely changed the order and the text of the parties' agreed-upon questions about each plaintiff's use of tobacco in Section VI.F. And these same questions now appear to have been answered in their altered state – not in the agreed-upon form.[1]

5. <u>Inadequate Responses</u>. Your suggestion that plaintiffs need not provide specific information regarding when and where they allege they were exposed to glyphosate spray and the timing of their injuries is directly contrary to the Court's requirement that plaintiffs provide such evidence before their claims may proceed. As you know, defendants in good faith agreed not to seek judicial relief when plaintiffs failed to provide this information in their January 28, 2008 Initial Disclosures on the condition that such information *would* be provided as supplemental disclosures as part of the Questionnaire responses. If, as you suggest in your letter, plaintiffs cannot provide such information without guessing, then they should voluntarily dismiss their claims. We certainly agree that plaintiffs can provide us only with information that they can accurately provide, but that does not in any way obviate the fact that they bear the burden of presenting the information necessary to state a valid claim.

6. <u>Damages</u>. Rule 26(a)(1)(A)(iii) requires "a computation of each category of damages claimed." Section VII.A of the Plaintiffs' Questionnaire asked for this explicitly in light of the plaintiffs' earlier failure to provide a computation of damages in their Initial Disclosure forms –

---

[1] Our concerns about plaintiffs' disregard of the agreed-upon Questionnaire form also include the plaintiffs' failure to use the maps attached to the Questionnaire and the failure to produce any medical or employment records as the Questionnaire required.

Spriggs25Hollingsworth

Terry Collingsworth, Esq.
July 10, 2008
Page 3


a fact that we brought to your attention back in January and February of this year.  It is our intention to ask the Court to compel this damages disclosure by each plaintiff.

We are available for a conference call tomorrow, July 11, or next week on Wednesday, July 16, Thursday, July 17 (afternoon only) or Friday, July 18, to satisfy our "meet and confer" obligation.  Please advise what date you prefer.

Sincerely,

Rosemary Stewart

Rosemary Stewart

Counsel to the DynCorp Defendants



cc:    All *Arias* and *Quinteros* Plaintiffs' Counsel

560838v1

# Exhibit M

**From:**  Stephen Terrell [sterrell@elllaw.com]
**Sent:**  Friday, June 06, 2008 5:47 PM
**To:**  Stewart, Rosemary; Jeff Frazier; William Scherer; William Scherer, III; William Wichmann; Greg Barthelette ; tgirardi@girardikeese.com; psizemore@girardikeese.com; nortiz@girardikeese.com; tc@iradvocates.org; tc@conradscherer.com; nt@iradvocates.org; nt@conradscherer.com; mmadigan@akingump.com; lulrich@akingump.com; asheedy@akingump.com
**Cc:**  Lasker, Eric; Hollingsworth, Joe G.
**Subject:**  RE: Arias/Quinteros v. DynCorp (D.D.C.)

Dear Ms. Stewart:

Thank you for sharing your concerns over how you believe the Plaintiffs are going to answer DynCorp's questionnaire. I understand from your letter that you have little faith that we are competent or capable of timely producing questionnaire responses. What exactly do you want us to say in response to that? What exactly are you looking for?

We have always treated these questionnaires as equivalent to interrogatories under Fed. R. Civ. Proc. 33. Pursuant to the Federal Rules and the Consent Notice DynCorp is entitled to verified responses on the agreed schedule.

On March 31, 2008 you e-mailed the *final* Spanish language questionnaire with the medical record and employment authorizations as Exhibit A and B. Previously, you had provided .pdf versions of the maps referenced in the questionnaire. You are entitled to verified answers to this questionnaire. We have never indicated we were not going to provide verified responses. We have never indicated we are not going to provide signed authorizations. On this, we have never "changed course."

As interrogatory responses, the questionnaires may be answered with the assistance of counsel. How we administer these questionnaires and conversations between counsel and the parties to obtain responsive information is attorney-client communication, attorney work-product, and is privileged. The "best evidence" of plaintiffs' response is the verified *final* questionnaire response. We are under no obligation to preserve or produce privileged communications or work-product.

You are entitled to a verified response to the questionnaire with executed authorizations for each plaintiff. These may very well be produced to you on paper, just like any other discovery response in any other case. We do not need your or DynCorp's approval to provide our responses in this matter. We do not need your or DynCorp's "permission" to obtain such responses.

We have endeavored to make these responses as useful as possible for everyone involved. As such, we have considered producing responses in electronic form (if for the sole reason of saving the small forest that may perish in order to produce 2,600 plus 40+ page responses). As explained to you by Mr. Frazier, we continue to explore non-paper alternatives to producing questionnaire responses. Access is not going to work.

Again, what specific questions or information do you need? We intend on providing verified questionnaire responses. We intend on adhering to the schedule set forth in the Consent Notice. We will, of course, meet and confer in good faith over any disputes once you have received Plaintiffs' responses.

