# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ARIAS, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Case No.1:01cv01908-RWR-DAR |
| v. | ) | |
| | ) | |
| | ) | |
| DYNCORP, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |
| QUINTEROS, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.1:07cv01042-RWR-DAR |
| v. | ) | |
| | ) | (Cases Consolidated for Case |
| | ) | Management and Discovery) |
| | ) | |
| DYNCORP, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY

Terry Collingsworth (DC Bar No. 71830)
Conrad and Scherer, LLP
731 8th Street SE
Washington D.C. 20008
Phone: 202-543-4001
Fax: 202-527-7990
Email: tc@conradscherer.com

***Counsel for Plaintiffs***

# TABLE OF CONTENTS

I.    Background of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Facts and Summary of Argument Relating to Defendants' Motion to
      Compel Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Defendants' Motion to Compel Should be Denied  Because They
            Failed to "Meet and Confer" in Good Faith and, in Filing the Motion,
            Refused to Consider Plaintiffs' New Information Following Counsels'
            Trip to Ecuador to Evaluate the Situation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Given that Defendants Have Not Yet Received Plaintiffs' Completed
            Responses to the Questionnaires, it is Premature to Evaluate Them,
            But to the Extent that the Court is Inclined To Assess Any Legal Issues
            That Might Be Raised in the Future, Plaintiffs' Positions on the Key
            Issues Are Supported By the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.    Interrogatory Responses May Include Hearsay or Other Information
                  Not Admissible at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Plaintiffs Who Do Not Have Specific Dates and Times for Their
                  Exposure to DynCorp's Unlawful Fumigations Must Only Respond
                  to the Best of their Recollection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            3.    Plaintiffs Will Provide Whatever Factual Evidence They Have on
                  Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

*Arias v. DynCorp,*
    517 F. Supp. 2d  221 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,17

*Barker v. Bledsoe*
    85 F.R.D. 545 (D. Okl., 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Campbell v. Microsoft Corp,*
    2006 WL 463263 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*Claar v. Burlington Northern Railroad Co.,*
    29 F.3d 499 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gadaleta v. Nederlandsch-Amerekaansche Stoomvart,*
    291 F.2d 212 (2nd Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc.,*
    64 F.R.D. 459 (S.D.N.Y.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kirk v. Raymark Industries, Inc.,*
    61 F.3d 147 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Miller v. Pruneda,*
    236 F.R.D. 277 (N.D. W.Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Moody v. Maine Central Railroad Co.,*
    823 F.2d 693 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nichols v. Philadelphia Tribune Co.,*
    22 F.R.D. 89 (E.D. Pa.1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Roberson v. Great Am. Ins. Companies of New York,*
    48 F.R.D. 404 (N.D. Ga. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shea v. Donohoe Const. Co., Inc.*,
    795 F.2d 1071 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*U.S. v. Diabetes Treatment Centers of America, Inc.*,
    235 F.R.D. 521 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,8,10

*Webb v. District of Columbia*,
    146 F.3d 964 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **RULES**

Fed. R. Civ. P. 26 (b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 33(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 33(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 37(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,7,11,19

L. Civ. R. 7(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,7-8,11,19

Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **STATUTES**

28 U.S.C. § 1350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# I. BACKGROUND OF THE CASE

There are two cases against the DynCorp Defendants that have been consolidated for case management and discovery, *Arias* (No. 1:01cv01908) and *Quinteros* (No. 1:07cv01042). The first case, *Arias*, was filed on September 11, 2001. *See* Complaint (Doc. No. 1). The essential allegations were that the DynCorp Defendants were the contractors for "Plan Colombia," and in the process of the aerial spraying of powerful herbicides to kill coca plants in Colombia, also unlawfully crossed the border into Ecuador. With no authority and in violation of the terms of "Plan Colombia," the DynCorp Defendants sprayed poisonous chemicals on the farms and homes of thousands of Ecuadoran citizens who resided near the border with Colombia. *See id.* ¶¶ 34-41. The victims of DynCorp's repeated unlawful incursions into Ecuador suffered serious personal injuries, and they also lost food crops and livestock. *Id.* ¶¶ 9-21; 39-40.

The first several years of the case were spent in legal wrangling in which the DynCorp Defendants refused any efforts at discovery because their motion to dismiss was pending. DynCorp did not assert that the spraying in Ecuador had not occurred, or even deny that innocent Ecuadorans were severely injured by the fumigation program. Rather, DynCorp asserted that they could not be sued as U.S. government contractors, and that the Ecuadoran victims of the unlawful spraying could not state a cause of action under U.S. law. *See* Defendants' Motion to Dismiss (Doc. No. 7).