Sincerely,

Stephen R. Terrell
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA  90067
(310) 552-3800
(310) 552-9434 (fax)
sterrell@elllaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Venancio Aguasanta Arias, *et al*., | ) |
| | ) |
| Plaintiffs, | ) Case Number: 1:01cv01908 (RWR) |
| v. | ) |
| | ) |
| DynCorp, *et al*. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Nestor Ermogenes Arroyo Quinteros, *et al*., | ) Case Number: 1:07cv01042 (RWR) |
| | ) |
| Plaintiffs, | ) (Cases Consolidated for Case |
| v. | ) Management and Discovery) |
| | ) |
| DynCorp, *et al*. | ) |
| Defendants. | ) |

**ORDER [as Proposed by Defendants]**

Upon consideration of defendants' motion to compel filed on August 1, 2008, plaintiffs'

response thereto, and further submissions and arguments by the parties,

IT IS HEREBY ORDERED:

1.  Each of the individual plaintiffs shall provide verified, factual and complete responses to

the Plaintiffs' Questionnaire, using the previously agreed-upon text of that Questionnaire.

This includes but is not limited to:

a.  Providing responses without any general qualification that the responses are based

on rumor, hearsay, or other forms of evidence that are not reliable or admissible,

and with the understanding that such responses may be admissible as evidence in

the same manner as responses to sworn interrogatories under Fed. R. Civ. P. Rule

33.

b. Providing the month, day and year of each alleged exposure to the "Plan Colombia" herbicide, and then responding to all follow-up questions with respect to each such alleged exposure event;

c. The marking of the maps appended to the Questionnaire to show where the plaintiffs, their affected farms, and/or their affected farm animals were located when each alleged exposure event occurred;

d. The submission of medical records in accordance with the instructions in the Questionnaire by the plaintiffs who claim health injuries from their alleged exposure events, and the submission of employment records in accordance with the instructions in the Questionnaire by the plaintiffs who claim lost wages or other lost income; and

e. Providing responses to Section VII.A of the Plaintiffs' Questionnaire to provide each individual plaintiff's monetary computation of each category of damages claimed.

2. All of the plaintiffs' responses to the Questionnaire shall be delivered to the defendants with translations in English, and no discovery shall commence against the defendants until this has been completed.

3. Plaintiffs shall provide English-translated responses to the Questionnaire on a rolling basis subject to the following schedule:

a. Plaintiffs shall have delivered to defendants at least 800 English-translated Questionnaire responses by no later than 30 days from the date of entry of this Order;

      b.      Plaintiffs shall have delivered to defendants at least 1,200 additional English-translated Questionnaire responses by no later than 60 days from the date of entry of this Order;

      c.      Plaintiffs shall have delivered to defendants all 3,295 English-translated Questionnaire responses by no later than 90 days from the date of entry of this Order.  Any plaintiff who has not provided an English-translated Questionnaire response by this date will voluntarily dismiss his/her claim.

4.      All Initial Disclosures previously made by the individual plaintiffs shall also be delivered to the defendants in English.  Plaintiffs shall provide such English translations for no fewer than 50% of the Initial Disclosures by 30 days from the date of entry of this Order and shall provide English translations of 100% of the Initial Disclosures by 60 days of the date of entry of this Order.

5.      In addition, the Questionnaire responses provided by the individual plaintiffs shall be accompanied by sworn statements by qualified medical or scientific witnesses that specifically link each plaintiff's alleged personal injuries or property damages to the effects of the "Plan Colombia" spraying.

6.      Prior to the next status conference, counsel for plaintiffs and defendants shall meet-and-confer to discuss (a) the voluntary dismissal of plaintiffs who have failed to provide adequate responses to the Questionnaire as set forth herein and (b) a proposed schedule for briefing the defendants' motions to dismiss such remaining plaintiffs as defendants believe also should be dismissed based upon inadequacies in their Questionnaire responses.  Any resulting dismissals shall be with prejudice and the plaintiffs are not

entitled to any further opportunity to supplement their Questionnaire responses in support of their responses to the defendants' motions to dismiss.

7.     All remaining dates set out in the November 27, 2007 Scheduling Order and the April 17, 2008 Consent Notice will be held in abeyance.  As previously scheduled, Court will hold its next status conference in this case on November 25, 2008.  At least 5 calendar days prior to that date, the parties shall file a Joint Status Report that (a) advises the Court as to any voluntary dismissals and the proposed briefing schedule for motions to dismiss arising from plaintiffs' submission of their Questionnaire responses, and (b) proposes a new schedule for the commencement and completion of merits discovery in these cases and for other pretrial procedures.  If the parties cannot agree to a proposed schedule, they shall set out their separate proposals for scheduling in the Joint Status Report and the Court will address the open issues at the status conference.

Dated: _____          _____
                                    RICHARD W. ROBERTS
                                    United States District Judge

563144v1