On May 21, 2007, this Court issued a ruling that denied in part and granted in part Defendants' Motion to Dismiss. *Arias v. DynCorp*, 517 F. Supp. 2d  221 (D.D.C. 2007) (Doc. No. 44). In terms of the case going forward, the Court ruled that Plaintiffs had stated a claim for relief under the Alien Tort Claims Act, 28 U.S. § 1350, because unlawful aerial spraying of

innocent Ecuadoran farmers would be a violation of "customary international law." *Id.* at 227.
The Court further ruled that Plaintiffs claims under state law for, *inter alia*, wrongful death,
battery, assault, intentional and negligent infliction of emotional distress and negligence, were
not preempted by federal law as Plaintiffs were not challenging or questioning "Plan Colombia."
They were challenging DynCorp's violation of the very terms of Plan Colombia because it made
illegal incursions into Ecuador unauthorized by the program. *Id.* at 228-29. In reaching its
decision, the Court noted that Plaintiffs alleged that "Defendants used a fumigant that is harmful
to humans, animals, and plants other than cocaine and opium poppies." *Id.* at 223. Further, the
Court noted that Plaintiffs' medical expert, Dr. Adolfo Maldonado, produced a study showing the
pervasive damage caused to the Plaintiffs and others similarly situated by DynCorp's fumigations
in Ecuador, and that Plaintiffs alleged that "defendants sprayed the toxic herbicide at or near the
border of Colombia and Ecuador without regard to the health impact on Ecuador's inhabitants."
*Id.* at 223-24.

Subsequent to the ruling in the *Arias* case, on June 12, 2007, the *Quinteros* case was
transferred from the Southern District of Florida. (*Quinteros* Doc. No. 1). A scheduling
conference in both cases was held on November 27, 2007, and based on the Court's scheduling
order issued that day, the parties are now in the discovery process. (*See* Doc. No. 63). Currently,
with the combined *Arias* and *Quinteros* cases, there are approximately 3,300 individual cases,
and the three Ecuadoran provinces that have borne the brunt of the fumigations, Carchi,
Esmeraldas, and Sucumbios, have sought their own damages resulting from the unlawful
fumigations. In their Initial Disclosures, the provincial governments have collectively produced
evidence of their economic damage in excess of $500 million.

2

## II. FACTS AND SUMMARY OF ARGUMENT RELATING TO
## DEFENDANTS' MOTION TO COMPEL DISCOVERY

The DynCorp Defendants have moved to compel the approximately 3,300 individual Ecuadoran Plaintiffs to respond to a discovery questionnaire. Defendants' lengthy motion papers provide the beginning of the story, but, incredibly, omit the facts of the recent "meet and confer" process. This omission was not the result of Defendants' carelessness or oversight. Rather, this conclusively demonstrates Defendants' failure to comply with the requirements of Fed. R. Civ. P 37 (a)(1) and L. Civ. R. 7 (m) to meet and confer in "'good faith'" and to "'narrow the areas of disagreement.'" *U.S. v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 529 (D.D.C 2006)(Lamberth, J.)(quoting L. Civ. R. 7 (m)).

Defendants fail to disclose in their motion that the parties were in the midst of a negotiation when Defendants filed their Motion to Compel. Indeed, with notice to Defendants, counsel for Plaintiffs traveled to Ecuador to investigate and resolve the technical problems that were preventing the timely disclosure of the questionnaire responses to Defendants. ***There simply was no dispute about whether Plaintiffs would provide the information required by the questionnaires; the sole issue was when this could occur given the technical glitch that occurred***. The objective facts and correspondence between the parties, not provided to the Court in Defendants' Motion to Compel, establish that Plaintiffs' counsel took this trip based on a clear understanding that Plaintiffs were negotiating with Defendants as to a revised schedule based on the conditions on the ground in Ecuador. While Plaintiffs' counsel were in Ecuador, but before they were able to respond to Defendants' proposed schedule, Defendants announced a "take it or leave it" position and stated they would not consider ***any*** changes to their proposal. Thus,

3

Defendants disregarded Plaintiffs' position entirely in filing their Motion to Compel. As *Diabetes Treatment Centers of America* makes clear, a motion to compel should be denied if it is made before good faith efforts to meet and confer are completed.

Not only did Defendants fail to negotiate in good faith, their Motion to Compel includes a "proposed order" that adds issues that were never discussed by the parties and that go beyond even the terms of the proposed consent order Defendants sent to Plaintiffs weeks ago. Thus, rather than "narrow the issues" with a good faith negotiation, Defendants seek to blind side Plaintiffs, and the Court, by inserting significant new issues for resolution. This is the antithesis of a good faith meet and confer process.

Finally, Defendants' motion is internally inconsistent because they complain that Plaintiffs have failed to respond, and then argue various issues as to why the responses are, or will be, inadequate. This is simply frivolous. Plaintiffs' responses cannot be evaluated until their complete responses are provided to Defendants. The issue at this point is solely one of scheduling, and given that the meet and confer process was not yet completed, Defendants have burdened this Court with an issue not ripe for resolution.

### III. ARGUMENT

**A. Defendants' Motion to Compel Should be Denied Because They Failed to "Meet and Confer" in Good Faith and, in Filing the Motion, Refused to Consider Plaintiffs' New Information Following Counsels' Trip to Ecuador to Evaluate the Situation.**

There is no dispute that Plaintiffs will provide responses to the DynCorp questionnaire. Plaintiffs have repeatedly reminded the DynCorp Defendants that the sole question is how much additional time is required to correct significant technical problems that occurred in Ecuador

when Plaintiffs' legal team gathered the raw data to respond to the questionnaire. **Thus, there is a scheduling issue, not a substantive disagreement**, and the actual facts on the meet and confer process demonstrate that Defendants have failed to negotiate in good faith on this point.

Plaintiffs' concede that there have been logistical problems regarding the production of responses to DynCorp's 35-page questionnaire[1] for the approximately 3,300 individual Plaintiffs who reside in remote areas of the Ecuadoran rainforest. However, reading Defendants' moving papers, the false impression created is that Plaintiffs have simply refused to respond to the questionnaire. Defendants' attempt to mislead the Court and manufacture a violation of Plaintiffs' discovery obligations is easily rebutted with the complete facts.

There is no dispute that on June 27, 2008, Plaintiffs, as per the agreed schedule, provided Defendants with the initial 800 responses to the questionnaire, and that the responses were incomplete. *See* June 30, 2008 Letter from Rosemary Stewart to Plaintiffs' counsel (Exhibit J to Defendants' motion). Plaintiffs acknowledged that the responses were not complete, and explained that this was due to a significant technical problem in that they were unable to transfer properly all of the Plaintiffs' response data to a PDF file that corresponded to the questionnaire format. *See* July 9, 2009 Letter from Terry Collingsworth to Rosemary Stewart (Exhibit K to Defendants' motion). While this is where Defendants' rendition of the facts ends, it is where the meet and confer process begins. The parties held a telephonic meet and confer on July 18, 2008. Declaration of Terry Collingsworth ("Collingsworth Decl" ) ¶ 2. While other issues were discussed, *see id.* ¶ 3, the main outcome of the discussion was a reiteration that Plaintiffs had

---

[1] The final version of the 35-page questionnaire is attached as Exhibit F to DynCorp's Motion to Compel.

5

experienced a serious technical problem with the initial 800 responses to the questionnaire, and

they needed additional time to assess the extent of the problem and to correct it. In short,

Plaintiffs asked for an extension of time, and Defendants agreed to consider this and get back to

Plaintiffs. *Id.* ¶¶ 2-3.

On July 25, 2008, a week after the meet and confer, counsel for Defendants provided

Plaintiffs with a proposed consent order (attached to Collingsworth Decl as Exhibit 1).[2]  While

the proposed consent order had many objectionable provisions that the parties had never before

discussed, it did include a modified schedule very similar to that requested by Plaintiffs in the

July 18 meet and confer. *See* Exhibit 1 at 2-3, ¶ 3.

Before Plaintiffs could respond to the proposal, counsel needed to meet with the

discovery team in Ecuador to determine how much time was needed to correct the technical

problems. Counsel for Plaintiffs notified counsel for DynCorp that they would be going to

Ecuador and would respond to the proposal following an evaluation of the situation. *See*

Collingsworth Decl at  ¶¶ 5-6 and Exhibit 2.  Not only was counsel for Dyncorp aware that

counsel for Plaintiffs had gone to Ecuador to assess the situation prior to responding to the

consent order proposed by Defendants, but DynCorp's counsel specifically inquired as to

whether the meeting had occurred and whether Plaintiffs had a response to the "proposed

Consent Order."  *See* Exhibit 3.  Counsel for Plaintiffs responded that they were still meeting

with the Ecuador team and **"[w]e will have a counterproposal by Friday."** *Id.* (emphasis

added).

---

[2] All of Plaintiffs' Exhibits 1-11 are attached to the Collingsworth Decl and will be
referenced hereinafter by Exhibit number only. Defendants have labeled their exhibits A-M, and
these will be referred to herein as such.

From this point on, counsel for DynCorp engaged in a classic "take it or leave it" ploy that not only displayed a complete lack of good faith, but that clearly undermined the accepted premise of having counsel for Plaintiffs travel to Ecuador. All concerned understood that counsel for Plaintiffs needed to consult with the field team in Ecuador in order to have an educated response to Defendants' proposal, but counsel for Defendants waited until counsel for Plaintiffs had been in Ecuador for two days, meeting with their team to assess a realistic response to the proposed consent order, to announce on Wednesday, July 30, 2008, that Defendants would accept **no** changes to their proposal, and that **"unless we receive your favorable response by COB tomorrow, we shall file the defendants' motion to compel."** *See* Exhibit 4 (emphasis added).

Plaintiffs offered their response, as promised in Exhibit 3, on Friday, August 1. *See* Exhibit 5. It is likely that Defendants filed their Motion to Compel before ever receiving Plaintiffs response to the proposed consent order, but Defendants nonetheless then responded to Plaintiffs' counterproposal and rejected **all** of the changes proposed by Plaintiffs: "**we are unable to accept any of the changes you have proposed** . . ." *See* Exhibit 6 (emphasis added). The reason given, that Plaintiffs' proposed changes "would eliminate the specificity needed to assure that the plaintiffs understand what is expected of them" is nonsensical as counsel for Plaintiffs made clear to Defendants that they were not going to interview the Plaintiffs again, and merely needed to transmit already-gathered data to the Defendants. *See* Collingsworth Decl ¶ 10. Plaintiffs' subsequent efforts to re-engage Defendants to resolve the dispute were met with stonewalled refusal. *See* Exhibits 7-8.

A prerequisite to filing a motion to compel under Fed. R. Civ. P. 37 (a)(1) and L. Civ. R.

7 (m) is that the moving party must certify that it has met the obligation to meet and confer in "'good faith'" for the purpose of working to "'narrow the areas of disagreement.'" *Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. at 529 (quoting L. Civ. R. 7 (m)). Defendants' *pro forma* certification by footnote, *see* Defendants' Motion to Compel at 1, n.1, is negated by the actual facts of the meet and confer process, discussed above and ignored by Defendants in their motion. As this Court found, "[i]t is a waste of this Court's time and resources to adjudicate a dispute that could have been resolved by the parties." *Id.*

Here, the harm to the process and the principle is greatly enhanced because Defendants agreed to allow counsel for Plaintiffs to travel to Ecuador to confer with the field team in order to have a basis to respond to the key question of when and how the questionnaire responses could be corrected, but then, **with Plaintiffs' counsel in Ecuador and before ever receiving Plaintiffs' proposed changes, asserted that <u>no</u> changes would even be considered**. *See* Exhibits 3 and 4.

In a similar case from this Court, Judge Roberts affirmed Magistrate Judge Kay's denial of a motion to compel, and upheld an award of sanctions, because the moving party had failed to meet and confer in good faith. *See Campbell v. Microsoft Corp*, 2006 WL 463263 (D.D.C. 2006) (attached hereto as Exhibit 11). In that case, Judge Roberts reasoned:

> A comparison of the parties' conduct before and after plaintiff moved to compel supports the magistrate judge's conclusion that plaintiff did not behave in a spirit of cooperation in seeking a resolution before involving the court. Plaintiff's curt e-mail did not exude cooperativeness. By contrast, defendant's three-page response not only explained its position but also offered to discuss a solution to the dispute. At minimum, the defendant's action demonstrated its amenability to resolutions not involving the court; more charitably, it produced some progress in the discovery exchange. Defendant's response to plaintiff's revised discovery requests was met not with plaintiff's effort to confer, but rather with a premature motion to compel hastily filed containing misrepresentations . . . .

8

The defendant contacted plaintiff in a letter even after plaintiff filed her motion to compel, again attempting to confer with the plaintiff and resolve their discovery disputes without further court involvement. *Id.* at *3.

In this case, the indica of bad faith are very similar. The parties held a single meet and confer,[3] during which Plaintiffs conceded they had experienced a major technical flaw that prevented complete responses from being produced. *See* Collingsworth Decl ¶ 2-3. The sole request made by Plaintiffs was for a short extension of time to correct the error. *Id.* Defendants sent a proposed consent order that included the revised schedule, but then added a host of onerous provisions that were never discussed by the parties. *Id.* ¶ 4. There was no explanation, legal or otherwise, for the positions taken in the proposed consent order. Then, after waiting for counsel for Plaintiffs to travel to Ecuador for the purpose of evaluating the viability of the proposed schedule, Defendants unilaterally declared that negotiations were over, no changes were permitted, and Plaintiffs had to "take it or leave it." *See* Exhibit 4. As in *Campbell*, DynCorp did not "behave in a spirit of cooperation in seeking a resolution before involving the court. [DynCorp's] curt e-mail did not exude cooperativeness." 2006 WL 463263 at *3.

The lack of good faith by DynCorp's explicit refusal to entertain suggestions from Plaintiffs was greatly magnified because counsel for DynCorp waited for counsel for Plaintiffs to travel to Ecuador to explore options before cutting off all discussion. Further, Defendants' refusal to consider Plaintiffs' suggestions was based on a nonsensical reason. *See* Collingsworth Decl ¶10. Likewise, as in *Campbell*, counsel for Plaintiffs continued to try to dialogue even after the

---

[3] Defendants devote much of their motion to recounting the history of discovery in this case, but there is no question that the sole dispute that is the subject of the Motion to Compel is the timing and adequacy of Plaintiffs' responses to the questionnaires. There was a single telephonic meet and confer on that issue on July 18, 2008. *See* Collingsworth Decl ¶ 2.

9

Motion to Compel was filed and urged, at the very least, agreement on a new schedule, *see* exhibit 7, but DynCorp's response remained that they would be happy to have a "discussion" provided Plaintiffs accept all of their terms without change – Defendants' proposed Consent Order represents "what it would take to resolve these same concerns short of Court intervention." *See* Exhibit 8.

DynCorp's conduct is the opposite of seeking to resolve a dispute to avoid burdening the Court. Defendants improperly used the threat of burdening Plaintiffs with responding to a motion to compel in an effort to exact onerous concessions, never before discussed, as part of their proposed consent order. *See* Collingsworth Decl. ¶4.

The purpose of a meet and confer is to attempt to resolve the dispute in good faith **OR** to narrow the issues presented to the Court for resolution. *Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. at 529. Defendants likewise failed in the second objective of the meet and confer process. The parties, for example, really have no significant differences on a revised schedule for the questionnaire responses, but Defendants declined to try to at least work on that issue before presenting their motion. *See* Exhibits 7 and 8.

Indeed, not only did Defendants fail to try to narrow the issues, they used the Motion to Compel process to introduce new issues that the parties had never discussed. *See* Collingsworth Decl. ¶4. Indeed, Defendants added yet another onerous term to the proposed order submitted to the Court with the Motion to Compel, which was not included in the meet and confer version of the proposed consent order provided to Plaintiffs. This provision had been previously offered by Defendants at the November 27, 2007 status conference and was rejected by this Court. The second version of Defendants' proposed order added a new ¶ 5 that each of the 3,300

10

questionnaires include "sworn statements by qualified medical or scientific witnesses that specifically link each plaintiff's alleged personal injuries or property damages to the effects of the 'Plan Colombia' spraying." When Defendants proposed this onerous provision that all 3,300 Plaintiffs must submit sworn medical opinions in the initial discovery process, the Court rejected it, stating:

> Without having sort of the full-blown – I think it was called lone pine – kind of disclosures that were verified and accompanied by doctors' opinions and experts' conclusions and so forth, I do think it would be – it would have to be a bit more flushed out than that, just saying there's some temporal connection. There ought to be the kind of detail that would be useful by way of identification of dates or times, ***if that's possible***, airplanes, descriptions, what they saw, colors of fumes, any kind of details like that, and added to the temporal connections.

Transcript of November, 27, 2007 Status Conference, Exhibit A at 8:13-22 (emphasis added).

Adding an extremely burdensome provision to the proposed order submitted to the Court, but not included in the discussion draft provided to Plaintiffs in the meet and confer process (Exhibit 1), would, under any circumstances, indicate a failure to meet and confer in good faith before bringing an issue to the Court. Here, Defendants' stealth move constitutes bad faith as the provision they seek was already considered and rejected by Plaintiffs and this Court.

Defendants' failure to comply with the requirements of Fed. R. Civ. P 37 (a)(1) and L. Civ. R. 7 (m) to meet and confer in "good faith" and work with Plaintiffs to "narrow the areas of disagreement" requires the denial of their Motion to Compel. As Plaintiffs concede that they are obligated to complete the questionnaires, the proper remedy is to grant Plaintiffs' request for a modified scheduling order to give Plaintiffs the additional time to correct the technical problems and provide corrected responses to the questionnaires. Plaintiffs request an additional 30 days

from the date of any Order issued as a result of this process to complete the original 800

responses, 60 days from the date of the Order to complete the first 1,200 responses, and up to 90

days from the date of the Order to complete the balance of the approximately 3,300

questionnaires. This schedule was included in Defendants' proposed consent order. *See* Exhibit 1

at 2-3, ¶ 3.[4]  Plaintiffs include a [Proposed] Order with their opposition papers to accomplish this

schedule.


**B. Given that Defendants Have Not Yet Received Plaintiffs' Completed Responses to the Questionnaires, it is Premature to Evaluate Them, But to the Extent that the Court is Inclined To Assess Any Legal Issues That Might Be Raised in the Future, Plaintiffs' Positions on the Key Issues Are Supported By the Law.**


Defendants first complain, despite Plaintiffs' agreement on this point, that they have not

yet received completed responses to the questionnaires. Defendants then pivot to the opposite

pole and complain that the responses they received are inadequate in a number of respects.

Obviously, the adequacy of the final responses cannot be evaluated until Plaintiffs provide them,

which they will do on the modified schedule they seek herein. Plaintiffs have agreed that once the

technical issues are resolved, their corrected responses will be "final" to avoid the possibility of

further delay to allow for supplementation of the responses. *See* Exhibit 7. As to the translations,

while Plaintiffs are willing to do this on a reasonable schedule, that should be part of a meet and

confer process as a schedule for the translations was never agreed to. *See* Collingsworth Decl ¶

---

[4] There remains a scheduling dispute as to the timing of the translations to English of the responses. As this issue was not properly addressed by Defendants in a meet and confer process, it, along with all other outstanding issues not resolved, should be referred back to a meet and confer process between the parties. *See* Plaintiffs' [Proposed] Order, filed concurrently herewith.

14. That Defendants clearly have done some part of the translation of the initial responses suggests that it is not essential that Plaintiffs provide the translations immediately as Defendants have been asserting in the meet and confer process to date.

There are several legal questions regarding the scope of the responses that the parties have discussed to a certain extent, but have not resolved. As Defendants did not provide specific legal support for their positions, and clearly failed to take account of Plaintiffs' positions in filing their Motion to Compel, resolution of the issues, or at least a narrowing of the issues, could result from an actual, good faith, meet and confer. However, as Defendants raise these issues in their Motion to Compel (at 15-24), Plaintiffs respond herein to demonstrate that their projected responses will be well-supported by the law.

### 1. Interrogatory Responses May Include Hearsay or Other Information Not Admissible at Trial.

Defendants assert that it is improper for Plaintiffs to include hearsay information in their responses.[5] Defendants' Motion to Compel at 15-17. First, it cannot be disputed that DynCorp's 35 page questionnaire repeatedly requests from Plaintiffs hearsay information that would not normally be admissible at trial. For example, question V.A asks, "If yes, identify the people you have talked with about 'Plan Colombia,' *what they told you*, and *when* these conversations took place?" Exhibit F, p. 13 (emphasis added). This is hearsay and is inadmissible at trial. *See* Fed. R. Evid. 802.

---

[5] The issue arose as Plaintiffs included an initial disclaimer to their responses that the information included facts that were possibly hearsay. Defendants now dispute that this is what Plaintiffs meant, and assert that the disclaimer, provided in Spanish, instead means that the responses include "rumors." Plaintiffs can only confirm that it was their intention to refer to hearsay. *See* Exhibit K at 1.

It is well-established, though, that the scope of permissible discovery is not limited to admissibility at trial.  "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. . . . *Relevant information need not be admissible at the trial* if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added).  The scope of discovery is broad and encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Where an interrogatory calls for hearsay or other inadmissible evidence, there may not be a basis for a responding party to completely avoid answering the interrogatory (given the very broad scope and leeway afforded civil discovery), but the responding party may respond subject to an objection.  Failure to assert an objection, though, could result in the responding party's waiver of that objection at trial.  Fed. R. Civ. P. 33(b)(4).

In the 800 responses that have been served on DynCorp, but which Plaintiffs concede are not yet complete, Plaintiffs have specifically asserted objections to each and every question that they deem objectionable, consistent with Rule 33(b)(4).  This is proper and appropriate. Furthermore, Plaintiffs agreed, prior to DynCorp's prematurely-filed Motion to Compel, that they would *supplement* their responses, eliminating their general objection (contained in the preliminary statement) and instead simply assert specific objections to those interrogatories that are objectionable.  Therefore, DynCorp's argument, in addition to being legally incorrect, is

14

largely illusory.

There is simply no evidence presented by DynCorp in its motion that responding Plaintiffs have in any way failed to comply with their discovery obligations simply because they have asserted legitimate objections to the questionnaire. Nor is it unusual that verified discovery responses are *inadmissible* at trial because they refer to evidence that is objectionable. *See, e.g., Kirk v. Raymark Indust., Inc.*, 61 F.3d 147, 167-168 (3rd Cir. 1995); *Gadaleta v. Nederlandsch-Amerekaansche Stoomvart*, 291 F.2d 212, 213 (2nd Cir. 1961); *see also Nichols v. Philadelphia Tribune Co.*, 22 F.R.D. 89, 90 (E.D. Pa.1958) ("answers to interrogatories are not necessarily admissible at the trial"). Where DynCorp's discovery sought hearsay, Plaintiffs complied with their *discovery obligation* to answer the question "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

The final responses to the questionnaires will be verified. DynCorp may be disappointed with the fact that it failed to craft questions that solicit admissible and relevant information in these cases. That is not Plaintiffs' problem. There is no evidence, nor any rule of law, which supports DynCorp's argument that Plaintiffs' preliminary statement and legitimate objections in any way invalidate or detract from their verifications.

**2.    Plaintiffs Who Do Not Have Specific Dates and Times for Their Exposure to DynCorp's Unlawful Fumigations Must Only Respond to the Best of their Recollection.**

DynCorp, despite the undisputed facts that it began fumigation operations under Plan Colombia in 1998, the *Arias* complaint was filed in 2001, and most of the Plaintiffs live in the

15

rain forest without benefit of watches or even calendars, complain that some of the Plaintiffs do

not have perfect recall of events going back to a decade ago. Defendants want all 3,300 Plaintiffs

to list by "day, month and year" each instance when they were exposed to the "Plan Colombia

herbicide." In the first round of responses to DynCorp's questionnaire, responding Plaintiffs

have provided their ***best recollection and best estimate***, to the greatest level of specificity

possible, as to when they were exposed. This fully complies with Plaintiffs' discovery

obligations. DynCorp is not satisfied and expects that either Plaintiffs, somehow, conjure up

specific recall, or face dismissal with prejudice. *See* Defendants' Motion to Compel at 17-21.

There is no legal debate possible on this issue. A party answering interrogatories is

required to provide information that is available to it and can be produced without undue labor

and expense. *Miller v. Pruneda*, 236 F.R.D. 277, 282 (N.D. W.Va. 2004). If a plaintiff knows of

no further information he is required to so state. If he can only answer partially, he should state

that his answers reflect all the information he has. *Harlem River Consumers Co-op., Inc. v.*

*Associated Grocers of Harlem, Inc.*, 64 F.R.D. 459, 463 (S.D.N.Y.1974). Plaintiffs herein will

provide as much information as they can provide. That is the extent of their discovery obligation.

If the most specificity a Plaintiff can provide is "January 2001 to December 2006, every six

months," that is an appropriate answer.

Additionally, if specific dates are equally determinable by the propounding party, a

responding party's best estimate is an adequate response. *Roberson v. Great Am. Ins. Companies*

*of New York*, 48 F.R.D. 401, 404, 412 (N.D. Ga. 1969). Here, DynCorp is the only party with the

flight plans for its spray pilots and specific knowledge of the dates and times when its pilots

sprayed in Ecuador. Plaintiffs have been trying to get this information from DynCorp since the

16

start of the case, but to date have been precluded from conducting any of their own discovery. It is inevitable that Plaintiffs' discovery is the only mechanism that will allow them to pinpoint exactly when they were exposed to DynCorp's "Plan Colombia herbicide." "Answers given at initial stages of discovery are not expected to be final, and are not binding to the party giving them." *Barker v. Bledsoe* 85 F.R.D. 545, 548 (D. Okl., 1979). Plaintiffs have provided all the factual information they have at this early stage of the litigation. Plaintiffs are entitled to, and will, supplement their answers as additional facts are developed in discovery.

Plaintiffs note that the evidence of the devastating effects of DynCorp's unlawful fumigations of the Plaintiffs in Ecuador is overwhelming. This Court has referenced the study conducted by Dr. Adolfo Maldonado. *See* 517 F. Supp 2d. at 223-24. Further, current medical literature agrees that the fumigant used by DynCorp, Glyphosate, is extremely hazardous to humans, and that studies show the effects of Glyphosate to be consistent with the specific injuries Plaintiffs have reported. *See* Collingsworth Decl ¶ 16. A Plaintiff with injuries consistent with Glyphosate exposure, who can testify that he was exposed to the DynCorp fumigations, need not know the exact date to be eligible for recovery.

As to DynCorp's draconian request for terminating sanctions in the first instance for Plaintiffs' purported inability to provide the month, day, and time of each and every instance that they were exposed to DynCorp's herbicide, Defendants are, again, overreaching. The "lesser sanctions first" rule is generally observed in this Circuit, making dismissal in the first instance wholly inappropriate. *See, e.g.*, *Webb v. District of Columbia*, 146 F.3d 964, 971-972 (D.C. Cir. 1998). The precise dates and times of DynCorp's spray flights are within the exclusive knowledge of DynCorp. Plaintiffs have complied with their discovery obligations and the

Court's Scheduling Order when they provide their best recollections and best estimates of the spray events that impacted them. There can be little dispute that Plaintiffs will be able to identify with specificity their exposure once they are permitted to conduct discovery. Therefore the "sanction of last resort" is inappropriate here. *Id*. There has been no showing by DynCorp, nor can there be any showing, that the Plaintiffs' inability to specify the exact date and time of exposure events which happened years ago will in any way prejudice DynCorp's ability to present its case. Absent such prejudice, dismissal sanctions are inappropriate. *Shea v. Donohoe Const. Co., Inc.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986).

### 3.     Plaintiffs Will Provide Whatever <u>Factual</u> Evidence They Have on Damages.

Demonstrating once again why Defendants' motion is premature, they lastly complain that Plaintiffs have not provided sufficient detail as to their damages. *See* Defendants' Motion to Compel at 22-24. Plaintiffs specifically indicated in the limited meet and confer discussion that this information would be supplemented, but that some components of damages were clearly the subject of expert testimony. *See* Collingsworth Decl ¶ 3.

Plaintiffs simply reiterate here that they have agreed to include all damage information that they are able to offer from the Plaintiffs' own personal knowledge. However, they will not be in a position to respond to areas of the questionnaire seeking information on medical causation or other areas requiring expert opinion. For example, question II.P asks, "Do you believe that you have experienced any kind of medical problem ***as a result of*** using chemical fertilizers or other man-made chemicals in your work or at home?" Exhibit F, p. 7 (emphasis added). Proof establishing a causal link between an exposure or defendant's conduct and a

18

sophisticated medical injury requires specialized knowledge and expert testimony.  *See Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *Moody v. Maine Central Railroad Co.*, 823 F.2d 693, 696 (1st Cir. 1987).  Medical causation opinions are not permissible lay opinions.  Fed. R. Evid. 701.  Thus, while Plaintiffs are making clear that some of the questions are beyond the scope of their knowledge, they will provide the information they do have, and whether these responses are adequate must await the actual responses.

## IV. CONCLUSION

Defendants' Motion to Compel must be denied in its entirety due to their blatant failure to comply in good faith with the meet and confer requirements of Fed. R. Civ. P 37 (a)(1) and L. Civ. R. 7 (m). As Plaintiffs have demonstrated that the parties in fact were in essential agreement on a revised schedule to allow Plaintiffs to address the technical problems that occurred in assembling their initial 800 responses to DynCorp's questionnaire, and to fully respond to the total of 3,300 questionnaires, Plaintiffs respectfully request that their Proposed Order with this agreed schedule, filed concurrently herewith, be entered. As per Plaintiffs Proposed Order, Defendants should be directed to meet and confer in good faith with Plaintiffs on all remaining issues, and if they fail to reach agreement on any of those issues, a Joint Report shall be submitted to Magistrate Judge Robinson that indicates any issues in dispute, along with the parties' competing positions.

19

Respectfully submitted this 12th day of August, 2008

By   /s/ Terry Collingsworth
Terry Collingsworth (DC Bar No. 71830)
Conrad and Scherer, LLP
731 8th Street SE
Washington D.C. 20008
Phone: 202-543-4001
Fax: 202-527-7990
Email: tc@conradscherer.com

**_Counsel for Plaintiffs_**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
ARIAS, *et al.*,                                                 )
                                   Plaintiffs,                   )
                                                                 )      Case No.1:01cv01908-RWR-DAR
             v.                                                  )
                                                                 )
                                                                 )
DYNCORP, *et al.*,                                               )
                                   Defendants.                   )
_____)
                                                                 )
QUINTEROS, *et al.*,                                             )
                                   Plaintiffs,                   )
                                                                 )      Case No.1:07cv01042-RWR-DAR
             v.                                                  )
                                                                 )
                                                                 )      (Cases Consolidated for Case
                                                                 )      Management and Discovery)
DYNCORP, *et al.*,                                               )
                                   Defendants.                   )
_____)


**ORDER [PROPOSED BY PLAINTIFFS]**

Upon consideration of Defendants' Motion to Compel, Plaintiffs' Opposition, the

corresponding exhibits, and all related materials filed or argued in this matter,

**IT IS HEREBY ORDERED THAT DEFENDANTS' MOTION TO COMPEL IS DENIED.**

**IT IS FURTHERED ORDERED THAT:**


**1. Revised Schedule**.

Plaintiffs shall provide final responses to Defendants to the first 800 Questionnaires

within 30 days of the date of this Order;

Within 60 days of the date of the Order, Plaintiffs shall provide final responses to Defendants to the first 1,200 Questionnaires;

Within 90 days of the date of the Order, Plaintiffs shall provide final responses to Defendants to the balance of the approximately 3,300 questionnaires.

**2. Meet and Confer**.

Defendants shall meet and confer in good faith with Plaintiffs regarding any other outstanding issues related to Plaintiffs' responses to the Questionnaires. These issues include, but are not limited to:

A. Translating the Questionnaire responses from Spanish to English;

B. Resolving any disputes regarding the adequacy of Plaintiffs' responses to the Questionnaires; and

C. Whether Plaintiffs' obligation to provide Initial Disclosures is satisfied by their responses to the Questionnaires.

**3. Related Motion to Compel**.

Prior to bringing any future motion to compel relating to Plaintiffs' responses to the Questionnaire, including any remaining disputes with respect to the issues delineated in section 2, *supra*, Defendants shall certify and document that they have, in good faith, participated in a meet and confer process with the Plaintiffs. Further, Defendants shall identify with specificity in any such motion to compel the final proposals of both parties on any issue that remains in dispute.

**4. Discovery from Defendants**.

Plaintiffs may commence discovery against Defendants upon providing their final responses to the Questionnaires within the schedule set herein. Nothing in this Order prevents Plaintiffs from serving Defendants with discovery requests prior to completing the responses to the Questionnaire, but Defendants' obligation to respond does not activate until Plaintiffs complete their responses as per the schedule herein.

**5. Revised Pretrial Discovery Schedule**.

The parties, as soon as practicable, shall meet and confer to agree to a new schedule to replace the November 27, 2007 Scheduling Order and the April 17, 2008 Consent Notice. The revised schedule shall be filed with the Court in a Joint Report at least 5 days before the next status conference, set for November 25, 2008. If the parties are unable to agree to a proposed schedule, they shall set out their separate proposals in a Joint Report to be filed at least 5 days before the November 25, 2008 status conference.

Dated this ____ day of August, 2008:

_____
DEBORAH A. ROBINSON
United States Magistrate Judge